UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA | ) |
| | ) No. 3:24-CR-00151 |
| v. | ) JUDGE RICHARDSON |
| | ) |
| MATTHEW ISSAC KNOOT | ) |

**SUPPLEMENTAL BRIEF**

Matthew Knoot, through counsel, submits this Supplemental Brief to answer and address the three questions or issues that this Court posed in the Order (DE 56) it entered on May 6, 2025.

\* \* \*

**Question #1:** If the Court finds that the affidavit submitted in support of Warrant 1 (the Device Warrant) failed to establish a nexus between the crimes under investigation and Knoot's personal devices, then, to what extent are Warrant 1 and Warrant 2 (the Discord Warrant) invalid?

**Answer #1:** Under this set-up: (1) Warrant 1 is invalid insofar as it authorized a search of Knoot's personal devices (i.e., his desktop computer and cellphone) but is valid insofar as it permitted a search of the victim laptops, and (2) Warrant 2 is invalid in its entirety.[1]

**1.** Consider Warrant 1 first. If the Court finds that the affidavit submitted in support of Warrant 1 failed to establish a nexus between the crimes under investigation and Knoot's personal devices, then the warrant is invalid only insofar as it authorized a search of those devices.

---

[1] As used herein, "Warrant 2" refers to the warrant that authorized law enforcement to obtain communications related to (or associated with) Knoot's Discord account. For purposes of clarity, however, Knoot notes that law enforcement sent Discord two separate warrants—one sought information from Knoot's Discord account (i.e., "Warrant 2") and another requested information from Yang's Discord account. The Government argued in its Response that Knoot lacked standing to challenge the warrant directed at Yang's Discord account, but, as Knoot explained in his Reply, under *United States v. Warshak*, 631 F.3d 266 (6th Cir. 2010), he has a Fourth Amendment interest in any communications he had with Yang on Discord, regardless how those communications are stored. Thus, even if Knoot lacks standing to seek suppression of certain information related to Yang's Discord account—such as, for instance, Yang's "profile backgrounds and themes"—he has standing to challenge the admission of any communications he had with Yang on Discord, even if Discord produces or locates those communications by reference to Yang's account.

1

Here's why: As the Supreme Court explained in *Riley*, a person's cellphone (or personal desktop computer) is its own "place" to be searched. *Riley v. California*, 573 U.S. 373 (2014) (officers need a warrant to search a device, even when the device is seized incident to arrest).

As a corollary, then, when law enforcement seek a warrant to search a cellphone or computer, the affidavit supporting the warrant must contain case-specific facts connecting the device to the crimes under investigation. *United States v. Bass*, 785 F.3d 1043, 1049 (6th Cir. 2015) (nexus existed when "affidavit stated" that defendant used device in furtherance of crime).

Absent such facts, the affidavit is deficient (at least as to the device), and any warrant issued pursuant to it is invalid—at least insofar as it authorizes a search of the device. *United States v. Ramirez*, 180 F. Supp. 3d 491, 493 (W.D. Ky. 2016) (holding that warrant authorizing search of cellphone was invalid when affidavit submitted to support it was deficient).

But the absence of such facts does not render the warrant invalid in its entirety. *Matthews* confirms this point. *United States v. Matthews*, 597 F. Supp. 3d 694, 703 (D.N.J. 2022). There, officers believed the defendant was selling drugs from his apartment, so they obtained a warrant to search it. *Id.* at 698. Specifically, the warrant authorized the officers to search: "630 William Street, Apartment #1, East Orange, New Jersey (*i.e.*, the address of the [defendant's] Residence)." *Id.* For whatever reason, the officers executing the warrant searched not only the defendant's apartment *but also* a detached garage, even though nothing in the affidavit supporting the warrant suggested that the garage was connected to the defendant's drug-dealing activities. *Id.* And in executing the warrant, the officers found drugs in the defendant's apartment and in the detached. *Id.* at 700. Based on the fruits of the search, the government charged the defendant with various crimes. *Id.* at 700. And as the case developed, the defendant moved to suppress the fruits of the search of his apartment and the fruits of the search of the detached garage, arguing that the warrant

did not validly authorize the search of either place. *Id.* at 700-09. After careful review, the district court overruled his objection to the search of his apartment but sustained his challenge to the search of the detached garage. *Id.* at 700-09. In doing so, it noted that the "facts set forth" in the warrant affidavit established a "fair probability that marijuana trafficking would be found in the" apartment and that, consequently, the warrant validly authorized the apartment search. *Id.* at 704. But because "[t]he search of the detached garage was not within the scope of the warrant," the court "suppressed" the evidence obtained from the search of that structure. *Id.* at 708.

Though the facts of *Matthews* do not perfectly match the facts at issue here, the principles underpinning the court's analysis in that case are nonetheless applicable. And applying those principles to the facts of this case supports the following result: If the Court finds that the affidavit submitted in support of Warrant 1 does not establish a nexus between Knoot's personal devices and the crimes under investigation, then it should deem Warrant 1 invalid insofar as it authorized a search of those devices but not insofar as it authorized a search of the victim laptops.

This of course means that, if the Court accepts Knoot's nexus argument but rejects his other arguments, the victim laptops would not be subject to suppression.

**2.** Now Consider Warrant 2. If the Court finds that the affidavit submitted in support of Warrant 1 failed to establish a nexus between the crimes under investigation and Knoot's personal devices (like his personal desktop computer and cellphone), then Warrant 2 is invalid in its entirety.

This is because law enforcement relied on information obtained from the illegal search of Knoot's personal desktop computer to obtain Warrant 2, and, absent that tainted information, Warrant 2 would not have issued. *United States v. Jenkins*, 396 F.3d 751, 760 (6th Cir. 2005) (explaining that, when law enforcement rely in part on tainted information to obtain a warrant, the warrant is invalid if law enforcement would not have issued absent the tainted information).

3

A cursory review of the affidavit submitted in support of Warrant 2 confirms this outcome. To be sure, the affidavit submitted in support of Warrant 2 is long. But: (1) paragraphs 19 through 46 are generalized (i.e., boilerplate) allegations about Discord's data-collection policies, (2) paragraphs 8 through 15 simply recite the information set out in Warrant 1 (i.e., that victim companies shipped laptops to Knoot's apartment), and (3) the first four paragraphs simply provide introductory and jurisdictional information. (DE 50-2, ¶¶ 1-4, 8-15, 19-46).

At bottom, then, the only paragraph which arguably establishes a nexus between the crimes under investigation and Knoot's Discord account is paragraph 16—i.e., a paragraph in which Agent Rousseau attested that law enforcement analyzed "the custom desktop computer seized at" Knoot's residence, and, in doing so, found "documents . . . which appeared to be" excerpts of Discord communications between Knoot and Yang "discussing" suspected criminal activity. (*Id.*).

Since law enforcement had no business analyzing (i.e., searching) Knoot's "custom desktop computer," (*id.*), paragraph 16 is tainted. And since paragraph 16 is critical to the validity of Warrant 2—i.e., without paragraph 16, Warrant 2 would not have issued—Warrant 2 is invalid.[2] *See United States v. Tatman*, 397 F. App'x 152, 169 (6th Cir. 2010).

*Tatman* underscores this outcome. There, law enforcement relied on tainted information to obtain a warrant to search the defendant's house for weapons. *Id.* at 168. The defendant moved to suppress the evidence obtained pursuant to that warrant, arguing that, without the tainted portions of the affidavit, the affidavit did not establish a nexus between the crimes under investigation and the place to be searched. *Id.* The district court agreed, held the warrant invalid, and suppressed the evidence law enforcement obtained pursuant to it. *Id.*

---

[2] Knoot argued in his opening motion that paragraph 16 of the affidavit submitted in support of Warrant 2 was tainted and that, absent that paragraph, Warrant 2 would not have issued. (DE 48, Mot. Suppress, PageID #135-36). Tellingly, however, the Government did not address this argument in its response.

4

On appeal, the Government argued that the affidavit established a nexus even without the tainted information, but the Sixth Circuit disagreed and affirmed the district court's suppression ruling. *Id.* at 169-71. In doing so, it noted: "once the tainted information is excised from the supporting affidavit in this case, the only information that it conveys" which (arguably) suggests that a firearm might be found in the defendant's residence "is that [the defendant] was arrested for a non-weapons crime . . . and a hearsay statement from the victim of that crime that he possessed illegal weapons." *Id.* And because (in the court's view) that information did not establish a nexus between the crimes under investigation and the defendant's home, the court concluded that the warrant was invalid (because it would not have issued without the tainted information). *Id.*

So too here. Without paragraph 16, the affidavit submitted in support of Warrant 2 fails to establish a nexus between the crimes under investigation and Knoot's Discord account. Thus, like the warrant at issue in *Tatman*, Warrant 2 is invalid in its entirety.

\* \* \*

**Question #2**: If the Court finds that the affidavit submitted in support of Warrant 1 failed to establish a nexus between the crimes under investigation and Knoot's personal devices, then, to what extent is Knoot presumptively entitled to suppression of evidence? For instance, would Knoot "be presumptively entitled to suppression of all Warrant 1 Electronic Information and all Discord Information, or only some of this information[?]" (DE 56, Order, PageID #294).

**Answer #2**: On these facts, Knoot is presumptively entitled to suppression of any information or data obtained from his personal devices (but not from the victim laptops), along with suppression of any information or data that law enforcement obtained from Discord.

If the affidavit submitted in support of Warrant 1 doesn't establish a nexus between the crimes under investigation and Warrant 1, then Warrant 1 is invalid insofar as it authorized a search

5

of those devices so any information obtained from those devices is presumptively subject to suppression. *Matthews* (discussed above) confirms this point. The court in that case held that, when a warrant validly authorizes the search of one building but not another, evidence discovered as a result of the unauthorized search is subject to suppression whereas evidence discovered in connection with the authorized search is admissible. *Matthews*, 597 F. Supp. 3d at 700-09. Applying that principle here, if the Court accepts Knoot's nexus argument (but rejects the others), then: (1) evidence obtained from the search of Knoot's personal devices is presumptively subject to suppression, but (2) evidence obtained from the victim laptops is not.

Warrant 2—the Discord Warrant—presents a different question. Because (as explained above) law enforcement relied on information obtained from the illegal search of Knoot's personal desktop computer to obtain Warrant 2, and because Warrant 2 would not have issued without that tainted information, Warrant 2 is invalid in its entirety. *Tatman*, 397 F. App'x at 169-71. This means that all evidence obtained from Warrant 2 is presumptively subject to suppression.

\* \* \*

**Question #3:** If the Court accepts Knoot's nexus argument (but rejects his particularity argument), to what extent does the *Leon* good-faith exception apply to preclude exclusion of evidence obtained pursuant to Warrant 1 and/or Warrant 2?

**Answer #3**: Under this assumption, the good-faith exception does not preclude exclusion of the evidence obtained from Knoot's personal devices or from Warrant 2.

"The Fourth Amendment requires that search warrants be supported by 'probable cause,' bolstered by specific descriptions, given under 'Oath or affirmation,' as to both 'the place to be searched' and the 'things to be seized' in the search." *United States v. Neal*, 106 F.4th 568, 571 (6th Cir. 2024) (citation omitted). "It follows that an affidavit supporting a request for a search

6

warrant" must contain case-specific facts demonstrating a probable-cause nexus between the places or things to be searched and the crimes under investigation. *Id.* "If a search warrant fails to honor this constitutional command," evidence obtained pursuant to it must generally be suppressed. *Id.*; *Illinois v. Krull*, 480 U.S. 340 (1987) (discussing exclusionary rule).

In *Leon*, however, the Supreme Court ruled that "suppression is inappropriate when an officer conducts a search in 'objectively reasonable reliance' on a warrant later deemed to be invalid." *Neal*, 106 F.4th at 572 (citing *United States v. Leon*, 468 U.S. 897, 922 (1984)).

"Why? Because in that scenario, the authorizing judge—not the officer—is the blameworthy party," and so it would be unfair (and of minimal deterrent value) to sanction the officer's unconstitutional conduct by way of evidence suppression. *Id.*

"Contrast that situation to one in which an officer conducts a search while lacking a good faith belief in the stated basis for seeking the warrant. In that instance, the officer is at fault for the constitutional violation, warrant notwithstanding," so suppression is warranted. *Id.*

To determine whether an officer *lacked* a good faith belief as to the propriety of a warrant's supporting affidavit, the reviewing court must analyze the affidavit's allegations. If "an officer anchors his conduct to [a] 'bare-bones affidavit,' the officer acts recklessly, rather than in good faith, and thus remains blameworthy for conducting the search." *Id.*

But when is a warrant's supporting affidavit "so deficient" that it not only fails to establish a case-specific nexus between the crimes under investigation and the place to be searched but is "*also* 'bare bones,'" rendering the good-faith exception inapplicable? *Id.* (emphasis added).

The Sixth Circuit draws the line like this: If the affidavit presents at least "a modicum of evidence" showing "*some* connection . . . between the criminal activity at issue and location of the search," then an officer can reasonably rely on it and so the good faith exception applies. *United*

7

States v. Sanders*, 106 F.4th 455, 469 (6th Cir. 2024) (en banc) (emphasis in original; quotations marks omitted). But if the affidavit "nakedly assume[s] or vaguely conclude[s]" that "probable cause has been satisfied" without "attempting to demonstrate why," the affidavit is "bare bones," and the good-faith doctrine is inapplicable. *Id.* at 468; *see also Neal*, 106 F.4th at 572 (describing a bare-bones affidavit as one that is "devoid of facts" "connecting the illegal activity [to] the place to be searched," or one that is "so vague as to be conclusory or meaningless" (citation omitted)).

This standard is well known, and any reasonable officer would know it. *Sanders*, 106 F.4th at 469 (en banc) (summarizing precedent and noting that the Sixth Circuit's "bare bones affidavit case law sets a *bright* out-of-bounds marker governing officer conduct" (emphasis added)).

### **Warrant 1**

Against that backdrop, how does the affidavit that Agent Rousseau swore out in support of Warrant 1 stack up? Does the affidavit contain at least some "evidence" (i.e., *facts*) showing a connection between Knoot's personal devices and the "criminal activity at issue." *Id.* at 469. Or does it instead include only "naked[] assum[ptions]" and "vague[] conclu[sions]" about the relationship between those devices and the crimes under investigation? *Id.*

The answer is the latter. Indeed, as Knoot explained in his prior pleadings, the affidavit doesn't contain any evidence or facts suggesting that Knoot used a personal desktop computer or cellphone (or any other personal device) in connection with the suspected criminal activity. In fact, the affidavit doesn't even include facts establishing that Knoot *had* a personal desktop computer or cellphone or that those items would be found in his apartment—rather, the affidavit merely states: "*if* [personal] digital devices are found" at Knoot's residence, then "there is probable cause to believe" that evidence of crime will be found on them. (DE 50-1, Affidavit ¶ 26).

Under these circumstances, Agent Rousseau "nakedly assum[ed]"—without supporting facts—that Knoot had personal devices and that said devices had some connection to the "criminal activity at issue." *Sanders*, 106 F.4th at 468. And since a reasonable officer would know (per the bright-line rule described in *Sanders*) that these naked assumptions and vague conclusions about the relationship between Knoot's personal devices and the crime under investigation were insufficient to support a valid search of those devices, the good faith exception is inapplicable.

But what about Agent Rousseau's allegation that he had probable cause to search Knoot's personal devices because his training has taught him "[i]ndividuals who engage in criminal activity" sometimes use their devices in furtherance of crime? (*See* DE 50-1, Affidavit ¶ 26).

Does that allegation amount to a "modicum of evidence" showing a connection . . . between the criminal activity at issue" and Knoot's personal devices (thus triggering the good-faith exception), or is it a mere "naked[] assump[tion]" about the relationship between those crimes and devices (rendering the good-faith exception inapplicable)? *Sanders*, 106 F.4th at 468.

Again, under Sixth Circuit precedent, the answer is the latter.

The starting place for evaluating the propriety of "training and experience" allegations in warrant affidavits is *United States v. Schultz*, 14 F.3d 1093 (6th Cir. 1994). The agent there learned that a suspected drug dealer "maintained [a] safe deposit box[]" at a particular bank, so he sought a warrant to search it. *Id.* In the supporting affidavit, he claimed that he had probable cause to search the box because his "training and experience" had taught him that it's not "uncommon" for suspected drug dealers to maintain "records" of their drug-dealing activities "in bank safe deposit boxes." *Id.* at 1097. A magistrate issued a warrant based on that allegation, and law enforcement searched the defendant's deposit box and found evidence of crime. *Id.* at 1096-97.

The defendant later moved to suppress the evidence obtained from the deposit box on the ground that the affidavit submitted in support of the warrant allowing that search failed to establish a nexus between the deposit boxes and the suspected criminal activity. *Id.* at 1097.

And notably, the Sixth Circuit agreed with the defendant's nexus argument, reasoning that, "[w]hile an officer's 'training and experience' may be considered in determining probable cause[,]" a "training and experience" allegation doesn't provide an "evidentiary nexus." *Id.*

Ultimately, however, the Sixth Circuit affirmed the denial of the defendant's suppression motion based on the good-faith exception. In doing so, it explained that, although the warrant affidavit failed to establish a nexus between the defendant's deposit boxes and the crimes under investigation, "the connection" between the two "was not so remote as to tripe on the 'so lacking' hurdle." *Id.* at 1098. In the other words, the Sixth Circuit concluded that, even though the affidavit submitted in support of the warrant was deficient, it was not "so lacking in indicia of probable cause as to render official belief in its existence" unreasonable. *Id.* (citation omitted).

Although *Schultz* might appear at first glance to support the conclusion that an officer *can* reasonably conclude that an affidavit establishes a nexus as long as it contains a "training and experience" allegation, subsequent Sixth Circuit cases have rejected such a broad reading.

*Laughton* is illustrative. That case (like this one) presented a situation where the Sixth Circuit had to determine whether a deficient warrant affidavit was nonetheless *not* "so lacking in indicia of probable cause" as to render the good-faith exception inapplicable. *United States v. Laughton*, 409 F.3d 744, 747-48 (6th Cir. 2005). As part of its analysis, the Sixth Circuit discussed *Schultz*'s take on the good-faith doctrine. *Id.* at 749-50. And in doing so, it struggled to square *Schultz*'s reasoning with the Sixth Circuit's "bare bones" precedent. Specifically, it noted: (1) that *Schultz* "stretch[ed] the limits" of the good-faith exception, (2) that, as compared to other cases,

10

the facts in *Schultz* presented "the weakest link between criminal activity and the place to be searched," and (3) that "[t]he panel" in *Schultz* did not explicitly "indicate . . . the basis for its determination that the evidence seized was saved from suppression by good faith" (the implication being that *Schultz* was at best poorly reasoned and at worst wrongly decided). *Id.* at 750.

After casting serious doubt on the propriety of *Schultz*'s application of the good-faith exception, *Laughton* indicated that the least troublesome reading of *Schultz* was as follows: "*Schultz* permits" a "highly experienced" officer to make a *single* "inference to fill in a gap in [an] affidavit." *Id.* at 750. It then explained that, even under that reading of *Schultz*, the warrant affidavit in question (that is, the affidavit at issue in *Laughton*) was insufficient because officers would've had to make *more* than one assumption ("even inferences drawn upon inferences") in order to reasonably conclude that the affidavit established a probable cause nexus. *Id.* at 750.

Here, following *Laughton*'s reading of *Schultz* (which, as *Laughton* explained, is the least troublesome way to interpret *Schultz*'s reasoning and outcome), the good faith exception does not apply in this case. This is because, unlike in *Schultz*, whatever connection Agent Rousseau's "training and experience" allegation might've established between Knoot's personal devices and the crimes under investigation is more than one inference (or assumption) removed.

To see why, simply compare the facts of this case to the facts in *Schultz*. In *Schultz*, the warrant affidavit proved: (1) a nexus between the defendant and illegal activity *and* (2) a nexus between the defendant and a safe deposit box, but it lacked the final link: a nexus between the defendant's illegal activity and the box. *Schultz*, 14 F.3d at 1096. Consequently, law enforcement could draw a connection between the crimes under investigation and the safe deposit box by making a *single* assumption. All they had to do was assume that the known-to-them deposit box contained evidence of crime. Here, by contrast, law enforcement had to make multiple

11

inferences—"even inferences drawn upon inferences," *see Laughton*, 409 F.3d at 750—to connect Knoot's personal devices to the crimes under investigation. To spell out, they had to assume: (1) that Knoot had a personal desktop computer and personal cellphone, and (2) that such devices would be present in Knoot's apartment. And since the Government's theory is that Knoot used his personal devices to communicate with co-conspirators, the officers had to further assume that multiple persons were involved in the commission of the crimes under investigation.

Suffice it to say, perhaps law enforcement could have (at least arguably) reasonably relied on the Agent Rosseau's "training and experience" allegation to infer a connection between Knoot's devices and the crimes under investigation if they had (as in *Schultz*) at least known that Knoot actually had a desktop computer or a personal cellphone. But because the affidavit submitted in support of the warrant doesn't even establish those facts, this case is like *Laughton* rather than *Schultz*—that is, this is a case where "filling the gaps" left by the affidavit "require[s] a number of inferences, even inferences drawn upon inferences." *Laughton*, 409 F.3d at 750.

To that end, as in *Laughton*, Agent Rousseau's "training and experience" allegation is not a "modicum" of evidence drawing a connection between Knoot's personal devices and the criminal activity at issue—instead, it's a mere "naked[]" and generalized "assump[tion]" about how *some* suspects (but not necessarily Knoot) commit crimes. *Sanders*, 106 F.4th at 468. Thus, the good-faith exception does not save the fruits of the search of Knoot's personal devices from suppression.

Should there be doubt about that outcome, three additional points warrant consideration:

**1.** *First*, in *Ramirez*, the Western District of Kentucky declined to apply the good-faith exception to save the fruits of a cellphone search, even though the warrant allowing the search was supported by a *better* affidavit than the one involved here. *United States v. Ramirez*, 180 F. Supp. 3d 491 (W.D. Ky. 2016). The officer in *Ramirez* arrested the defendant for conspiring to distribute

12

Case 3:24-cr-00151    Document 74    Filed 05/30/25    Page 12 of 17 PageID #: 395

marijuana. *Id.* at 493. At the time of the arrest, the defendant "was in possession of a cell phone," so the officer applied for a warrant to search it, attesting that her "training and field experience" has taught her that "individual may keep text messages or other electronic information stored in their cell phones which may relate them to the crime and/or co-defendants/victims." *Id.* at 493.

Relying on *Schultz*, the district court quickly concluded that the warrant did not establish a nexus between the crime in question and the defendant's phone. *Id.* at 495-06.

Then, addressing the good-faith exception, the district court indicated that Sixth Circuit precedent provides that law enforcement cannot reasonably rely on a warrant unless the affidavit supporting it establishes at least some connection between the place to be search and the suspected criminal activity. *Id.* at 496 (citing, among other cases, *United States v. Washington*, 380 F.3d 236, 243 (6th Cir. 2004) (applying good-faith when affidavit listed five nexus facts)).

It then concluded that the affidavit in question did not meet that standard, noting (in connection with the "training and experience" allegation) that the affidavit indicated that the officer had only worked in the "Jefferson County Sheriff's Office" for "three years." *Id.*

If "[a]n objectively reasonable law enforcement officer would have recognized that [the] affidavit" in *Ramirez* "was so lacking in indicia of probable cause as to preclude good faith reliance" on the warrant, *see id.*, then there can be no question that such an officer would've come to the same conclusion about the affidavit here. Indeed, the affidavit in *Ramirez* indicated that the officer had *more* training and experience than Agent Rousseau (18 months vs. three years, (*see* DE 50-1, ¶ 3 (providing that Agent Rousseau has been an agent "with the FBI since February 13, 2022)). And the affidavit in *Ramirez* actually established (with facts) that the defendant had a device whereas Agent Rousseau's simply guessed that "digital devices" might be "found."

13

In this way, the affidavit in *Ramirez* established a *stronger* connection between the defendant's device and the crimes under investigation than the affidavit does in this case but was still insufficient to trigger application of the good-faith exception. It follows that the good-faith exception is inapplicable here, and the fruits of the search of Knoot's devices should be suppressed.

**2.** *Second*, given the circumstances of this case, officers could not have reasonably assumed that Knoot's personal devices were involved with the crimes under investigation.

To reiterate a point Knoot made in his reply: At the time Agent Rousseau prepared the warrant affidavit, agents were investigating Knoot for computer fraud and identity theft and knew that three companies had shipped *laptops*—not desktop computers or cellphones—to Knoot's apartment under (what appeared to be) false pretenses. (DE 50-1, pg. 3, ¶¶ 17, 20). Under those facts, law enforcement knew *exactly* what they were looking for: three *laptops* that had been shipped to Knoot's apartment and allegedly accessed without authorization.

In this way, it was unreasonable for them to think that Knoot's personal *desktop* computer (and cellphone) were somehow caught up in the suspected computer fraud scheme.

**3.** *Third*, applying the good-faith exception to save the fruits of the search of Knoot's personal devices would undermine the warrant requirement and incentivize law enforcement to imitate what Agent Rousseau did here. Indeed, if this Court finds good faith, then, moving forward, officers will know that all they need to do to gain access to a person's computer or cellphone—and, with them, "[t]he sum of [his or her] private life," *see Riley*, 573 U.S. at 394—is write out an affidavit saying that a person is suspected of crime and then include boilerplate language about how most people have digital devices and about how sometimes criminals use such devices to further their criminal activity. Officers can then take refuge in the fact that whatever they find during the search will be saved from suppression by the good-faith exception.

14

Given that the Supreme Court has made clear in recent years that devices and stored data are entitled to *greater*—not *less*—Fourth Amendment protection than other objects and papers, that outcome is untenable. *See id.* at 393 (explaining that devices implicate privacy concerns that don't exist in the physical world and modifying Fourth Amendment to account for that reality); *see also United States v. Weaver*, 99 F.3d 1372, 1378-81 (6th Cir. 1996) (declining to apply good-faith exception and noting that officer should have realized that he could not obtain affidavit to search home simply by swearing out an affidavit containing "boilerplate" allegations).

To that end, law enforcement did not act in good faith when they searched Knoot's personal computer and cellphone, so any evidence obtained from those searches must be suppressed.

## Warrant 2

In light of the above, the affidavit submitted in support of Warrant 1 was so lacking in indicia of probable cause that law enforcement could not have reasonably believed it established a nexus between the crimes under investigation and Knoot's personal devices and so the good-faith exception does not save the evidence obtained from those devices from suppression.

But what about Warrant 2? Is the evidence that law enforcement obtained from that warrant saved from suppression by way of the good-faith exception? The answer is no.

As explained, law enforcement could not have reasonably believed that Warrant 1 established a connection between Knoot's devices and the crimes under investigation—hence, a reasonable officer would know that any information gleaned from those devices was tainted and that, consequently, any such information could not be included in the Warrant 2 affidavit.

Further, once the tainted information is removed from the affidavit submitted in support of Warrant 2, any reasonable officer would be able to tell that that affidavit failed to establish even a minimal connection between Knoot's Discord account and the crimes under investigation.

In situations like this—i.e., situations where "[t]he issuance of a warrant" is premised on tainted evidence—the good-faith exception is simply inapplicable. *See, e.g.*, *United States v. Reilly*, 76 F.3d 1271, 1280 (2d Cir. 1996); *see also United States v. McGough,* 412 F.3d 1232, 1240 (11th Cir. 2005) (declining to apply good-faith exception when warrant was based on tainted evidence); *United States v. Wanless*, 882 F.2d 1459, 1466 (9th Cir. 1989) ("[T]he good faith exception does not apply where a search warrant is issued on the basis of evidence obtained as the result of an illegal search."); *United States v. Meixner*, 128 F. Supp. 2d 1070, 1078 (E.D. Mich. 2001) (declining to apply good-faith exception to save fruits of search when the warrant authorizing the search was issued pursuant to an affidavit containing tainted information). The result is that any evidence law enforcement obtained from Discord must be suppressed.

## CONCLUSION

In light of the foregoing, should this Court conclude that Agent Rousseau's affidavit failed to establish a probable-cause nexus between the crimes under investigation and Knoot's personal devices, it should suppress: (1) any evidence law enforcement obtained from Knoot's personal devices (i.e., his desktop computer, cellphone, and any other personal devices that law enforcement searched); (2) any evidence law enforcement obtained from Discord in response to Warrant 2; and (3) any communications between Knoot and Yang that law enforcement obtained from Discord.

Respectfully submitted,

/s/ *David K. Fletcher*
DAVID K. FLETCHER (BPR# _____)
Assistant Federal Public Defender
810 Broadway, Suite 200
Nashville, TN 37203
615-736-5047
E-mail: David_Fletcher@fd.org

Attorney for Matthew Isaac Knoot

16

**CERTIFICATE OF SERVICE**

   I hereby certify that on May 30, 2025, I electronically filed the foregoing *Supplemental Brief* with the U.S. District Court Clerk by using the CM/ECF system, which will send a Notice of Electronic Filing to the following: Joshua A. Kurtzman, Assistant United States Attorney, 719 Church Street, Suite 3300, Nashville, Tennessee, 37203 and Gregory Jon Nicosia, Jr., U.S. Department of Justice-National Security Division, 950 Pennsylvania Avenue, N.W., Washington, DC 20530.

             /s/ *David K. Fletcher*
             DAVID K. FLETCHER