UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | NO. 3:24-CR-00151 |
| v. | ) | |
| | ) | JUDGE RICHARDSON |
| MATTHEW ISAAC KNOOT | ) | |

**UNITED STATES' MOTION IN LIMINE TO REFER TO VICTIMS
BY PSEUDONYMS AT TRIAL**

Comes now the United States of America, by and through the undersigned Assistant United States Attorney, Joshua A. Kurtzman, and United States Department of Justice Trial Attorney Gregory J. Nicosia, Jr., and moves *in limine* for an Order directing all parties to refer to the individual(s) and companies victimized by the defendant and others by pseudonyms (Company A, Company B, etc.) at the upcoming trial in this case. The use of pseudonyms is necessary to protect the victims from harm, embarrassment, inconvenience, unfairness, undue negative media attention, targeting by foreign adversaries of the United States involved in the underlying scheme at issue in this case, and to protect other information, including confidential business information, that may be subject to protection under other statutes. In support thereof, the Government would show the following:

I. **FACTUAL AND PROCEDURAL BACKGROUND**

The investigation of the defendant's criminal conduct began on April 4, 2023, when the Nashville office of the Federal Bureau of Investigation ("FBI") received a complaint from a United States based company ("Company A") regarding suspicious online activity using a laptop computer provided by Company A to an employee. (DE 48, Ex. A – Premises Warrant at ¶ 16.) Company A shared with the FBI that its employee, A.M., had provided it with personally identifiable information, including a social security number and a home/mailing address in Nashville as part of the hiring/onboarding process. (*Id.* at ¶ 17.) Company A reported that A.M., while working on the laptop that Company A had mailed to the Nashville

1

address, was connecting to a Chinese Internet Protocol ("IP") address through a Virtual Private Network (a "VPN"), which would be unnecessary and strange for his position at the company. (*Id.*)

Based on the report from Company A, the FBI began investigating A.M.'s identity. Using the social security number provided by Company A, the case agent determined that A.M. was actually a resident of Atlanta, Georgia, rather than Nashville. The FBI interviewed A.M. on June 14, 2023, and A.M. confirmed that he had never worked for Company A and that his identity must have been stolen. (*Id.* at ¶ 18.) Armed with the knowledge that A.M.'s identity had been stolen and used to fraudulently obtain employment with Company A, the FBI conducted employment checks using various databases and identified several additional companies where A.M.'s personally identifiable information, including his social security number, were used to obtain remote employment. (*Id.* at ¶ 19.) Based on these results, FBI agents interviewed two additional companies ("Company B" and "Company C") that had also hired an individual using A.M.'s personally identifiable information. Company B and Company C, like Company A, confirmed that they each shipped company laptops to the Defendant's apartment in Nashville, Tennessee after hiring an individual they believed was A.M. (*Id.* at ¶ 20.) The investigation later confirmed that Companies A, B, and C were all victims of the unlawful scheme which, as alleged in the Indictment, the Defendant facilitated.

As the United States disclosed in the Indictment and its Notice of Expert Testimony, this case involves a scheme where domestic actors, like the Defendant, facilitate a Democratic People's Republic of Korea ("North Korea") revenue generation scheme. More specifically, testimony during the trial will describe North Korean revenue generation through remote information technology ("IT") work; the purpose of such revenue generation; how North Korean actors obtain remote employment; the technical and non-technical means North Korean actors use to obfuscate their true identity in order to obtain remote IT work; North Korean actors use of witting and unwitting third-party enablers to receive and use victim company laptops; North Korean actors deployment to other countries, including but not limited to China; North Korean actors use of Chinese telecommunications infrastructure; and North Korean actors use of online payment platforms. During the course of this case, the corporate victims in this case, Company A, Company B, and Company C (collectively the "Victim Companies") unwittingly hired individuals that were part of

this revenue generation scheme and sent laptop computers to the Defendant that were later accessed by other individuals associated with the scheme.

On August 7, 2024, a Grand Jury in the Middle District of Tennessee returned a six-count indictment charging the defendant for his role in the above-described scheme. (DE # 3.) On October 4, 2024, the defendant filed an unopposed motion to continue trial, which was granted on November 7, 2024. (DE # 16 and 29.) On February 17, 2025, the defendant filed a second unopposed motion to continue trial, which was granted on February 18, 2025. (DE # 39 and 41.) On May 9, 2025, the Defendant filed a third motion to continue trial, over the United States' objection, which was granted on May 22, 2025. (DE # 58 and 70.) Pursuant to that order, trial was rescheduled for August 12, 2025. *Id*.

II. **LEGAL ARGUMENT**

In this Motion *in Limine*, the Government seeks the imposition of an Order, attached hereto as Exhibit A, to require all witnesses, including law enforcement agents, individual victims, representatives of the Victim Companies, and the Defendant's witnesses to refer to the individual victim(s) and Victim Companies using pseudonyms (Company A, Company B, Company C, etc.) during the upcoming trial.[1] Such an Order is necessary to protect the individual victim(s) and Victim Companies from reprisal by foreign actors involved in the alleged revenue generation scheme. Likewise, the Crime Victims' Rights Act (the "CVRA") outlines that the Court is responsible for protecting the victims, like the individual victim(s) and Victim Companies, from undue harm, embarrassment, inconvenience, unfairness, undue negative media attention, and targeting. *See*, *e.g.*, 18 U.S. Code § 3771(a)(1) and (8). Moreover, the use of pseudonyms does not prejudice the Defendant as publicly revealing the identity of the individual victim(s) and Victim Companies is not relevant to the underlying charges, which further supports the Government's request for pseudonyms to be used at trial.

The use of a pseudonym by a testifying witness is permissible when the Government's interest in maintaining the anonymity of its witness outweighs the defendant's interest in confronting the witness

---

[1] A Proposed Order is attached to this filing as Exhibit A.

without limitation. *See Rovario v. United States*, 353 U.S. 53 (1957). In particular, federal appellate courts have repeatedly approved restrictive measures adopted by district courts to protect witnesses who face reprisals for their trial testimony. For example, in *United States v. Ramos-Cruz*, 667 F.3d 487 (4th Cir. 2012), the Fourth Circuit approved of the testimony of two El Salvadoran police officer witnesses in an MS-13 gang trial under pseudonyms and without revealing their names, home or work addresses, or dates and places of birth, where "the government disclosed to the defense details of these two witnesses before the trial [and] the defendants were able to effectively cross-examine those witnesses without threatening their safety." *Id*. at 501 (quoting *United States v. Zelaya*, 336 F. App'x. 355, 357-58 (4th Cir. 2009) (unpublished) (quotation marks omitted)). Similarly, in *United States v. Celis*, 608 F.3d 818 (D.C. Cir. 2010) (per curiam), the D.C. Circuit approved of the pseudonymous testimony of Colombian Government witnesses in a narcotics importation trial involving a terrorist organization based in Colombia, where the district court had permitted the defense to conduct investigations using two of the protected witnesses' true identities pursuant to a protective order. *Id*. at 832; *see United States v. Gutierrez de Lopez*, 761 F.3d 1123, 1141 (10th Cir. 2014) ("[I]f the government provides defense counsel with sufficient background information on the anonymous witnesses (e.g. criminal history, nationality, etc.), then withholding the witness's name or address does not necessarily deprive the defendant of an opportunity for effective cross-examination, which is the touchstone of a Confrontation Clause inquiry."); *United States v. El-Mezain*, 664 F.3d 467, 492-93 (5th Cir. 2011) (approving use of pseudonyms by Israeli intelligence and defense witnesses in Hamas trial, where defense was permitted to cross-examine witnesses about background, training, legal education, and possible bias); *United States v. Machado-Erazo*, 951 F. Supp. 2d 148, 154 (D.D.C. 2013) (permitting El Salvadoran police officer to testify anonymously in gang trial).

As an Eastern District of New York court observed when permitting undercover officers from the United Kingdom Security Service to testify using pseudonyms at trial, which is equally true in this case:

> Here, the defendant will not be deprived of his right to confront these witnesses and cross-examine them—he will be free to cross-examine them on all topics other than their identity. Nothing about the witnesses' true names goes to their credibility or knowledge regarding the subject of their testimony. As in other cases where government officers were permitted to

4

testify pseudonymously, here, an officer's "true name is immaterial to defendant's guilt or innocence."

*United States v. Naseer*, No. 10-CR-19 (S-4) (RJD) (E.D.N.Y. Jan. 26, 2015) (Dkt. Entry No. 382 at 6) (citations omitted).

In the context of victim witnesses, as in this case, there are even stronger public policy reasons for maintaining confidentiality of witness identities. Indeed, the Crime Victims' Rights Act, 18 U.S.C. § 3771, requires district courts to implement procedures to ensure that crime victims are accorded, among other rights, "[t]he right to be reasonably protected from the accused," in addition to "[t]he right to be treated with fairness and with respect for the victim's dignity and privacy."[2] *Id*. §§ (a)(1), (a)(8). For example, "the public generally has a strong interest in protecting the identities of . . . victims so that other victims will not be deterred from reporting such crimes." *United States v. Paris*, 2007 WL 1484974, at *2 (D. Conn. May 18, 2007); see *Doe No. 2 v. Kolko*, 242 F.R.D. 193, 195 (E.D.N.Y. 2006) (courts have repeatedly permitted sex crimes victims to testify under alias in order to protect them "from the likely adverse personal, professional and psychological consequences of publicly linking their identities to their past lives as sex workers"). As such, courts have discretion to allow victims or witnesses to be referred to only be pseudonyms in open court to protect them, if necessary, from potential embarrassment, harassment from the media, security threats, or other adverse consequences. *See e.g. United States v. Wilkins*, 538 F. Supp. 3d 49, 66-67 (D.D.C. 2021) (granting a motion in limine to exclude the victims' last names to prevent them from being subject to "harassment, humiliation and/or obstruction from the defendant, the media, and others . . ."). In addition, a Western District of Kentucky court recently permitted the use of pseudonyms for Government trial witnesses to protect the United States' ability to investigate national security threats in

---

[2] Corporate victims are included in the statutory definition of "victim" under the Crime Victims' Rights Act (the "CVRA") if they were directly and proximately harmed as a result of the offense. See 18 U.S.C. § 3771 (e)(2)(A) and Art. III.C. of the Attorney General Guidelines for Victim and Witness Assistance ("AG Guidelines"). Thus, corporations who meet the elements of the statutory definition of "victim" are entitled to all CVRA rights, including the right to be treated with fairness and with respect for their dignity and privacy. See 18 U.S.C. § 3771(a)(8). Although the CVRA uses the term "privacy", the term "confidentiality" is more appropriate in the corporate context since corporate victims do not technically have personally identifiable information ("PII") or statutory "privacy" interests. The CVRA dictates that the Court, not the parties, is charged with guaranteeing that the rights of victims are enforced. Specifically, the CVRA states: "In any court proceeding involving an offense against a crime victim, the court shall ensure that the crime victim is afforded the rights described" in the CVRA. 18 U.S.C. § 3771(b)(1).

5

future cases and to protect the witnesses from threats and intimidation. *United States v. Ramic*, 2024 WL 2274529 (W.D. Ky. 2024) (defendant prosecuted for providing material support to ISIS).

Here, the proposed Order to use pseudonyms is appropriate as public disclosure of the identities of the individual victim(s) and Victim Companies could cause undue harm, embarrassment, inconvenience, unfairness, undue negative media attention, and potential targeting of the individual victim(s) and Victim Companies by foreign adversaries of the United States, namely the North Korea. This risk is best exemplified by the coordinated reprisals undertaken by North Korea against Sony Pictures and other companies just over a decade ago. In 2014, North Korean actors hacked Sony Pictures in response to its upcoming release of a film that involved a plot to assassinate North Korean leader Kim Jong-un.[3] Seven years after the original targeting of Sony Pictures, three North Koreans were indicted for "the crippling 2014 Sony Pictures Entertainment hack and a wide-ranging scheme to steal and extort more than $1 billion in cash and cryptocurrency from banks and companies based across the globe."[4] The cooperation of the individual victim(s) and Victim Companies with the Government's investigation and the resulting exposure of the North Korean revenue generation scheme, places the individual victim(s) and Victim Companies in the crosshairs for reprisal. This sort of exposure to undue media attention and potential targeting justifies the proposed use of pseudonyms at trial.

The proposed use of pseudonyms protects the individual victim(s) and Victim Companies while negligibly impacting the Defendant's rights under the Confrontation Clause. While the Sixth Amendment guarantees defendants the right to cross-examine adverse witnesses, that right is not unlimited, and trial courts retain "wide latitude" to restrict cross-examination "based on concerns about, among other things . . . the witness's safety." *Delaware v. Van Arsdall*, 475 U.S. 673, 679 (1986). Here, there will be minimal impact on the defendant's ability to cross-examine the individual victim(s) and Victim Companies'

---

[3] The facts in this section are taken from various media outlets reporting the investigation of the alleged North Korean hacking of Sony Pictures and the FBI's subsequent investigation.

[4] Andrew Blankstein, *U.S. Indicts Three North Koreans in Massive WannaCry, Sony Hacks,* Feb. 17, 2021, *available at* https://www.nbcnews.com/politics/justice-department/u-s-indicts-three-north-koreans-massive-wannacry-sony-hacks-n1258096.

6

Case 3:24-cr-00151    Document 75    Filed 06/25/25    Page 6 of 9 PageID #: 406

representatives as a result of not being permitted to use the Victim Companies' corporate name. See *Naseer*, No. 10-CR-19 (S-4) (E.D.N.Y. Jan. 26, 2015) (Docket Entry No. 382 at 6) ("Nothing about the witnesses' true names goes to their credibility or knowledge regarding the subject of their testimony."). As such, the defendant will be able to confront the victims or to challenge the substance of their testimony. Indeed, because the Government has and will continue to comply with its obligations under *Brady v. Maryland*, 373 U.S. 83 (1963), and its progeny, including *Giglio v. United States*, 405 U.S. 150 (1972), and provide the defense with abundant information with which to cross-examine the representatives from the individual victim(s) and Victim Companies, the defendant's case and ability to mount an effective defense will suffer no prejudice. Moreover, because the identities of the individual victim(s) and Victim Companies have been disclosed to defense counsel, defense counsel was able to conduct effective investigations to obtain cross-examination material. As noted above, the use of pseudonyms rather than the victims' names will not deprive the defendant of the ability to confront the victims or to challenge the substance of the victims' testimony, nor will it deprive the Court or jury of the ability to evaluate the witnesses' demeanor. In light of these measures, there will be no prejudice to the defendant, and the limited deprivation to the public is far outweighed by the government's interest in concealing the victims' identities. Thus, the proposed protection of the victims' identities is no broader than necessary to protect the victims' safety from undue media attention and reprisals by foreign governments, and the government is unaware of any other reasonable alternative that will protect this important interest.

## **CONCLUSION**

For the foregoing reasons, the Government respectfully requests that the Court grant its Motion in Limine and order that the individual victim(s) and Victim Companies be referred to only by pseudonyms (Company A, Company B, etc.) during trial.

Respectfully Submitted,

ROBERT E. MCGUIRE
Acting United States Attorney
Middle District of Tennessee

*s/ Joshua A. Kurtzman*
JOSHUA A. KURTZMAN
Assistant U. S. Attorney
719 Church Street - Suite 3300
Nashville, Tennessee 37203-3870
Telephone: 615-401-6617

*s/ Gregory Jon Nicosia, Jr.*
GREGORY JON NICOSIA, JR.
D.C. Bar No. 1033923
Trial Attorney
National Security Division
950 Pennsylvania Avenue, NW
Washington, DC 20530
(202) 353-4273
Gregory.Nicosia@usdoj.gov

UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | NO. 3:24-CR-00151 |
| v. ) | |
| ) | JUDGE RICHARDSON |
| MATTHEW ISAAC KNOOT ) | |

**PROPOSED ORDER REGARDING THE USE OF PSEUDONYMS**

IT IS HEREBY ORDERED by the Court, pursuant to Federal Rule of Criminal Procedure 16(d) and 18 U.S. Code § 3771(b)(1), that:

1. The Victim Companies and their representatives (the "Victim Companies") may testify at trial using pseudonyms (Company A, Company B, Company C, etc.) and without revealing their corporate name, business addresses, or other identifying information;

2. The individual victim identified in Government's indictment (DE #3) may testify at trial under pseudonym (A.M. or Andrew M.) and without revealing their full name, full date of birth, full social security number, or other identifying information;

3. The Defendant, defense witnesses, and defense counsel shall also refer to the individual victim identified in Government's indictment (DE #3) and the Victim Companies and their representatives using the identified pseudonym (A.M. or Andrew M.) or (Company A, Company B, Company C, etc.), respectively; and

4. Any violation of this Protective Order, as determined by the Court, will require, in addition to any other sanction deemed appropriate by the Court, the immediate redaction of the individual victim or Victim Companies' name from the trial transcript.

Dated: _____, 2025

SO ORDERED.

_____
THE HONORABLE ELI J. RICHARDSON
UNITED STATES DISTRICT JUDGE
MIDDLE DISTRICT OF TENNESSEE