IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | | | |
|---|---|---|---|
| UNITED STATES OF AMERICA, | ) | | |
| | ) | NO. | 3:24-cr-00151 |
| v. | ) | | |
| | ) | JUDGE RICHARDSON | |
| MATTHEW ISAAC KNOOT | ) | | |

**UNITED STATES' MOTION TO EXCLUDE PROPOSED DEFENSE EXPERT**

The United States of America, through Robert E. McGuire, Acting United States Attorney for the Middle District of Tennessee, Assistant United States Attorney Joshua Kurtzman, and United States Department of Justice Trial Attorney Gregory Nicosia, hereby moves to exclude the testimony of proposed defense expert Luis Castrillon due to defendant's failure to comply with the Federal Rule of Criminal Procedure 16(b)(1)(C) and the Court's expert witness disclosure deadlines.

**FACTUAL AND PROCEDURAL BACKGROUND**

On August 7, 2024, a Grand Jury in the Middle District of Tennessee returned a six-count indictment charging the defendant in Count One with Conspiracy to Damage Protected Computers, in violation of Title 18, United States Code, Section 371; Count Two with Conspiracy to Commit Money Laundering, in violation of Title 18, United States Code, Section 1956(h); Count Three with Conspiracy to Commit Wire Fraud, in violation of Title 18, United States Code, Section 1349; Count Four with Intentional Damage to a Protected Computer, in violation of Title 18, United States Code, Sections 1030(a)(5)(A), (c)(4)(B), and (c)(4)(A)(i)(I); Count Five with Aggravated Identity Theft, in violation of Title 18, United States Code, Sections 1028(a)(1) and 2; and Count Six with Conspiracy to Cause the Unlawful Employment of Aliens, in violation of Title 18, United States Code, Section 371. (DE # 3.)

1

As alleged in the indictment, from in or about July 2022 through in or about August 2023, the defendant "acted as a facilitator for one or more overseas [information technology or] IT workers using the persona YANG DI and conspired with them to obtain their employment with U.S. companies, perform work remotely, share in the proceeds generated by the remote IT work, and launder the proceeds of the scheme. This remote IT work was to be performed by individuals physically located within the United States, who were authorized for employment by U.S. companies." (DE # 3 at ¶ 6.) Specifically, each of the defrauded companies believed that it had hired a U.S. citizen named Andrew M., whose identity was stolen and used by Yang Di to fraudulently obtain remote IT work. (*Id.* at ¶¶ 8, 17.) As part of the conspiracy, Yang Di and the defendant agreed that the defendant would receive, set up, and host laptop computers shipped by Yang Di's employers to defendant's residences. (*Id.* ¶ 17c.) The defendant then received and hosted laptop computers issued by U.S. companies and addressed to Andrew M.—not Yang Di—at his Nashville, Tennessee residences – all for the purpose of deceiving the companies into believing that Andrew M. was located in the United States.[1] (*Id.* at ¶¶ 9, 17d.) Following receipt of the laptops, the defendant—all without authorization—logged on to the laptops, accessed the victim companies' networks, and downloaded and installed remote desktop applications. (*Id.* ¶ 9.) The remote desktop applications enabled Yang Di to work from locations outside the United States, in particular, China, while appearing to the victim companies as Andrew M. working from the defendant's residences. (*Id.*) In exchange, the defendant charged DI monthly fees for his services, including flat rates for each hosted laptop and a percentage of DI's salary for IT work, enriching himself off the scheme. (*Id.*)

---

[1] The term "residences" is used here because the defendant resided in two separate apartments during the course of the conspiracy.

The indictment provides further detail through numerous overt acts. For example, it alleges that on or about July 11, July 14, and August 8, 2022, DI obtained employment with Company C, B, and A, respectively, all while using the full name and other means of identification of Andrew M. (DE # 3 at ¶¶ 17a, 17b, and 17f.) On or about August 3 and August 8, 2022, DI provided the defendant with the login credentials—that is, a username and password—for the Company B and Company A laptops, respectively, which the defendant used to login to the companies' laptops and install, without authorization, remote desktop applications. (*Id*. at ¶¶ 17e, 17g, and 17h.) On or about June 22, 2023, the defendant again used login credentials to access a second Company B laptop and again install, without authorization, a remote desktop application—specifically, Splashtop Streamer. (*Id*. at ¶ 17m.)

On October 4, 2024, the defendant filed an unopposed motion to continue trial, which was granted on November 7, 2024. (DE # 16 and 29.) On February 17, 2025, the defendant filed a second unopposed motion to continue trial, which was granted on February 18, 2025. (DE # 39 and 41.) Pursuant to that order, trial was rescheduled for June 24, 2025. *Id*. That Order also set the United States deadline to file its expert witness disclosure "no later than six weeks prior to the above-stated trial date," which, based on the Order, was May 13, 2025. *Id*. On February 25, 2025, the parties filed a joint motion to set a status conference to discuss the June 24, 2025 trial date, which was held on March 4, 2025. (DE # 42.) During the status conference, both parties advised the Court that they were prepared to try this case in June 2024; however, the government sought a different date in June because counsel for the government had a scheduling conflict. Specifically, another pending trial. During the status conference, the defendant, through counsel, made it clear that he was prepared for trial and unwilling to sign a speedy trial waiver. Based on those representations, the United States resolved its scheduling conflict—accomplished by the United

3

States coordinating a continuance in the conflicting trial—and advised the Court that the United States was prepared to proceed with the currently set trial date and related deadlines. (DE # 47.)

On May 9, 2025, the United States complied with Court's February 18, 2025 Order and filed its Notice of Expert Testimony identifying three expert witnesses that would testify at trial. (DE # 61.) In this Notice, the United States requested "pursuant to Fed. Crim. R. (16)(b)(1)(C) disclosure of a written summary of expert testimony the defendant intends to use as evidence at trial or at any hearing." (*Id.* at 14.) On May 9, 2025, the defendant filed a third motion to continue trial, which the United States opposed, that was granted on May 22, 2025.[2] (DE # 58 and 70.) Pursuant to that order, trial was rescheduled for August 12, 2025. *Id*. That Order also directed that "[i]f defendant does have a reciprocal obligation to provide an expert witness disclosure, the deadline for such disclosure is four weeks prior to the above-stated trial date." (*Id.* at 3.) Based on this order, the defendant's expert disclosures were due no later than July 15, 2025.

On July 25, 2025, just over two weeks before trial, and ten days after its expert disclosure deadline, the defendant filed a third Motion to Continue Trial and Related Deadlines. (DE # 90.) As a basis for this request, the defendant cited two recent discovery productions provided on June 25, 2025, and July 16, 2025, and the possibility of additional discovery. (*Id.* at ¶ 5-7.) The defendant also mistakenly noted that they did not have forensic images of the "victim laptops." (*Id.* at ¶ 3.) The United States opposed this continuance and noted that "no forensic image of the victim company laptops exists [but] a forensic image of the defendant's personal computer exists which the Government produced to the defendant on Oct[ober] 23, 2024, via a hard drive." (DE #93 at 3.) On July 31, 2025, during a telephonic status conference, the Court granted the

---

[2] Defendant's third motion to continue was filed approximately two weeks prior to defendant's deadline to provide expert witness disclosure to the United States, as set forth in the February 18, 2025 Order, giving defendant an additional two weeks to prepare his expert witness notice.

4

defendant's request for a continuance and ordered that the defendant to file his late expert disclosure by the end of the day and set a briefing schedule regarding the government's objection to the defendant's untimely disclosure of an expert witness. (*Id.* at 98.)

On July 31, 2025, the defendant provided a notice of expert testimony over two weeks after the expert disclosure deadline had passed and almost three months after the United States disclosed its experts. (DE # 99.) The expert notice for the defendant's proposed expert, Mr. Luis Castrillon, states that he "will testify to the collection, examination, preservation, and presentation of digital evidence." (*Id.* at 1.) Under a section entitled "Opinions, Basis, and Reasons for Opinions" the defendant disclosed the following:

1. Mr. Castrillon will discuss every stage of the process of imaging digital devices, including computers, laptops, and cellular devices. He will discuss the methodologies that prevent evidence from being changed, altered, or corrupted.
2. He may testify concerning the procedures to follow in the collection and preserving of digital evidence.
3. He will testify to what a virtual private network ("VPN") is and describe how it functions, the common purpose for using a VPN, transferring data via VPN, and the overall security features of a VPN. He will further describe the different types of VPNs that are primarily used in common digital spaces.
4. Mr. Castrillon will testify and explain what an IP address is and how it is used by digital devices to send and receive information across the internet, how it can be used to track the users of those devices, and the interaction between IP addresses and VPNs.
5. He will testify regarding what remote desktop usage is and the common software applications installed on devices to allow use. He will discuss how those applications affect the devices they are installed on and how the application interacts with VPNs and IP addresses.
6. He will testify to his digital review of the devices the FBI seized from Mr. Knoot's home which include Mr. Knoot's personal laptop, his cellular device, and the victim laptops in question. He will further discuss his findings on critical digital evidence such as emails, data logs, and file histories that may be stored on the devices and the methods he followed to reach his conclusions.

7. He will testify to any documents produced from electronic sources via the devices he examined including but not limited to, log files, user access histories, user account information, user account information including security levels and access control lists, and user account information including usernames, account types, and passwords.

8. In regard to Mr. Knoot's personal cellular device, Mr. Castrillon may testify to the underlying extraction process used to extract data from the device, all stored SMS, MMS content and/or browser cache, call detail records including originations, terminations, call attempts, and voice and text message transactions.

(*Id.* at 1-3.)

The defendant's late disclosure was not accompanied by an expert report or any basis for the lateness of his disclosure.

## LAW AND ARGUMENT

**I.  This Court Should Exclude Defendant's Proposed Expert Testimony Disclosed After the Court's Deadline.**

This Court set deadlines for the defendant to disclose any expert witness testimony after the United States disclosed its proposed experts and well in advance of the trial date requested by defense counsel. (See DE 70.) Despite having ample time to retain and disclose an expert, the defendant failed to do so, thereby violating Rule 16 of the Federal Rules of Criminal Procedure as well as an Order of this Court. Rule 16 requires a defendant to provide reciprocal discovery to the government concerning expert witnesses. Fed. R. Crim. P. 16(b)(1)(C). Although the timing of disclosure is committed to the district court's discretion, it must occur "sufficiently before trial to provide a fair opportunity for the government to meet the defendant's evidence." *Id*. An expert disclosure must include "a complete statement of all opinions" the witness will offer, the bases and reasons for those opinions, the witness's qualifications, and a list of cases in which the witness has provided expert testimony during the preceding four years. *Id*. If a party fails to comply with these requirements, the district court has discretion to exclude the evidence or impose other appropriate remedies. *Id*.; *see also United States v. Bauer*, 82 F.4th 522, 535 (6th Cir. 2023) ("[W]e

have often held that district courts do not abuse their discretion by excluding defense experts for failure to comply with Rule 16."); *United States v. Pittman*, 816 F.3d 419, 425 (6th Cir. 2016) (excluding expert testimony where the defendant "never offered a good explanation for failing to provide notice . . . he suffered little (if any) prejudice because the court said he could offer other evidence . . .").

Despite the late timing of his disclosure, the defendant has neither explained—nor shown good cause for—his failure to comply with the Court's expert disclosure deadlines. The Government respectfully submits that the defendant cannot establish good cause for the belated disclosure of his proposed expert witness for three independent reasons. First, the delay cannot be justified by any newly discovered information concerning the nature of the charges, as each area of the proposed expert testimony pertains to issues already raised by the indictment. For example, the defendant indicates that his expert will testify about "what a virtual private network ('VPN') is and describe how it functions, the common purpose for using a VPN, transferring data via VPN, and the overall security features of a VPN," as well as "remote desktop usage." (DE #99 at 2.) The indictment, filed on August 7, 2024, expressly alleges the use of VPNs and remote desktop software by North Korean IT workers to advance the goals of the charged conspiracy. (DE #3 at 2.) Moreover, the Government's expert disclosure made clear—on multiple occasions—that its witnesses would also testify regarding these same subjects. (DE #61 at 6, 7, 11, 13.) Second, the defendant has long been on notice that the contents of the computers seized from his residence would be a significant issue at trial. As the Court is aware from its extensive review of pre-trial pleadings, the search of the defendant's residence occurred on August 8, 2023. Additionally, the defendant, with current defense counsel, met with the government on December 7, 2023 for an ultimately unsuccessful proffer session in which the defendant stated the he "initially believed

Yang [Di] was a software engineer who worked remotely," thereby underscoring the defendant's knowledge of the core issues in this case. Therefore, the defendant cannot show good cause for the untimely disclosure of an expert expected to testify about the examination of devices seized nearly two years before trial. Third, the defendant has repeatedly assured the Court—both in written filings and during in-person hearings—that he was ready for trial, and at no time did he indicate any difficulty locating or retaining an expert. Indeed, assuming *arguendo* defendant's representation to the Court in March 2025 were true, defendant should have easily been able to file his expert witness disclosure on May 27, 2025, in accordance with the February 18, 2025 scheduling Order. Accordingly, any alleged difficulty in obtaining or retaining an expert witness does not justify the late disclosure.

The defendant's belated disclosure has placed the United States in the untenable position of having to wait and see whether the defense expert will submit a report, evaluate that report if and when it is produced, and then determine whether to retain its own expert to rebut the anticipated testimony—all on the eve of trial or potentially during it. This last-minute disclosure has prejudiced the Government's ability to effectively prepare its case. Under these circumstances, the Court has ample authority to exclude the defendant's proposed expert testimony as untimely. *See United States v. Foley*, 111 F. App'x 840 (6th Cir. 2004) (upholding district court's decision to exclude defense expert testimony in part for failure to file "in a timely manner, either his notice of intent to call an expert or his expert-witness summary"); Fed. R. Crim. P. 16(d)(2)(C) (court may prohibit a party from introducing undisclosed evidence for violation of Rule). Moreover, it appears that the defendant's Motion to Continue the trial may have been motivated, at least in part, by an attempt to intentionally circumvent the expert disclosure deadline. That fact—or, at a

8

Case 3:24-cr-00151    Document 101    Filed 08/08/25    Page 8 of 11 PageID #: 504

minimum, the strong inference that the passed deadline contributed to the defendant's desire to delay trial—weighs in favor of excluding the proposed expert testimony.

In *United States v. Lang*, the Sixth Circuit addressed the issue of excluding defense experts due to an apparent willful violation of Rule 16's disclosure requirements and held that exclusion was appropriate. 717 F. App'x 523, 537-38 (6th Cir. 2017). Barbara Lang was convicted on twenty-one counts of federal drug and money-laundering charges for running a "pill mill" in Tennessee. *Id*. at 527. On appeal, Lang raised numerous evidentiary arguments, including that the District Court erred by excluding 14 defense expert witnesses. *Id.* at 536-37. Lang attempted to call the 14 medical providers at the beginning of her case-in-chief, and the government objected that it had not been given the required notice of expert testimony under Federal Rule of Criminal Procedure 16(b)(1)(C). *Id.* at 537. At trial and on appeal, Lang maintained the medical providers were being offered as lay witnesses, not experts, despite claiming the witnesses should be permitted to testify about "'why a physician wrote a specific prescription on a specific day, [and] whether the doctor believed the patient needed that prescription at the time." *Id*. The District Court barred Lang from calling the witnesses because she failed to provide the required notice under Rule 16. *Id.* The District Court found that Lang's "failure to disclose the witnesses was a tactical ambush, designed to circumvent Rule 702 and avoid revealing her witnesses" to the government. *Id*. The Sixth Circuit held that District Court did not abuse its discretion by barring these witnesses based on "Lang's consciousness of the witnesses' expert purpose, the timing of the [disclosure], Lang's ample opportunity to disclose the witnesses, and the length of the trial." Accordingly, the Government respectfully submits that the defendant's expert witness should be excluded.

9

## **CONCLUSION**

For the foregoing reasons, the United States respectfully requests that this Court exclude Mr. Castrillon's testimony. Alternatively, to the extent the Court intends to permit such testimony, the Government requests that the Court exercise its gatekeeping function to ensure Mr. Castrillon does not exceed the limited opinion identified in the expert notice or serve as a conduit to offer self-serving statements by the defendant or other inadmissible information.

> Respectfully submitted,
>
> ROBERT E. MCGUIRE
> Acting United States Attorney for the
> Middle District of Tennessee
>
> */s/ Joshua A. Kurtzman*
> JOSHUA A. KURTZMAN
> Assistant United States Attorney
> 719 Church Street, Suite 3300
> Nashville, Tennessee 37203
> Telephone: 615-736-5151
>
> */s/ Gregory Jon Nicosia, Jr*.
> GREGORY JON NICOSIA, JR.
> D.C. Bar No. 1033923
> Trial Attorney
> National Security Division
> 950 Pennsylvania Avenue, NW
> Washington, DC 20530
> (202) 353-4273
> Gregory.Nicosia@usdoj.gov

## CERTIFICATE OF SERVICE

I hereby certify that on August 8, 2025, I electronically filed one copy of the foregoing document with the Clerk of the Court by using the CM/ECF system, which will send a Notice of Electronic Filing to counsel for all defendants in this case.

*/s/ Joshua A. Kurtzman*
JOSHUA A. KURTZMAN
Assistant United States Attorney