# UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF TENNESSEE
### NASHVILLE DIVISION

| | |
|---|---|
| **UNITED STATES OF AMERICA** | ) |
| | )   **No. 3:24-CR-00151** |
| **v.** | )   **JUGDE RICHARDSON** |
| | ) |
| **MATTHEW ISSAC KNOOT** | ) |

## RESPONSE IN OPPOSITION TO COMPANY A'S MOTION TO PROCEED ANONYMOUSLY

This Court should deny Company A's motion to proceed anonymously and should instead follow the protocols that the Government and Defendant Matthew Knoot agreed to in the Stipulation (DE 82-1). Company A's proposal—pursuant to which it seeks to proceed entirely by pseudonym (such that neither the jury pool nor the jury will know Company A's corporate name)—undermines Knoot's due process rights while the protocols agreed-upon by the parties (set out in the Stipulation at DE 82-1) strikes the correct balance between that right, the parties' interest in empaneling an impartial jury, and Company A's right to have its privacy respected. Thus, this Court should reject that proposal and follow the protocols at DE 82-1

## BACKGROUND

The Court is generally familiar with the allegations in this case, but, as a reminder: The Government claims that a North Korean persona referred to as "Yang Di" fraudulently obtained remote IT work with a few domestic companies and that Knoot is criminally responsible for that conduct because he helped Yang complete the work that those companies hired him to do.

In the lead-up to trial, the Government moved *in limine* for an order directing the parties to refer to those companies and their representatives—including Company A and its representatives—"by pseudonyms," contending that "[t]he use of pseudonyms" at trial was

1

"necessary to protect the [companies] from harm, embarrassment, inconvenience, unfairness, undue negative media attention," and from being "target[ed] by foreign adversaries." (DE 75).

On July 18, 2025, however, after discussing the motion with the Court, the Government and Knoot tendered a stipulation resolving the motion. In it, they agreed as follows:

- First, the companies will be referred to by pseudonyms and their representatives will be referred to by first name and last initial only.

- Second, the Government will create a "key" indicating the real and full names of the witnesses and keep that key "in strict confidence," disclosing it only to the Court, the parties, and the jury.

- Third, at the close of trial, the Government will destroy all copies of the "key" except for one, which will remain in the Government's records.

(DE 82-1).

The parties reached this agreement in an effort to strike the appropriate balance between Knoot's right to due process (presenting a defense, etc.), both parties' interest in empaneling an impartial jury, and the rights of the companies/witnesses under the Crime Victims' Rights Act, 18 U.S.C. § 3771, to "be treated with fairness and with respect for" their "dignity and privacy."

And on July 21, 2025, this Court indicated that it "intends to honor" the joint stipulation, meaning that the names of the companies (and the representatives) who were duped by Yang will not appear on the record and will only be known to the parties, the Court, and the jury. (DE 84).

Despite all that, Company A claims that the protective measures set out in the stipulation aren't good enough. (*See* DE 105). More specifically, it says that allowing the jury to learn its name and the last names of its corporate representatives "undoes" the "protections" set out in the stipulation and that, since "Company A's public identity is . . . irrelevant to" Knoot's defense, allowing the jury to know Company A's name (and the full names of Company A's representatives) does nothing but expose Company A to harm. (*Id.*).

2

As such, it asks the Court to enter an order: (1) allowing Company A and its representatives to proceed pseudonymously "without providing any key to the jury" that would allow the jury to learn Company A's public name and/or the last names of its representatives, and (2) requiring the parties to redact Company A's name and any information that might result in the identification of Company A's witnesses from any exhibits or other materials used at trial.

Since most if not all exhibits containing Company A's name will be introduced by the Government (and the Government will thus be responsible for redacting them), Knoot has no objection to Company A's request for redactions. Beyond that, the motion should be denied.

## LAW & ARGUMENT

Subsection (a)(8) of the Crime Victims' Rights Act generally provides that "[a] crime victim" has a "right to be treated with fairness and with respect for [its] dignity and privacy" and further directs courts to "ensure" that those rights are "afforded." 18 U.S.C. § 3771(a)(8).

Given the vagueness of these terms—"ensure," "fairness," "respect"—it's not particularly clear "what specific procedures or substantive relief, if any, Congress intended this provision to require or prohibit." *United States v. Turner,* 367 F. Supp. 2d 319, 323 (E.D.N.Y. 2005)

But as other courts have acknowledged, the statute "clearly does ***not*** require . . . courts to adopt every conceivable procedure that might protect" a victim. *Id.* (emphasis added).

Here, as noted, Company A seeks an order allowing it to proceed completely by pseudonym. As support, it claims that, if the jurors learn Company A's name (or the names of its representatives), they might disclose that information, which, in turn, might result in retaliation from the North Korean government. Given that risk, Company A submits that—since its name is "irrelevant" to Knoot's defense strategy—its name should be kept from the jury.

This Court should deny Company A's request for three reasons:

**1.** First, Company A has not established that proceeding pseudonymously is necessary to protect it from an "actual" and "specific" threat. A witness "seek[ing] to withhold [its] true name" and identifying information from a jury "bears the burden of" proving—with evidence—that it faces an "actual" and "specific" threat if its identity is revealed to the jury. *United States v. Ramos-Cruz*, 667 F.3d 487, 500 (4th Cir. 2012). Fears of retaliating based on "conjecture" are insufficient. *Id.* Here, Company A hasn't presented any evidence (affidavits, etc.) establishing that it faces an actual and specific threat if its public name is disclosed to the jury. Instead, it simply argues that if its name is disclosed, a juror might reveal its name, and, eventually, the North Korea might find out that Company A cooperated in the Government's investigation and might, in turn, choose to retaliate against Company A. Respectfully, these concerns are overblown. The likelihood that a juror might disclose Company A's public identity to someone who, in turn, might report Company A's identity to a North Korean official is slim. Further, Yang (whoever or whatever Yang is) already knows Company A's identity, so, if Yang is actually connected to a North Korean remote-work scheme (a fact which hasn't been proven yet), he presumably could've already report Company A's name to North Korean government officials who could, in turn, could've already retaliate against Company A. That hasn't happened, and Company A's argument that it will as a result of the jury learning Company A's name is farfetched. Complete anonymity is not required.

**2.** Second, contrary to Company A's assertions, its public name *is* relevant to Knoot's defense. Knoot expects that the Government's proof at trial will touch on what Knoot knew about Yang's conduct, including (but not limited to) what Knoot knew about Yang's employment status with Company A. If the jury learns that Company A—a company that the jury will be familiar with and which presumably has teams of HR personnel who vet new hires—was duped into hiring Yang, then it may be more inclined to believe that Knoot, an individual who *does not* have teams

4

of HR personnel vetting the persons he interacts with online, was *also* tricked by Yang. In this way, Company A's public name is relevant to Knoot's defense strategy.

**3.** Third, the privacy-related protocols set out in DE 82-1—and which both Knoot and the Government have already agreed to—will adequately protect Company A's interest.

As Company A's motion shows, whether and how courts protect the victim privacy requires balancing the defendant's interest in presenting a defense, the public's interest in an open trial and record, the parties' interest in empaneling a fair jury, and the victim's interest in privacy.

The protocols laid out in DE 82-1—and which the parties have already agreed to— adequately balances these interests. Yes, twelve (or fourteen) random people will know Company A's name. But they will also know that Yang's scheme was strong enough to dupe not only Knoot but also a big company (like Company A). Further, if Company A's name is disclosed, the parties and court can rest assured that no one in the jury or jury pool is affiliated with Company A—an important consideration given that Company A is a large organization which (as best the undersigned can tell) employs people who reside in the Middle District of Tennessee.

## **CONCLUSION**

In sum, and as noted above, the CVRA "clearly does not require . . . courts to adopt every conceivable procedure that might protect" a victim. *Turner,* 367 F. Supp. 2d at 323.

Instead, it instructs courts to reasonably ensure that a victim's privacy is "respect[ed]." The privacy-protocols in DE 82-1 respect Company A's privacy without comprising Knoot's defense and the jury selection process, and, accordingly, Knoot requests that this Court deny Company A's motion and follow the DE 82-1 protocols instead.

5