IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

UNITED STATES OF AMERICA )
) NO. 3:24-CR-00151
v. )
) JUDGE RICHARDSON
MATTHEW ISAAC KNOOT )

**ORDER**

The plea of guilty is accepted. The recommendations in the plea agreement are reserved until the time of sentencing.

Eli Richardson
U.S.D.J.

# PLEA AGREEMENT

The United States of America, by and through Robert E. McGuire, Acting United States Attorney for the Middle District of Tennessee, Assistant United States Attorney Joshua A. Kurtzman, Assistant Attorney General for National Security John A. Eisenberg, and United States Department of Justice, National Security Division Trial Attorney Gregory J. Nicosia, Jr., (collectively, the "United States"), and the defendant, Matthew Isaac Knoot, by and through the defendant's counsel, David Fletcher, pursuant to Rule 11(c)(1)(A) of the Federal Rules of Criminal Procedure, have entered into an agreement, the terms and conditions of which are as follows:

Charges and Penalties in This Case

1. The defendant has been charged in the Indictment in this case with the following offenses:

   a. Count One: Conspiracy to Cause Damage to Protected Computers, in violation of Title 18, United States Code, Section 371, which has a maximum penalty of incarceration for 5 years; supervised release for 3 years; a fine of $250,000; a mandatory special assessment of $100; restitution; and forfeiture as charged in the Indictment;

   b. Count Two: Conspiracy to Commit Money Laundering, in violation of Title 18, United States Code, Section 1956, which has a maximum penalty of incarceration for 20 years; supervised release for 3 years; a fine of $500,000 or twice the value of the property involved in the transaction, whichever is greater; a mandatory special assessment of $100; restitution; and forfeiture as charged in the Indictment;

1

  c. Count Three: Conspiracy to Commit Wire Fraud, in violation of Title 18, United States Code, Section 1349, which has a maximum penalty of incarceration for 20 years; supervised release for 3 years; a fine of $250,000; a mandatory special assessment of $100; restitution; and forfeiture as charged in the Indictment;

  d. Count Four: Intentional Damage to a Protected Computer, in violation of Title 18, United States Code, Sections 1030(a)(5)(A), (c)(4)(B) and 2, which has a maximum penalty of incarceration of 10 years; supervised release for 3 years; a fine of $250,000; a mandatory special assessment of $100; restitution; and forfeiture as charged in the Indictment;

  e. Count Five: Aggravated Identity Theft, in violation of 18 U.S.C. Title 18, United States Code, Sections 1028A(a)(1) and 2, which has a mandatory term of imprisonment of 2 years; and

  f. Count Six: Conspiracy to Cause the Unlawful Employment of Aliens, in violation of Title 18, United States Code, Section 371, which has a maximum penalty of incarceration of 6 months and a fine of $3,000 per each unauthorized alien.[1]

  2. As a result of the defendant's offenses, the defendant is subject to forfeiture of property as alleged in the Indictment.

  3. The defendant must pay upon conviction a special assessment fee of $100, pursuant to Title 18, United States Code, Section 3013.

  4. As part of any sentence, in addition to any term of imprisonment and/or fine that is imposed, the Court may order the defendant to pay restitution to any victim of the offense, as required by law.

  5. The defendant has read the charges against the defendant contained in the Indictment. Those charges have been fully explained to the defendant by the defendant's attorney. The defendant fully understands the nature and elements of the crimes with which the defendant has been charged.

---

[1] On July 22, 2025, the Court granted Defendant's Motion to Dismiss, as to Count 6 of the Indictment. (DE # 88.)

## Charge to Which the Defendant is Pleading Guilty

6. By this Plea Agreement, the defendant agrees to enter a voluntary plea of guilty to Count One of the Indictment. Defendant faces the following maximum penalties with respect to Count One: incarceration for 5 years; supervised release for 3 years; a fine of $250,000; a mandatory special assessment of $100; and restitution. In addition, as further provided below, the defendant agrees to entry of a forfeiture judgment. After sentence has been imposed on Count One as agreed herein, the United States will move to dismiss Counts Two, Three, Four, and Five in the Indictment.

## Factual Basis

7. The defendant will plead guilty because the defendant is in fact guilty of the charge contained in Count One of the Indictment. In pleading guilty, the defendant admits the following facts and that those facts establish the defendant's guilt beyond a reasonable doubt:

> Since 2003, the government of the Democratic People's Republic of Korea ("DPRK" or "North Korea") has been under sanction by the United Nations ("UN") due to, among other things, its nuclear weapons program. Since 2016, the United States has likewise had comprehensive trade and economic sanctions against North Korea, effectively cutting North Korea off from the U.S. marketplace and financial system and restricting the ability of U.S. persons and companies from doing business with DPRK institutions. As a result, North Korea has sponsored a variety of schemes to evade these sanctions and earn money for the regime. As part of one such scheme, North Korea has dispatched thousands of highly skilled information technology ("IT") workers to obtain remote, pseudonymous employment with companies around the world. While some of these IT workers operate from cities inside North Korea, many work in the Peoples Republic of China ("China") in cities near the North Korean border.

> North Korean IT workers are aided in this fraud by persons residing in the United States. These U.S. facilitators receive and host laptop computers and other hardware issued by U.S. victim companies at the facilitators' residences in the United States. Using login credentials provided to them by the overseas IT workers—and unbeknownst to and without authorization from the U.S. victim companies—the U.S. facilitators then enable remote access to the laptop computers by the overseas IT workers by downloading remote desktop software (*e.g.*, AnyDesk) to the computers. The DPRK IT workers use the remote desktop software to access U.S.-

3

based computers so that it appears to U.S. victim companies that the overseas IT workers are performing their work from U.S.-based locations. Remote desktop software applications allow a computer to remotely run another computer's desktop environment. The remote connection between devices is established and maintained through the Internet. In exchange for these and other services, many U.S. facilitators are paid a fee. Most of the money generated by this scheme, however, is funneled to the overseas IT workers and their overseas co-conspirators.

From in or around July 2022 and continuing through in or around August 2023, the defendant, Matthew Isaac Knoot ("Knoot"), a U.S. citizen and resident of Nashville, Tennessee, acted as a facilitator for one or more overseas IT workers using the persona "Yang Di" and conspired with them to obtain their employment with U.S. companies, perform work remotely, share in the proceeds generated by the remote IT work. At all relevant times, Knoot believed Yang Di was a Chinese national residing outside, and not authorized to work in, the United States. In furtherance of the scheme, the Yang Di persona used the stolen identity of a U.S. citizen ("Andrew M.") to apply for and obtain remote IT work at U.S. companies. After Yang Di obtained remote IT work, Knoot received and hosted the laptop computers issued by U.S. companies to "Andrew M." at Knoot's Nashville, Tennessee residences for the purposes of deceiving the companies into believing that Andrew M. was located in the United States. Following receipt of the laptops, and without authorization from the victim companies, Knoot logged on to the laptops, downloaded and installed remote desktop applications, and accessed without authorization the victim companies' networks.

Between on or about July 21, 2022 and on or about July 22, 2022, Knoot and Yang Di conducted text-based conversations via email and Discord in which they agreed that Knoot would, among other things, receive, set up, and host laptop computers shipped by Yang Di's employers in the name of Andrew M. to Knoot's residence. Specifically, Knoot and Yang Di agreed to allow Yang Di to use Knoot's name and LinkedIn account and assist Yang Di with U.S. employment verification and tax paperwork to obtain additional work. In exchange, Yang Di agreed to pay Knoot $500 per month per laptop computer and 20 percent of net profits. All employment was found and arranged by Yang. Knoot's only actions throughout, were to manage the laptops for Yang's.

On or about July 25, 2022, Knoot received at his residence a laptop sent by Company B addressed to Andrew M. On or about August 3, 2022, Yang Di provided Knoot with login credentials for a Company B laptop and asked Knoot to configure the laptop for Anydesk or another remote desktop software. Without authorization from Company B, Knoot used the login credentials provided by Yang Di to access the Company B laptop and installed remote desktop software on the Company B laptop. On or about June 22, 2023, Knoot received a second laptop from Company B addressed to Andrew M. at Knoot's residence. Between on or about June 22, 2023, and June 26, 2023, Knoot, without authorization from Company B, used login

4

credentials provided by Yang Di to access the Company B laptop and installed a remote desktop software called Splashtop Streamer.

On or about July 27, 2022, Knoot received a laptop sent by Company A addressed to Andrew M. at Knoot's residence. On or about August 8, 2022, Yang Di provided Knoot with login credentials for a Company A laptop. Between on or about August 8, 2022, and on or about August 9, 2022, Knoot, without authorization from Company A, accessed the Company A laptop, connected the Company A laptop to Company A's network, and then installed AnyDesk on the Company A laptop. From in or about August 2022 through in or about March 2023, the conspirators accessed Company A's laptop, then located at Knoot's residence, from IP addresses resolving to China in violation of, among other things, Company A's policies relating to both international travel and providing network access to another individual in a high-risk country.

On or about August 10, 2022, Knoot received a laptop sent by Company C addressed to Andrew M. at Knoot's residence. Prior to on or about August 21, 2022, Yang Di provided Knoot with login credentials for a Company C laptop. On or about August 21, 2022, and without authorization from Company C, Knoot used the login credentials provided by Yang Di to access the Company C laptop and installed Anydesk on the Company C laptop.

On or about August 9, 2022, Knoot received a laptop sent by Company D addressed to Andrew M. at Knoot's residence. In or around August 2022, Knoot, without authorization from Company D, used the login credentials provided by Yang Di to access the Company D laptop and installed remote desktop software on the Company D laptop.

On August 8, 2023, the Federal Bureau of Investigation ("FBI") executed a search of Knoot's residence located at 1818 Church Street, Apartment 416, Nashville, Tennessee. After Yang Di made multiple attempts to contact Mr. Knoot via Discord, Knoot voluntarily reported to the FBI that he had received phone calls from an individual named "Yan Di" using phone number 571-572-9678 on August 10, 2023. Knoot denied knowing this individual and further denied knowing how to spell Yang Di's name. Also on August 10, 2023, Knoot initiated the deletion of the mellamomateo Discord account that he used to communicate with Yang Di. According to records provided by Discord, the account deletion was completed on August 24, 2023.

The remote desktop software installed by Knoot enabled the Yang Di persona to work from locations outside the United States, in particular, China, while appearing to the victim companies as Andrew M., working from Knoot's residences. In exchange, Knoot charged Yang Di monthly fees for his services, including flat rates for each hosted laptop, enriching himself off the scheme. The conspiracy impacted at least five companies that collectively paid at least $258,553.74 in wages to Yang Di, operating the Andrew M. persona, and caused at least $544,700 in losses,

5

Case 3:24-cr-00151    Document 119    Filed 09/29/25    Page 5 of 18 PageID #: 694

representing the cost to remediate the victim companies' corporate computer networks and devices, audit code created by Yang Di, and pay associated legal fees. Knoot was paid approximately $15,100 for his services, which is substantially less than the $500 per month, per laptop, plus 20 percent of money earned from the remote IT work that he and Yang Di had agreed to in July 2022.

This statement of facts is provided to assist the Court in determining whether a factual basis exists for the defendant's plea of guilty and criminal forfeiture and to assess relevant conduct for purposes of the United States Sentencing Guidelines. The defendant also acknowledges that for the purpose of determining the applicable advisory sentencing range under the United States Sentencing Guidelines (hereinafter "U.S.S.G."), all of the above conduct constitutes relevant conduct for U.S.S.G. purposes. The statement of facts does not contain each and every fact known to the defendant and to the United States concerning the defendant's and/or others' involvement in the offense conduct and other matters.

<u>Acknowledgement and Waivers Regarding Plea of Guilty: Trial Rights</u>

8. The defendant understands that by pleading guilty the defendant waives and surrenders certain trial rights, including the following:

   a. If the defendant persisted in a plea of not guilty to the charges, the defendant would have the right to a public and speedy trial. The defendant has a right to a jury trial, and the trial would be by a judge rather than a jury only if the defendant, the United States, and the Court all agreed to have no jury.

   b. If the trial were a jury trial, the jury would be composed of twelve laypersons selected at random. The defendant and the defendant's attorney would have a say in who the jurors would be by removing prospective jurors for cause, or without cause by exercising so-called peremptory challenges. The jury would have to agree unanimously before it could return a verdict of either guilty or not guilty. At trial, the jury would be

6

Case 3:24-cr-00151    Document 119    Filed 09/29/25    Page 6 of 18 PageID #: 695

instructed that the defendant is presumed innocent; that the United States bears the burden of proving the defendant guilty of the charges beyond a reasonable doubt; and that the jury must consider each count of the Indictment against the defendant separately.

    c.    If the trial were held by the judge without a jury, the judge would find the facts and determine, after hearing all the evidence, whether or not the judge was persuaded of the defendant's guilt beyond a reasonable doubt.

    d.    At a trial, whether by a jury or a judge, the United States would be required to present its witnesses and other evidence against the defendant. The defendant would be able to confront those government witnesses, and the defendant's attorney would be able to cross-examine them. In turn, the defendant could present witnesses and other evidence on the defendant's own behalf. If the witnesses for the defendant would not appear voluntarily, the defendant could require their attendance through the subpoena power of the Court.

    e.    At a trial, the defendant would have the right not to testify, and no inference of guilt could be drawn from the defendant's refusal to testify.

9.    The defendant understands that, by pleading guilty, the defendant is waiving all of the trial rights set forth in the prior paragraph. The defendant's attorney has explained those rights, and the consequences of the defendant's waiver of those rights, to the defendant.

<u>Sentencing Guidelines Calculations</u>

10.    The parties understand that the Court is required to consider the U.S.S.G., together with the other sentencing factors set forth at Title 18, United States Code, Section 3553(a), in determining the defendant's sentence. The parties agree that the U.S.S.G. to be considered in this case are those effective at the time of sentencing.

7

11. The parties have no agreement regarding the sentencing guidelines calculation in this case, other than that the defendant is entitled to a 2-level reduction, pursuant to U.S.S.G. § 4C1.1(a), for certain zero-point offenders.

12. For purposes of determining the U.S.S.G. advisory guidelines range, the United States proposes to the following guidelines range. The defendant has not agreed to this calculation:

    a. <u>Offense Level Calculations.</u>

        i. The base offense level for Count One is 6, pursuant to U.S.S.G. § 2B1.1(a)(2), because the defendant was not convicted of an offense referenced to this guideline that has a statutory maximum term of imprisonment of 20 years or more.

        ii. The base offense level for Count One is increased by 24 levels, pursuant to the follows U.S.S.G. Sections:

            1. 14 levels, pursuant to § 2B1.1(b)(1)(H), because the offense resulted in an estimated loss amount of more than $550,000;

            2. 2 levels, pursuant to § 2B1.1(b)(10)(C), because the offense involved sophisticated means and the defendant intentionally engaged in or caused the conduct constituting sophisticated means;

            3. 2 levels, pursuant to § 2B1.1(b)(11)(C)(i), because the offense involved the unauthorized transfer or use of any means of identification unlawfully to produce or obtain any other means of identification;

            4. 4 levels, pursuant to § 2B1.1(b)(19)(A)(ii), because the defendant was convicted of an offense under 18 U.S.C. § 1030(a)(5)(A); and

            5. 2 levels, pursuant to § 3C1.1(a), because the defendant willfully obstructed or impeded, or attempted to obstruct or impede, the administration of justice with respect to the investigation, prosecution, or sentencing of the instant offense of conviction,

and the obstructive conduct related to the defendant's offense of conviction.

  iii. The United States agrees that no additional upward or downward adjustments or U.S.S.G.-based departures are appropriate. This includes any downward adjustment for acceptance, pursuant to § 3E1.1, because the defendant falsely denied and frivolously contested relevant conduct and engaged in conduct resulting in an enhancement under § 3C1.1(a) (obstruction) during the to the investigation, prosecution, or sentencing of the instant offense of conviction. *See* § 3E1.1, comment. (n.1(A) and 4). The defendant has not agreed to this provision.

  iv. In the event that the Probation Office or the Court contemplates any U.S.S.G. adjustments, departures, or calculations different from those recommended or agreed upon above, the parties reserve the right to answer any inquiries and to make all appropriate arguments concerning the same.

Therefore, the United States agrees to recommend to the Court that the defendant's final offense level is 28 (the "Recommended Offense Level").

 b. <u>Criminal History Category.</u>

  i. The parties agree to recommend that the defendant is in Criminal History Category I.

 c. <u>Recommended Guidelines Range.</u>

  i. The United States proposes that the Recommended Offense Level, when combined with the defendant's Criminal History Category, results in a recommended advisory guidelines range, prior to any downward departures, of 78 to 97 months of imprisonment (the "Recommended Guidelines Range"). The

parties acknowledge that the maximum period of incarceration permitted by law for Count One is 60 months.

13. The defendant understands that the offense level as ultimately determined by the Court (the "Court-determined Offense Level") may be different than the Recommended Offense Level. The defendant likewise understands that the guidelines range as ultimately determined by the Court (the "Court-determined guidelines range") may be different than the Recommended Guidelines Range.

14. The defendant is aware that any estimate of the offense level or guidelines range that the defendant may have received from the defendant's counsel, the United States, or the Probation Office is a prediction, not a promise, and is not binding on the Probation Office or the Court. The defendant understands that the Probation Office will conduct its own investigation and make its own recommendations, that the Court ultimately determines the facts and law relevant to sentencing, that the Court's determinations govern the final guidelines calculation, and that the Court determines both the final offense level and the final guidelines range. Accordingly, the validity of this agreement is not contingent upon any estimate of the offense level or guidelines range that the defendant may have received from the defendant's counsel, the United States, or the Probation Office.

### Agreements Relating to Sentencing

15. <u>Sentencing Recommendation</u>. Each party is free to recommend whatever sentence it deems appropriate. The defendant understands that the defendant's request is not binding on the Court and, after considering the defendant's Sentencing Guidelines, the Court may impose the maximum penalties set forth above. The defendant understands further that the defendant will not be permitted to withdraw the defendant's guilty plea if the Court does not adopt the defendant's

request. The parties jointly request that the Court accept the defendant's plea of guilty as set forth in this agreement and accept the plea agreement and enter an order reflecting the acceptance of both the plea and this plea agreement.

## Restitution and Fines

*[handwritten initials: JPK, DKF, GJW]*

16. <u>Restitution</u>. The *[handwritten insertion: government contends that the]* amount of restitution owed to Andrew M., Company A, Company B, Company C, and Company D is at least $800,000. Pursuant to Title 18, United States Code, Section 3663A, the Court must order the defendant to make restitution in an amount determined by the Court, minus any credit for funds repaid prior to sentencing.

17. Pursuant to Title 18, United States Code, Section 3572, all monetary penalties, including restitution imposed by the Court, shall be due and payable immediately upon judgment, shall be subject to immediate enforcement by the United States, and shall be submitted to the Treasury Offset Program so that any federal payment or transfer of returned property the defendant receives may be offset and applied to federal debts (which offset will not affect the periodic payment schedule). If the defendant is unable to pay immediately, then the defendant agrees to the imposition of a schedule of payments established at sentencing. If the Court imposes a schedule of payments, the schedule of payments shall be merely a schedule of minimum payments and shall not be a limitation on the methods available to the United States to enforce a judgment.

18. The defendant agrees to cooperate with the United States in collecting any unpaid fine and restitution for which the defendant is liable, including providing financial statements and supporting records as requested by the United States.

## Forfeiture

### Forfeiture in the Form of a Money Judgment

19. The defendant acknowledges that the defendant obtained approximately $15,083.50 in proceeds of the offense of conviction, and that as a result of the defendant's acts or omissions, the actual proceeds of the offense are not available for forfeiture.

20. As provided in Title 21, United States Code, Section 853(p), the defendant acknowledges that the United States is entitled to forfeiture of substitute property up to the value of the money judgment entered pursuant to this agreement.

General Forfeiture Terms

21. The defendant waives any defect in or failure of notice in the charging instrument, inclusion in the judgment, and any other procedural requirements of Fed. R. Crim P. 32.2.

22. The defendant will cooperate with the United States in all forfeiture-related matters. This cooperation will include, but not be limited to: (a) truthful testimony; (b) consent to discovery concerning property involved in the offense and the defendant's assets; (c) execution of documents required to effect this agreement, including transfers of substitute assets; (d) the production or release of tax information, returns, or other financial documents concerning the defendant; and (e) repatriation of any proceeds of the offense held outside the United States.

23. Unless otherwise specifically agreed, the defendant relinquishes all claims or disputes in any administrative or civil forfeiture proceeding arising from the facts and circumstances at issue in the criminal case.

24. The U.S. Probation and Pretrial Services Office may release the Presentence Investigative Report to the Asset Forfeiture Unit of the United States Attorney's Office.

25. Forfeiture shall not be treated as satisfaction of any fine, cost of imprisonment, or any other penalty the Court may impose. The United States will seek approval from the Money Laundering and Asset Recovery Section of the U.S. Department of Justice ("MLARS") via the

processes outlined at 28 C.F.R. § 9 and Title 18, United States Code, Section 3664, for any forfeiture payment to be credited toward any restitution obligation imposed in this matter. However, the ultimate discretion to grant or deny such requests lies with MLARS.

Presentence Investigation Report/Post-Sentence Supervision

26. The defendant understands that the United States Attorney's Office, in its submission to the Probation Office as part of the Presentence Investigation Report and at sentencing, shall fully apprise the District Court and the United States Probation Office of the nature, scope, and extent of the defendant's conduct regarding the charges against the defendant, as well as any related matters. The government will make known all matters in aggravation and mitigation relevant to the issue of sentencing.

27. The defendant agrees to execute truthfully and completely a Financial Statement (with supporting documentation) prior to sentencing, to be provided to and shared among the Court, the United States Probation Office, and the United States Attorney's Office regarding all details of the defendant's financial circumstances, including the defendant's recent income tax returns as specified by the Probation Office. The defendant understands that providing false or incomplete information, or refusing to provide this information, may be used as a basis for denial of a reduction for acceptance of responsibility pursuant to U.S.S.G. § 3E1.1 and enhancement of the defendant's sentence for obstruction of justice under U.S.S.G. § 3C1.1, and may be prosecuted as a violation of Title 18, United States Code, Section 1001, or as a contempt of the Court.

Waiver of Appellate Rights

28. Regarding the issue of guilt, the defendant hereby waives all (i) rights to appeal any issue bearing on the determination of whether the defendant is guilty of the crime(s) to which the defendant is agreeing to plead guilty; and (ii) trial rights that might have been available if the

defendant had exercised the right to go to trial. Regarding sentencing, the defendant is aware that Title 18, United States Code, Section 3742 generally affords a defendant the right to appeal the sentence imposed. Acknowledging this, the defendant knowingly waives the right to appeal any sentence within or below the Court-determined guidelines range. The defendant further waives all appellate rights and collateral attacks concerning forfeiture and all matters related thereto. The defendant also knowingly waives the right to challenge the sentence imposed in any motion pursuant to Title 18, United States Code, Section 3582(c)(2) and in any collateral attack, including, but not limited to, a motion brought pursuant to Title 28, United States Code, Sections 2255 and/or 2241. However, no waiver of the right to appeal, or to challenge the adjudication of guilt or the sentence imposed in any collateral attack, shall apply to a claim of involuntariness, prosecutorial misconduct, or ineffective assistance of counsel. Likewise, the government waives the right to appeal any sentence: (i) within or above the Court-determined guidelines range.

## Other Terms

29. This Plea Agreement concerns criminal liability only. Except as expressly set forth in this Plea Agreement, nothing herein shall constitute a limitation, waiver, or release by the United States or any of its agencies of any administrative or judicial civil claim, demand, or cause of action it may have against the defendant or any other person or entity. The obligations of this Plea Agreement are limited to the United States Attorney's Office for the Middle District of Tennessee and National Security Division, National Security Cyber Section, of the U.S. Department of Justice. Nothing in this plea agreement binds any other federal, state, or local prosecuting, administrative, or regulatory authorities, including Immigration and Customs Enforcement, except as expressly set forth in this Plea Agreement.

30. Should the defendant engage in additional criminal activity after the defendant has pled guilty but prior to sentencing, the defendant shall be considered to have breached this Plea Agreement, and the government at its option may void this Plea Agreement.

## Conclusion

31. This Plea Agreement is entirely voluntary and represents the entire agreement between the United States Attorney and the defendant regarding the defendant's criminal liability in Case No. 3:24-CR-00151.

32. The defendant and the defendant's attorney acknowledge that no threats have been made to cause the defendant to plead guilty.

33. No promises, agreements, or conditions have been entered into other than those set forth in this Plea Agreement, and none will be entered into unless memorialized in writing and signed by all of the parties listed below.

34. The defendant understands that the Indictment and this Plea Agreement have been or will be filed with the Court, will become matters of public record, and may be disclosed to any person. If the defendant moves to file this Plea Agreement under seal, the defendant consents to the disclosure of the Plea Agreement as required by the United States' discovery obligations.

35. The defendant understands that the defendant's compliance with each part of this Plea Agreement extends until such time as the defendant is sentenced, and failure to abide by any term of the Plea Agreement is a violation of the Plea Agreement. The defendant further understands that in the event the defendant violates this Plea Agreement, the United States, at its option, may move to vacate the Plea Agreement, rendering it null and void, and thereafter prosecute the defendant not subject to any of the limits set forth in this Plea Agreement, or may require the defendant's specific performance of this Plea Agreement. The defendant understands and agrees

that in the event that the Court permits the defendant to withdraw from this Plea Agreement, or the defendant breaches any of its terms and the government elects to void the Plea Agreement and prosecute the defendant, any prosecutions that are not time-barred by the applicable statute of limitations on the date of the signing of this Plea Agreement may be commenced against the defendant in accordance with this paragraph, notwithstanding the expiration of the statute of limitations between the signing of this Plea Agreement and the commencement of such prosecutions.

36. <u>The Defendant's Signature:</u> I hereby agree that I have consulted with my attorney and fully understand all rights with respect to the pending Indictment. Further, I fully understand all rights with respect to the provisions of the Sentencing Guidelines that may apply in my case. I have read this Plea Agreement and carefully reviewed every part of it with my attorney. I understand this Plea Agreement, and I voluntarily agree to it.

Date: 9/29/25

_____
Matthew Isaac Knoot
The Defendant

37. <u>Defense Counsel Signature:</u> I am counsel for the defendant in this case. I have fully explained to the defendant the defendant's rights with respect to the pending Indictment. Further, I have reviewed the provisions of the Sentencing Guidelines and Policy Statements, and I have fully explained to the defendant the provisions of those guidelines that may apply in this case. I have reviewed carefully every part of this Plea Agreement with the defendant. To my knowledge, the defendant's decision to enter into this Plea Agreement is an informed and voluntary one.

Date: 9/29/25

_____
David Fletcher

Attorney for the Defendant

Respectfully submitted,

ROBERT E. McGUIRE
Acting United States Attorney

By: *(signature)*
Rachel Stephens
Deputy Chief Criminal Chief

*(signature)*
Joshua A. Kurtzman
Assistant U. S. Attorney

*(signature)*
Sean M. Newell
Chief, National Security Cyber Section

*(signature)*
Gregory Jon Nicosia, Jr.
Trial Attorney

18