# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF TENNESSEE
### NASHVILLE DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | NO. 3:24-CR-00151 |
| v. | ) | |
| | ) | JUDGE RICHARDSON |
| MATTHEW ISAAC KNOOT | ) | |

### GOVERNMENT'S SENTENCING MEMORANDUM

Comes now the United States of America, by and through the undersigned United States Department of Justice Trial Attorney, Gregory J. Nicosia, Jr., and hereby submits this sentencing memorandum for defendant MATTHEW ISAAC KNOOT (the "defendant").

For more than a year, the defendant conspired with a North Korean information technology ("IT") worker known to him as "Yang Di" to obtain employment with companies in the United States. The defendant's role was essential to the scheme's success: he operated a "laptop farm" at which he received and maintained laptop computers shipped by the victim companies to his Nashville residences in the name of Andrew M., a U.S. citizen whose identity the defendant knew was stolen. The defendant then installed remote desktop software onto those laptops to deceive the victim companies into believing that Yang Di—using the name Andrew M.—was living in and eligible to be employed in the United States. The defendant's actions threatened national security by enriching the North Korean government and caused victim companies to incur substantial loss. When confronted by law enforcement, the defendant made multiple false and misleading statements and destroyed evidence to obstruct the investigation.

The United States respectfully recommends a sentence of 60 months imprisonment, the maximum authorized by statute. The United States further recommends that the Court impose 36 months of supervised release, a special assessment of $100, and a money judgment in the amount

1

of $15,083.50 (the amount the defendant was paid for his participation in the conspiracy). This sentence reflects the seriousness of the defendant's criminal conduct and his role in the conspiracy. As explained below, the requested sentence would adequately serve the interests of justice as codified in 18 U.S.C. § 3553(a).

## PROCEDURAL HISTORY

On August 7, 2024, a grand jury indicted the defendant with Conspiracy to Damage Protected Computers, in violation of Title 18, United States Code, Section 371 (Count One); Conspiracy to Commit Money Laundering, in violation of Title 18, United States Code, Section 1956(h) (Count Two); Conspiracy to Commit Wire Fraud, in violation of Title 18, United States Code, Section 1349 (Count Three); Intentional Damage to a Protected Computer, in violation of Title 18, United States Code, Sections 1030(a)(5)(A), (c)(4)(B), and (c)(4)(A)(i)(I) (Count Four); Aggravated Identity Theft, in violation of Title 18, United States Code, Sections 1028(a)(1) and 2 (Count Five); and Conspiracy to Cause the Unlawful Employment of Aliens, in violation of Title 18, United States Code, Section 371 (Count Six).  (DE # 3.) On July 22, 2025, the Court granted defendant's Motion to Dismiss as to Count Six of the indictment. (DE # 88.)

On September 29, 2025, the defendant entered a voluntary plea of guilty to Count One of the indictment pursuant to a plea agreement with the United States. (DE # 119.) Sentencing is scheduled to occur on March 30, 2026.

## RELEVANT FACTS

The plea agreement describes in detail the facts that establish defendant's guilt beyond a reasonable doubt. (DE # 119 ¶ 7.) This memorandum summarizes those facts and highlights additional ones relevant to the Court's sentencing.

The government of the Democratic People's Republic of Korea ("DPRK" or "North

2

Korea") has sponsored a variety of schemes to evade comprehensive U.S. and United Nations sanctions in order to earn money for the regime, including remote IT worker schemes like the one in which the defendant participated. From in or around July 2022 and continuing through in or around August 2023, the defendant assisted one or more overseas IT workers using the Yang Di persona to obtain employment with U.S. companies, perform work remotely, and share in the proceeds generated by the remote IT work. The defendant's overseas co-conspirator(s) obtained remote IT work positions with at least five different companies, receiving approximately $258,553.74 in wages for that work. The defendant was paid $15,083.50 for role in the scheme. The companies that unwittingly hired the defendant's co-conspirator(s) incurred losses in the amount of at least $544,700 to audit the code created by them, to remediate company networks and devices, and in associate legal fees.

The defendant's role in this scheme ended when he was confronted by law enforcement. On August 8, 2023, the Federal Bureau of Investigation ("FBI") executed a court-authorized search of the defendant's residence. While the search was occurring, the defendant agreed to a voluntary interview by the FBI. The defendant told the FBI that he worked remotely for "Andrew M[REDACTED]" as a consultant, logged into company laptops using Andrew M.'s credentials, and kept the laptops shipped to his home in Andrew M.'s name updated and connected to the internet. The defendant stated he never met Andrew M. in person and only communicated with him by text. The defendant further stated that he deleted most of his text messages with Andrew M. because his phone was running out of storage space. During the interview, the defendant did not mention knowing, working for, communicating with, or otherwise being associated with anyone named "Yang Di." The defendant's statements are directly contradicted by information recovered from his phone. On August 10, 2023, FBI agents reviewed a forensic image of the

3

defendant's cell phone and located text messages between the defendant and his then-girlfriend Ying Zhang dated July 29, 2023—about two weeks before the search of his home—in which the defendant asks if "the mouse is moving like **Yang** is connected"? (emphasis added). In response, Ms. Zhang sent a photo of Company B's laptop, which appeared to be in a chat and logged in as Andrew M., and then asked the defendant if she should "enable openVPNconnect."

Two days after the search, on August 10, 2023, at 10:33 a.m. Central Time, the defendant called one of the FBI agents who interviewed him and reported he had received phone calls from (571) 572-9678—a phone number investigators knew to be associated with the fictious Andrew M. persona because Yang Di had listed this number as Andrew M.'s phone number on pre-employment paperwork provided by the victim companies. The defendant stated the caller identified themself as "Yan Di." The defendant further claimed he was unsure how to spell the caller's name.

The falsity of the defendant's statements are further corroborated by the other evidence obtained through the investigation. Pursuant to the residential search warrant, the FBI seized, among other things, the defendant's desktop computer. Forensic analysis of the desktop computer revealed files named "yangdi0027 terms.docx" and "setup conversation.docx," which appear to be copies of the defendant's Discord and email communications discussing the remote IT work scheme with Yang Di. For example, the "yangdi0027 terms.docx" file contains a copy of Discord messages between the defendant (mellamomateo) and Yang Di (yangdi0027), in which Yang Di offered to pay the defendant to host laptops, excerpts of which are shown below:[1]

---

[1] Communications described in this memorandum are excerpts of more extensive communications. The government has redacted certain personally identifiable information contained in the described communications, but left in place any original typographical and grammatical errors. Full, unredacted copies of the communications are available for review *in camera* at the Court's request.

| Date / Time | Sender | Message |
| --- | --- | --- |
| 07/22/2022 | yangdi0027 | I confirmed two laptops right now |
| 07/22/2022 15:14 CT | yangdi0027 | and those jobs are started 8/1 |
| 07/22/2022 15:14 CT | yangdi0027 | and then will pay you as bi-weekly whenever I get the payments from the companies |
| 07/22/2022 | mellamomateo | I think the only issue was the profit sharing, what you proposed earlier was not good if I remember |
| 07/22/2022 15:33 CT | yangdi0027 | So summering again. Currently, two laptops should be sent within next week because start dates are 8/1. And also another one is also coming, so if everything goes well, totally 3 jobs. Payments are 500 USD per one for every month. Using your linkedin and name, I will do interviews myself while you dont have time. And you will assist me shortly for onboarding processes such as i-9 and w4 forms. In this case, your payments will be 10% from the net profits, and taxes will be paid by the companies, so no worries for that. Once you are back with your full time for this business, then you will do interviews under my live assistance, and you will handle only meetings, and I will handle developments and other stuff. In this business, lets charge as 50%/50%. So COOL for you |
| 07/22/2022 | mellamomateo | So I think at the core we have the right idea, but the issue is in the taxes. |
| 07/22/2022 | mellamomateo | I would prefer to have the business where your team handles most of the day to day operations/meetings. But I don't think 10% is good. Can we do 20%? I know I will have time to dedicate there and 10% is only like $800/month. |
| 07/22/2022 15:52 CT | yangdi0027 | Ok |
| 07/22/2022 15:52 CT | yangdi0027 | lets do 20% |
| 07/21/2022 18:21 CT | yangdi0027 | sounds good? |
| 07/21/2022 18:23 CT | yangdi0027 | let me know if you have any question |

The "setup conversation.docx" file contains a copy of email communications with Yang Di, including the following July 2022 communications in which Yang Di identifies himself and the defendant acknowledges him by that name:

| Date / Time | Sender | Message |
| --- | --- | --- |
| 07/22/2022 07:11 CT | yangdi0027@gmail.com | I hope you are doing well. This is Yang Di who is your new business partner. |

|  |  | I got the email from the client, and they are going to send the computer.<br>I am curious about one thing, if the computer arrives, will it arrive at your shipping station? |
| 7/22/2022 14:18 CT | matthewknoot@tutanota.com[2] | Hey Yang, yea that address will get the computer here and I will set it up for you when it arrives. |
| 7/22/2022 14:25 CT | yangdi0027@gmail.com | Thank you!<br><br>I am going to send two computers to you and they will arrive soon.<br><br>Once I get the shipping tracking number, will let you know. |

In other words, at the very beginning of the conspiracy, the defendant knew he was dealing with "Yang Di" and not Andrew M. or "Yan Di."

A few days later, Yang Di requested the defendant log into a victim company computer, using the Andrew M. credentials, and install AnyDesk remote desktop software.

| Date / Time | Sender | Message |
| --- | --- | --- |
| 07/25/2022 19:43 CT | yangdi0027@gmail.com | Two laptops should be delivered before 8/1.<br><br>3rd laptops will also be sent soon. But I am not sure about it for now. |
| 07/25/2022 23:46 CT | matthewknoot@tutanota.com | Sounds like that will work fine.<br><br>What is the start date for the 3rd company? |
| 7/26/2022 22:41 CT | yangdi0027@gmail.com | That 3rd job's start date is 8/8. I just confirmed it just ago. |
| 7/26/2022 22:48 CT | yangdi0027@gmail.com | Hello<br><br>The first laptop has been shipped today. This is the tracking number.<br><br>UPS: 1ZEV72912495090027<br><br>Delivery Date: 2022-07-25 18:56:24<br><br>Request #: RITM0250144 |
| 7/26/2022 12:57 CT | matthewknoot@tutanota.com | Laptop pic with the bookshelf it will live on |
| 7/26/2022 12:58 CT | yangdi0027@gmail.com | Great, thanks for the update! |

---

[2] Records produced by the property management for defendant's residence revealed that the defendant listed his email address as matthewknoot@tutanota.com.

| Date / Time | Sender | Message |
| --- | --- | --- |
| 7/29/2022 20:14 CT | yangdi0027@gmail.com | Hi Friend<br><br>Another computer is going to ship to your location. This is the tracking number. 1Z49UCT4T038086016 |
| (Timestamp not present in original) | yangdi0027@gmail.com | So at 8/8, 3 positions will be started, which means we need to configure the computer remote work environment at that date. |
| 08/03/2022 20:33 CT | yangdi0027@gmail.com | This is the login information for the laptop. Once logged in, first of all, we should set up the remote work configuration using Anydesk or Gmail.<br><br>This is the credentials:<br>User name: Andrew.M[REDACTED]@[Company B].com<br>Password: [REDACTED]<br><br>I will attach the instruction from the company to reference. Once you configure the remote work configuration using Anydesk or chrome extension, then I will set up everything for the work environment. |
| 08/03/2022 20:59 CT | yangdi0027@gmail.com | One more thing, if the anydesk is not installed, let me know immediately with some screenshots. |

Within the "setup conversation" Word document, investigators further located a partial email message in which Yang Di asks the defendant to communicate via Discord:

| Date / Time | Sender | Message |
| --- | --- | --- |
| 7/27/2022 19:19 CT | yangdi0027@gmail.com | Hi Mattew<br><br>How are you doing?<br><br>Are you able to get your Discord to chat real quick? |
| 7/27/2022 23:55 CT | matthewknoot@tutanota.com | Sorry I was out for the evening and am in bed bow. Can you email me?<br><br>I can chat tomorrow on Discord if you prefer |
| 7/28/2022 00:40 CT | yangdi0027@gmail.com | No worries, thanks for the update! |
| 7/28/2022 19:37 CT | matthewknoot@tutanota.com | See the disvord chat |

Soon after the August 8, 2023 search, the defendant took steps to destroy evidence of his crimes. Records produced by Discord in response to an order issued pursuant to 18 U.S.C.

§ 2703(d) revealed that the mellamomateo account was registered on October 13, 2019, using email address mknoot@gmail.com. Those same records revealed that the defendant requested that Discord delete his account on August 10, 2023, at 8:44 p.m. UTC, which is equivalent to 2:44 p.m. Central Time. In other words, the defendant made this deletion request approximately two days after the search of his home and approximately four hours after he called the FBI and claimed to have received phone calls—for the first time—from an individual named "Yan Di." Discord completed the deletion of the mellamomateo account—that is, removed all content associated with the account—on August 24, 2023, denying the FBI access to records to corroborate the partial messages saved on the defendant's computer.

Yang Di's Discord account, however, remained active when the FBI executed a court-authorized search of the account in April 2024. Search returns for the yangdi0027 account provided a complete chat history of the messages sent by Yang Di to the defendant's mellamomateo account that confirmed Yang Di was communicating with the defendant about the scheme:

| Date / Time | Sender | Message |
|---|---|---|
| 2023-08-03 19:18:19 UTC | yangdi0027 | please give me information with these fields |
| 2023-08-03 19:20:09 UTC | yangdi0027 | your phone, email, street and number, City/town. state., postal code |
| 2023-08-03 19:20:57 UTC | yangdi0027 | and I would select the "I am paying for project work" |
| 2023-08-03 19:21:19 UTC | yangdi0027 | you should know it, since Payoneer will try to verify it |
| 2023-08-03 19:25:09 UTC | yangdi0027 | is it your personal bank or business bank? |
| 2023-08-03 19:31:41 UTC | yangdi0027 | whats your phone? |
| 2023-08-03 19:31:56 UTC | yangdi0027 | that I can use for the bank details |
| 2023-08-03 19:35:34 UTC | yangdi0027 | "Matthew Knoot, [REDACTED], Franklin TN 37067 phone: [REDACTED] ============================ Bank name: Alliant Account Name: Matthew Knoot Account Number: [REDACTED]0914 Routing Number: [REDACTED]1528 +===========================" |
| 2023-08-03 19:35:39 UTC | yangdi0027 | check if everything is right |

The search returns also confirm that the defendant knew that Yang Di was *not* Andrew M., Andrew M.'s identity was stolen, and Yang Di was fabricating documents and applying to jobs using this stolen identity, as revealed in the following excerpts:

| Date / Time | Sender | Message |
| --- | --- | --- |
| 2023-02-23 16:21:11 UTC | yangdi0027 | can we have only one or two real employment history, and others could be anything with software engineer roles. |
| 2023-02-23 16:21:59 UTC | yangdi0027 | I think I can use Andrew's company emails. [] |
| 2023-02-23 16:29:09 UTC | yangdi0027 | "when doing Andrew's new jobs, they asked me to provide some reference docs or contacts from previous companies so that they can verify. and also some companies did not take care the employment history. Andrew is not software engineer, so I provided some reference contact numbers/emails of previous managers, and it was enough at that time." |

Similarly, Yang Di acknowledged, in messages with the defendant dated July 28, 2023 at 16:33:44 UTC, that he fabricated the driver's license he used to obtain jobs as Andrew M.: "... *I need to have the DL card here myself with my face and your real information*, but you could make the DL card with my face, though, but *I already did it myself before for Andrew's jobs*" (emphasis added).

Last, the Discord messages make plain that the defendant knew he was facilitating employment in the United States by someone located outside the United States and unauthorized to work in the United States. For example, in April 2023, after discussing laptop shipping for Company B, Yang Di wrote the defendant, "I am thinking if they figure out my location, then saying about the travel to China for some months."

<u>**ADVISORY SENTENCING GUIDELINES**</u>

A district court "should begin all sentencing proceedings by correctly calculating the applicable Guidelines range." *United States v. Gall*, 552 U.S. 38, 49 (2007). The advisory sentencing guidelines are "the product of careful study based on extensive empirical evidence

9

derived from the review of thousands of individual sentencing decisions" and are the "starting point and the initial benchmark." *Id.* at 46-49. On February 17, 2026, the United States Probation Office ("Probation Office") issued a Revised Presentence Investigation Report and Addendum (the "PSR") in which it determined the defendant's advisory guidelines range, including applicable adjustments. (PSR ¶¶ 49-58, 99-110.) As described below, the United States agrees with the PSR's findings and recommendations with one exception.

The offense of conviction is conspiracy to cause damage to protected computer in violation of 18 U.S.C. § 371, the applicable guidelines for which are U.S.S.G. § 2X1.1(a) and 2B1.1(a)(2). (PSR ¶ 50.) Pursuant to those sections, the base offense level is 6 pursuant to because the defendant was not convicted of an offense that has a statutory maximum term of imprisonment of 20 years. (*Id*. ¶ 50(a).) There is a 14-level upward adjustment under U.S.S.G. § 2B1.1(b)(1)(H) because the offense resulted in an estimated loss amount of more than $550,000 but less than $1,500,000. (*Id*. ¶ 50(a).) There is a 2-level upward adjustment under U.S.S.G. § 2B1.1(b)(10)(C) because the offense involved sophisticated means and the defendant intentionally engaged in or caused the conduct constituting sophisticated means. (*Id.* at ¶ 50c.) There is a 2-level upward adjustment under U.S.S.G. § 2B1.1(b)(11)(C)(i), because the offense involved the unauthorized transfer or use of Andrew M.'s means of identification unlawfully to produce or obtain any other means of identification. (*Id.* at ¶ 50(d).)

There is also a 2-level upward adjustment under U.S.S.G. § 3C1.1 for obstruction of justice. (*Id*. ¶ 54.) Here, the defendant willfully obstructed or impeded, or attempted to obstruct or impede, the administration of justice with respect to the investigation and prosecution of the instant offense of conviction by destroying or attempting to destroy evidence material to the investigation. As discussed above, the defendant lied about who he was working for and deleted the mellamomateo

Discord account that he used to communicate with Yang Di less than two days after his home searched and mere hours after to lying the FBI. (*See* DE # 119, ¶7.) As a result of this enhancement, the defendant is not entitled to credit for acceptance of responsibility. Pursuant to U.S.S.G. § 3E1.1, Application Note 4, conduct resulting in an enhancement under U.S.S.G. § 3C1.1 ordinarily indicates the defendant has not accepted responsibility for his criminal conduct. Application Note 3 further states that a defendant who enters a guilty plea is not entitled to an adjustment under § 3E1.1 as a matter of right, as the act of entering a guilty plea prior to trial and truthfully admitting the conduct comprising the offense of conviction can be outweighed by conduct that is inconsistent with such acceptance of responsibility, as is the case here.

For the reasons described in its memorandum filed on January 13, 2026, DE # 123, the United States believes that the defendant's guidelines calculation should also include a four-level enhancement pursuant to United States Sentencing Guidelines ("U.S.S.G.") § 2B1.1(b)(19)(A)(ii), relating to convictions under 18 U.S.C. § 1030(a)(5)(A). The Probation Office conferred with the United States Sentencing Commission (the "Commission") regarding this issue, and the Commission agreed with the United States' interpretation of U.S.S.G. § 1B1.3, comment. (n.7). (PSR Addendum at 1-2.) However, the Commission concluded this enhancement was appropriately omitted from the offense level computation due to current Sixth Circuit precedent. As stated in its memorandum, the United States believes this decision, *United States v. Nicolescu*, is not precedent because it did not clearly consider the issue and consciously reach a conclusion about it. (DE # 123at 7-8.) This Court, therefore, should apply the four-level enhancement of § 2B1.1(b)(19)(A)(ii).

The defendant is eligible for a 2-level reduction under U.S.S.G. § 4C1.1(a), because he meets the criteria to qualify as a zero-point offender. (*Id.* at ¶ 57.) Accounting for this reduction,

the government calculates the defendant's offense level at 28, and the Probation Office, because it did not apply the § 2B1.1(b)(19)(A)(ii) enhancement, calculates the offense level at 24. The defendant is in criminal history category ("CHC") I. (*Id.* at ¶¶ 58, 62.) The advisory guidelines range for an offense level of 28 (the United States' calculation) and CHC I is 78 to 97 months imprisonment. For an offense level of 24 (Probation Office's calculation) and CHC I, the advisory guidelines range is 51 to 63 months imprisonment.

## ANALYSIS OF FACTORS UNDER 18 U.S.C. § 3553

The district court should next consider all applicable factors set forth in 18 U.S.C. § 3553(a). *Gall*, 552 U.S. at 49-50. Based on these factors, the United States recommends a sentence of 60 months imprisonment, followed by 36 months of supervised release, a special assessment of $100, and a money judgment in the amount of $15,083.50. A 60-month sentence is within the guidelines range calculated by the Probation Office, below the guidelines range calculated by the United States, and is the maximum authorized by statute for a conviction under 18 U.S.C. § 371. This sentence is appropriately reflects and addresses the seriousness of the defendant's conduct, serves as a deterrent to other U.S.-based facilitators, and aligns with the statute's mandate that the "[C]ourt . . . impose a sentence sufficient, but not greater than necessary, to comply with the purposes" of sentencing. 18 U.S.C. § 3553(a).

### A. **The Nature and Circumstances of the Offense Are Serious**

The defendant and his co-conspirator(s) defrauded at least five companies out of nearly $260,000 for the benefit of North Korea, and the defendant's conduct was essential to the scheme's success. The defendant performed this essential role in the scheme for more than year with no signs of abating had the FBI not disrupted the operation through its court-authorized search of the defendant's home. The defendant took daily actions to keep the complex scheme in operation and

took steps to hide the fraud from Yang Di's employers: the defendant agreed to receive laptops shipped to his home by the victim companies in the name of Andrew M., download and install remote desktop software that circumvented the companies' security, and enabled unauthorized overseas workers access to the victim companies' systems and networks. This sophisticated ruse— in conjunction with the theft of Andrew M.'s identity—tricked the victim companies into believing they had hired a vetted software engineer living in Nashville, Tennessee. In fact, the companies had hired an insider threat working remotely from China, which caused the victim companies real damage as evidenced by the victim impact statement.

The defendant also knew that Yang Di was not authorized to work in the United States, that the Andrew M. identity was fraudulent and/or stolen, that Yang Di was using false identification documents to obtain work, and that the victim companies would not hired Yang Di if they had known the truth. Yet, the defendant facilitated Yang Di's unlawful employment for more than a year, stopping only when confronted by the FBI.

The defendant's conduct harmed the national security. Yang Di was a North Korean national working to raise revenue for the North Korean government. Defendant's support for this revenue generation scheme benefitted North Korea, even though it appears that he was unaware of North Korea's involvement. At a minimum, the defendant knew he was facilitating remote access to U.S. company networks by a purported Chinese national in China, which itself presents a substantial cybersecurity risk. In sum, the defendant's apparent ignorance of Yang Di's North Korean nationality does not mitigate the deliberate steps he took to facilitate Yang Di's revenue generation or the harm it caused.

## B.  <u>History and Characteristics of the Defendant</u>

The defendant has no criminal history, and he has accepted responsibility for his crime. These factors weigh in favor of a lower sentence. Weighed against these factors are the defendant's deliberate actions to mislead the FBI and obstruct the investigation. Based on the chat and email communications recovered from his *personal* desktop computer, it is beyond doubt the defendant knew he had communicated with an individual known as Yang Di as early as July 2022. Thus, the defendant's August 2023 interview statements and omissions were designed to mislead the FBI into thinking that he was assisting a real U.S. person named Andrew M. Two days after the search of his residence, the defendant *voluntarily* called the FBI and claimed he had been contacted by someone perhaps named "Yan Di," despite years of past communications with this same individual. Later the same day, the defendant then deleted the Discord account he used to communicate with Yang Di about the scheme, with the obvious goal of destroying evidence of his connections with Yang Di and role in the scheme. The serious nature of defendant's actions and his deliberate efforts to frustrate this investigation call for a proportionately serious sentence: the maximum penalty of 60 months.

## C.  <u>There is a Strong Need for General Deterrence</u>

A serious sentence is necessary to promote respect for the law and deter others from participating in similar schemes. North Korean IT worker schemes would not be successful without U.S.-based facilitators, like the defendant, who willingly assist overseas remote IT workers by operating laptop farms, defrauding U.S. companies, and, at times, pocketing substantial sums of money for their roles. A serious sentence in this case will deter others from enabling North Korean revenue generation that is a threat to the United States national security. Conversely, a sentence that is too lenient would convey the wrong message to both the North Korean government

and current and future U.S.-based facilitators that this conduct is tolerated in the United States and worth the risk of being caught by U.S. law enforcement.

**D. <u>This Sentence Avoids Unwarranted Sentence Disparities Among Defendants</u>**

The government is aware of six other cases involving a U.S.-based enabler of North Korean remote IT workers that will have proceeded to sentencing after pleading guilty pursuant to a plea agreement. The other matters are:

- *United States v. Christina Chapman*, D.D.C. Crim. No. 24-220-RDM,

- *United States v. Minh Phuong Ngoc Vong*, D.M.D. Crim. No. 24- 177-DLB,

- *United States v. Alexander Paul Travis,* S.D.Ga. Crim. No. 25-00059-JRH-BKE,

- *United States v. Jason Salazar*, S.D.Ga. Crim. No. 25-00060-JRH-BKE,

- *United States v. Audricus Phagnasay*, S.D.Ga. Crim. No. 25-00061-JRH-BKE, and

- *United States v. Erick Ntekereze Prince* S.D.Fl. Crim No. 25-20021-CR-GAYLES.[3]

In *Chapman*, a U.S.-based facilitator was sentenced to 102 months in prison. *See Chapman* Sentencing Transcript, attached hereto as Attachment A. As compared to the defendant, Chapman facilitated fraud against a significantly larger number of employers (300) and generated a substantially larger sum of money that was funneled to the North Korean regime ($6.8 million at the time of indictment). Nonetheless, much of the *Chapman* court's reasoning is applicable here. As the court there explained:

> Ms. Chapman knew what she was doing was wrong. She knew that she was assisting some enemy of the United States. It is not clear which enemy she thought, but she knew it was an enemy of the United States. She may have unwittingly

---

[3] In February 2026, a court in the District of Columbia sentenced a foreign national for facilitating North Korean revenue generation through an online business that allowed the IT workers to buy or rent stolen or borrowed identities belonging to real individuals in order to obtain remote IT work. *See United States v. Oleksandr Didenko*, D.D.C. Crim. No. 24-261-RDM. There, the defendant pled guilty to conspiracy to commit wire fraud and aggravated identity theft in violation of 18 U.S.C. §§ 1349 and 1028A, respectively, and was sentenced to 60 months in prison.

gotten involved at first, but she—as she continued through this process she knew what she was doing was unlawful. And … the consequences of what she did are extremely serious. They were real live victims whose lives were affected by her conduct, companies who were affected by her conduct. And most significantly from my perspective, the North Korean government was benefitted by her conduct in a manner that was material. And whether she knew it was North Korea or not or thought it was China or Pakistan, she thought she was helping some enemy of the United States. And I do think that the national security consequences of this case and cases like it are extremely, extremely serious.

Att. A, at 32–33. Although the court found that Ms. Chapman was "genuinely remorseful" and "the likelihood of recidivism [was] extremely low," the court nevertheless imposed a substantial sentence, saying: "courts are going to take this really, really seriously because the consequences to the safety of our nation are at issue here." *Id.* at 34.

In *Vong*, the U.S.-based facilitator pleaded guilty to a single-count indictment charging him with wire fraud conspiracy, in violation of 18 U.S.C. § 1349. Vong facilitated fraud against 14 companies and generated $977,538.33, which was ultimately funneled to the North Korean regime. Vong's guidelines range was 33 to 41 months' imprisonment, based on an offense level 20 and criminal history category I. The government sought a sentence of 30 months, and the defense sought home confinement. Ultimately, Vong was sentenced to 15 months in prison, owing to, among other things, Vong's very unique mitigating circumstances. Specifically, Vong was the sole caregiver to two children, one of whom had a rare genetic condition requiring specialized, life-long care. In rendering its judgment, the *Vong* Court made clear the offense was serious and that goals of sentencing required incarceration, despite these unique mitigating circumstances:

> This is an extremely serious offense. I have to consider the goals of sentencing. I start with the need to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment. These goals absolutely require a period of incarceration. Nothing short of incarceration will achieve them. I have to consider the need to afford adequate deterrence to criminal conduct, both specific and general deterrence. As for specific deterrence, I find that Mr. Vong has been sufficiently deterred by this arrest and prosecution, he has no criminal history, and I do not believe a period of incarceration is necessary to achieve the goal of specific

> deterrence in this case. General deterrence is another matter. I must consider it, and in this case, I think it's a very important goal, and it requires a period of incarceration.

*Vong* Sentencing Transcript, at 51–52.[4] In rendering a below-guidelines sentence, the Court recognized the government's request for 30 months was "certainly not unreasonable in this case." *Id.* at 53. It appears the Court rested its decision to depart from the guidelines due to "Mr. Vong's sole parental responsibilities for his children, in particular, for his son, who has significant special needs." *Id.*

In the Southern District of Georgia matters, three U.S.-based facilitators, Phagnasay, Salazar, and Travis, each pleaded guilty to a one count information charging conspiracy to commit wire fraud in violation of 18 U.S.C. § 1349. Sentencing in these three cases is scheduled for March 18 and 19, 2026, which is after the date this memorandum will be submitted. The United States will update this Court on the sentences imposed in these cases at the defendant's sentencing hearing.

In *Prince*, the U.S.-based facilitator pleaded guilty to a Count Two of the indictment charging him with wire fraud conspiracy, in violation of 18 U.S.C. § 1349. Prince facilitated fraud against 64 companies and generated $943,069.05, which was ultimately funneled to the North Korean regime. Prince's guidelines range was 41 to 51 months' imprisonment, based on an offense level 22 and criminal history category I. Prince's sentencing hearing is set to occur on March 26, 2026, which is after the date this memorandum will be submitted. The United States will update this Court on the sentences imposed in the *Prince* matter at sentencing the defendant's sentencing hearing.

---

[4] The *Vong* sentencing transcript was partially sealed by order of the Court, but can be made available for *in camera* review upon request.

In sum, the seriousness of the defendant's conduct and the threat to the national security posed by schemes such as this one counsel in favor of a period of incarceration. An appropriate sentence in this case, in light of all of the Section 3553(a) factors, is the statutory maximum sentence of 60-months, which is within the guidelines range calculated by the Probation Office and below the guidelines range calculated by the United States. Followed by 36 months of supervised release, a special assessment of $100, and a money judgment in the amount of $15,083.50. This sentence appropriately balances the severity of defendant's actions—which were essential to the scheme's success—against his apparent lack of knowledge of Yang Di's true nationality and the comparatively modest amount of money he ultimately received.

## **CONCLUSION**

Based on the foregoing, the United States respectfully recommends the Court sentence the defendant to 60 months of imprisonment, 36 months of supervised release, a special assessment of $100, and a money judgment in the amount of $15,083.50.

Respectfully submitted,

JOHN A. EISENBERG
Assistant Attorney General
National Security Division

By:    *s/ Gregory Jon Nicosia, Jr.*
GREGORY JON NICOSIA, JR.
D.C. Bar No. 1033923
Trial Attorney
U.S. Department of Justice
National Security Division
950 Pennsylvania Avenue, NW
Washington, DC 20530
(202) 353-4273
Gregory.Nicosia@usdoj.gov

19

## CERTIFICATE OF SERVICE

I hereby certify that the above document was filed through the ECF system and will be sent

electronically to the registered participants as identified on the Notice of Electronic Filing (NEF).

Date: March 16, 2026

*/s/ Gregory Jon Nicosia, Jr.*
GREGORY JON NICOSIA, JR.
Trial Attorney
National Security Division