IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

UNITED STATES OF AMERICA,

           Plaintiff,

      vs.

CHRISTINA CHAPMAN - 1,

           Defendant.
_____

Criminal Action
No 1: 24-220

Washington, DC
July 24, 2025

2:02 p.m.

TRANSCRIPT OF SENTENCING
BEFORE THE HONORABLE RANDOLPH D. MOSS
UNITED STATES DISTRICT JUDGE

APPEARANCES:

| For the Plaintiff: | Ashley R. Pungello<br>DOJ-CRM<br>1301 New York Avenue NW<br>Washington, DC 20530 |
| --- | --- |
| | Karen Patricia Seifert<br>U.S. ATTORNEY'S OFFICE<br>FOR THE DISTRICT OF COLUMBIA<br>555 4th Street, NW<br>Washington, DC 20530 |
| For the Defendant: | Alexis Morgan Gardner<br>FEDERAL PUBLIC DEFENDER<br>FOR THE DISTRICT OF COLUMBIA<br>625 Indiana Ave,NW<br>Suite 500<br>Washington, DC 20004 |
| Court Reporter: | Sherry Lindsay<br>Official Court Reporter<br>U.S. District & Bankruptcy Courts<br>333 Constitution Avenue, NW<br>Room 6710<br>Washington, DC 20001 |

P R O C E E D I N G S

THE COURTROOM DEPUTY:  Criminal case number 24-220, *United States of America versus Christina Chapman*.

Would counsel and probation please approach the podium, state their name for the record starting with government counsel.

MS. SEIFERT:  Good afternoon, Your Honor.  Karen Seifert for the United States.  With me at counsel table is Ashley Pungello from the criminal division of main justice.

THE COURT:  All right.  Good afternoon to both of you.

MS. GARDNER:  Good afternoon, Your Honor.  Alexis Gardner on behalf of Christina Chapman, who is present.

THE COURT:  All right.  Good afternoon.

MS. GAVITO:  Good afternoon, Your Honor.  Aidee Gavito with the probation office.

THE COURT:  Thanks for being here.

All right.  We are here this afternoon for the sentencing of Christina Chapman, who has pled guilty to three counts of a criminal indictment.  Count 2 is conspiracy to commit wire fraud in violation of 18 U.S.C. sections 1343 and 1349.  Count 4, aggravated identity theft in violation of 1028A(a)(1); and Count 6, which is conspiracy to launder monetary instruments in violation of 18 U.S.C. sections 1956(a)(1)(B)(h) and (i).

I have reviewed the presentence report from the probation office, as well as the recommendation from the probation office.  I have reviewed the sentencing memorandum, submitted on Ms. Chapman's behalf, as well as her letter to the Court.  And I reviewed the sentencing memorandum submitted by the government, as well as the other materials relating to restitution.

Let me ask Ms. Seifert, are there any additional materials that the government would request that I consider today?

MS. SEIFERT:  No, Your Honor.

THE COURT:  Okay.  And, Ms. Gardner, is there other materials the defense would request that I consider today?

MS. GARDNER:  No, Your Honor.

THE COURT:  So, Ms. Chapman, today's sentencing is going to go through a bunch of steps.  I know you are anxious just to get to the bottom line, but it is important that we go through all of these steps, so I can determine whether there is agreement with respect to the facts in the case, the relevant law, the guidelines.  And if there is any disagreement, then I need to resolve those disagreements before we can turn to sentencing.  So the first step will be for me to determine whether you have had an opportunity to review the presentence report and whether you have any objections to that.  The second step will be for me to determine the guidelines as they apply

in your case and whether there is a basis for a departure. The third step will be for me to hear from government counsel, hear from your lawyer, hear from you if you would like to address the Court, hear from anyone else you would like me to hear from. And then the last step will require me to fashion a just and fair sentence in light of factors that congress has specified in a statute, which is 18 U.S.C. section 3553(a). And as part of the last step, I will actually impose the sentence in the case.

So let's start with the presentence report, which was submitted to the Court on July 10th, 2025.

And, Ms. Seifert, does the government have any objection to any of the factual matters set forth in the presentence report?

MS. SEIFERT: No, Your Honor.

THE COURT: Okay. And, Ms. Gardner, does the defense have any objection to any of the factual materials set forth in the presentence report?

MS. GARDNER: No, Your Honor.

THE COURT: And, Ms. Chapman, have you had enough time yourself to review the presentence report?

THE DEFENDANT: Yes, I did.

THE COURT: Did you have enough time to talk with your lawyer about it?

THE DEFENDANT: Yes, I did.

THE COURT: Are you fully satisfied with the assistance of your lawyer?

THE DEFENDANT: Yes.

THE COURT: I will then accept the facts as set forth in the presentence report as my findings of fact for purposes of today's sentencing. The presentence report lays out the probation office's calculation of the advisory guidelines that apply in this case. And so let me go through both what the statutory criteria are with respect to sentencing as well as the guidelines. With respect to Count 2, which is conspiracy to commit wire fraud in violation of sections 1343 and 1349, the statutory maximum is 20 years imprisonment. For Count 4, aggravated identity theft in violation of 18 U.S.C. section 1028A(a)(1) congress has imposed the sentence -- a mandatory sentence of 2 years imprisonment, which has to be consecutive to all other counts. And for Count 6, conspiracy to launder money instruments -- or monetary instruments in violation of 18 U.S.C. sections 1956(a)(1)(B)(i) and (h) congress has imposed a maximum sentence of 20 years imprisonment.

With respect to the sentencing guidelines, I need to first group the relevant counts. And Counts 4 and 6 are grouped because Ms. Chapman stands convicted of a count of money laundering funds and count -- for the underlying offense, wire fraud from which the funds were laundered or from which those funds were derived. And the offense level applicable to

the group is the offense level for the most serious of the counts comprising that group.  And that is Count 6, which is conspiracy -- I'm sorry -- I may have misspoken.  I said Counts 4 and 6, I meant to say Counts 2 and 6.  Count 6, which is conspiracy to launder money instruments, results in the highest guidelines range.  So let me first address Count 4 and the guideline sentence for Count 4 is the term of imprisonment required by the statute pursuant to section 2B1.6 of the guidelines.  And thus, under the guidelines, chapter 3 with respect to the adjustments and other chapters of the guidelines don't apply with respect to that mandatory sentence.

Then turning to Count 1, conspiracy to launder money instruments, in violation of 18 U.S.C. sections 1956(a)(1)(B)(i) and (a)(1)(B)(h), the probation office has recommended a base offense level of 28, which starts at 8 based on section 2S1.1.  But in light of the fact that the IRS has indicated that the amount of funds laundered is more than $17.1 million, there is a 20-level addition, because the value of laundered funds was more than $9.5 million but less than $25 million, so that then leads to a 28 offense level.  There is a specific offense characteristic because the defendant was convicted under 18 U.S.C. section 1956, which results in a 2-level enhancement.  There is a further 4-level enhancement because the offense characteristics -- because the offense involved the business of laundering funds.  There is a 2-level

enhancement because section -- or subsection (b)(2)(B) applies and the offense involves sophisticated laundering. There is a 4-level enhancement because the defendant was an organizer or leader of a criminal activity that involved five or more participants or that her involvement was otherwise extensive. There is a 2-level enhancement for obstruction of justice because the defendant willfully obstructed or impeded or attempted to obstruct or impede the administration of justice with respect to the investigation, prosecution or sentencing of the incident offense of conviction. And the obstructive conduct related to the defendant's offense of conviction and any relevant conduct or was closely related.

So that all then leads to an offense level of 42.

Because Ms. Chapman has demonstrated acceptance of responsibility, she is entitled to a 2-level reduction and a further 1-level reduction for timely notifying the government of her intention to enter a plea of guilty. The zero-point offender guideline does not apply, because she received an aggravated role adjustment under 3B1.1. So the total final offense level is 39. Ms. Chapman does not have a criminal history that results in any criminal points. So in criminal history category 1 and offense level of 39, the guidelines recommend a sentence of between 262 months to 372 months. And the guidelines also recommend a fine of between 50,000 and $500,000.

Before I move on any further, are there any objections or clarifications with my description of any of the statutory sentencing considerations or rules or with respect to the guidelines calculation? Anything from the government?

MS. SEIFERT: No, Your Honor.

THE COURT: Anything from the defense?

MS. GARDNER: No, Your Honor.

THE COURT: Then with respect to the supervised release for Count 2, conspiracy to commit wire fraud, the Court may impose a term of supervised release of not more than three years and the guidelines recommend a term of supervised release of between 1 and 3 years.

For Count 4, the identity theft count, the Court may impose a term of supervised release of not more than one year. And the guidelines recommend one year. And then for Count 6, the money laundering count, the Court may impose a term of supervised release of not more than three years. And the guidelines again recommend a term of supervised release of between 1 and 3 years.

With respect to Counts 2 and 6, under 18 U.S.C. section 3561(a)(3) the defendant is ineligible for probation, because the defendant will be sentenced at the same time to a term of imprisonment for the same or for a different offense. And under 5B1.1(b)(3) the defendant is ineligible for probation because she will be sentenced at the same time to a term of

imprisonment for the same or different offense.

For Count 4, the defendant is ineligible for probation, because it it expressly precluded by statute. In addition, since the applicable guidelines range is in zone D of the sentencing table, the defendant is ineligible for probation. But even putting all of that aside, she is ineligible for probation, because this is a (c)(1)(C) plea and she has agreed to a term of imprisonment. On Count 2, the maximum fine is a million dollars. For Count 4, the maximum fine is $250,000. For Count 6, the maximum fine is $500,000. And the guidelines recommend a fine of between 50,000 and -- 50,000 and a million dollars.

If the defendant is convicted under a statute authorizing a maximum fine greater than $500,000 or a fine for each day of violation, the Court may impose a fine up to the maximum authorized by statute and there is a $100 special assessment for each count.

And then I have a proposed order of forfeiture. Have both sides reviewed the proposed order of forfeiture in the case?

MS. GARDNER: Yes, Your Honor.

MS. SEIFERT: Yes, Your Honor.

THE COURT: Is it acceptable to the defense?

MS. GARDNER: Yes, Your Honor.

THE COURT: And to the government?

MS. SEIFERT: Yes, Your Honor.

THE COURT: Okay. All right.

I will sign that at the appropriate time then.

And under the forfeiture agreement between the parties, Ms. Chapman will be required to forfeit $176,850 pursuant to a money judgment. Under 18 U.S.C. section 3663(a), the Court is required to order restitution. And I know I have received submissions from the government with respect to various victims seeking restitution.

Ms. Gardner, is the defense objecting to any of that? And if so, do you want some period of time to be able to submit objections?

MS. GARDNER: Yes, Your Honor. I have discussed with the government 30 days after today's date to get together and come to an agreement on the restitution amount.

THE COURT: Is that acceptable to the government?

MS. SEIFERT: Yes, Your Honor.

THE COURT: My recollection is that the Court has 60 days to enter that. Is that right?

MS. GARDNER: It is 90 days, Your Honor.

THE COURT: Ninety days. All right. That is fine. I will then order within 30 days. Should I have a joint status report from the parties with respect to their agreement or indicating if there is some area of nonagreement telling me what that is?

MS. PUNGELLO:  Your Honor --

THE COURT:  Ms. Pungello.

MS. PUNGELLO:  -- within 30 days, we can do a joint proposed order.  If we are unable to come together within 30 days, we will provide a briefing.

THE COURT:  Perfect.  So just for clarity on the record, I will direct that the parties do so within 30 days of today, which would take us -- well, because of the weekend, I will give you until the 25th of August.

All right.  And then with respect to whether there is a basis for departure, I don't know whether the parties conceive of the (c)(1)(C) as a departure or a variance or whether it makes a difference.

MS. SEIFERT:  I think it would be a variance.  And the parties would note that at the time in which we came up with the initial guidelines range, the government had not yet had the ability to go through the entirety of the files as related to the amount of revenue that was generated under the scheme.  And in an effort to resolve this case quickly and also to bring some finality to the process, the government and defense agreed to the guideline range that was in our initial plea paperwork.  And we are standing by that range.  I think as part of our allocution, we will explain why we think that therefore the range in the plea has already taken into account some of the mitigating factors here.  And that is part of what

we'll discuss in allocution, at least from the government's perspective.

THE COURT: Okay. And Ms. Gardner.

MS. GARDNER: That is fine, Your Honor.

THE COURT: Okay. So I can treat this as a variance. And also does the plea agreement actually specify a guidelines range in it or pre-(c)(1)(C) or what the dollar figures were?

MS. GARDNER: It does express a guideline sentence, Your Honor.

THE COURT: Where is that?

MS. GARDNER: It is on page 6 of 50 at the top, first paragraph.

THE COURT: Yes, I see that. So if it is acceptable to the parties, I have no problem with using the plea guidelines range, which is lower than the actual calculated guideline range as my starting point for purposes of determining where within the (c)(1)(C) range I should land, but let me confirm that is what the parties think I should do. So that is the 210 to 262 months, I believe.

MS. GARDNER: That is preferable to the defense.

THE COURT: Yeah, undoubtedly.

MS. SEIFERT: I am sure it would be. Typically -- and I believe this language is in the plea, but it will take me a minute to find it, even if the guidelines are calculated differently by the Court, that neither like party can object to

that. So I think the Court should take the guidelines as the Court found them and can consider the entirety of the situation both that it is the benefit of the bargain the parties have entered into but also that, you know, that the conduct -- I wouldn't encourage the Court to pick a different guidelines range because I think the point of the guidelines is to provide an across the board and in like circumstances determination of a magnitude of the crime. So I think the guidelines as the Court calculated them are appropriate. I think the Court just then has -- having already accepted the (C) plea then should consider what that means for the range.

THE COURT: Well, I am sure that I -- at the time I took the plea that I said to Ms. Chapman, because I do this every time I take a plea, that it is the Court who will ultimately determine the correct guidelines calculation.

MS. SEIFERT: Your Honor, just -- excuse me for interrupting you, but it is on page 6, the third language of -- the third paragraph, should the Court or probation determine the guideline range is different than the estimated range, your client is not eligible for an adjustment under 4C1.1. That is not a basis for withdrawal of the plea -- either party.

THE COURT: Okay.

MS. SEIFERT: So our advice and suggestion would be that the Court consider the guidelines as the Court has found them. And the Court use that to impose the sentence that the

Court believes is appropriate within the range the parties agreed to.

THE COURT: That makes sense to me. Although, what I would propose doing is what judges typically do in sentencing and just consider it all together. And to the extent there were any expectation interests relating to what Ms. Chapman thought she was agreeing to in the plea agreement, I can put that into the mix. And I will obviously, as I am required to do, put into the mix the actual guidelines calculations. Is there any objection to me proceeding that way?

MS. GARDNER: No, Your Honor.

MS. SEIFERT: Not from the government.

THE COURT: All right. That makes sense then.

All right. Then the probation office has recommended that I impose a sentence of 87 months on Counts 2 and 6 and 36 months of supervised release on those counts, to be served concurrently. And then impose a consecutive sentence for Count 4 of 24 months. And then a year of -- a one-year term of supervised release. Is that the -- I know that the term of incarceration has to be consecutive. Is the supervised release consecutive or would that be concurrent?

MS. GAVITO: It would be concurrent, Your Honor.

THE COURT: Okay. So that -- thank you for that clarification. So that results in a recommendation from the probation office of total prison term of 111 months and 36

months of supervised release. And the probation office has recommended no fine and an amount of restitution to be determined and a special assessment of $300. And that recommendation is based purely on the information set forth in the presentence report.

The plea agreement, as you all know, include -- it was a (c)(1)(C) agreement. And the (c)(1)(C) agreement is for a period of incarceration of 70 to 87 months on Counts 2 and 6 to be followed by 24 consecutive months of incarceration for Count 4 followed by 3 years of supervised release. And I have previously accepted the (c)(1)(C). And to the extent there is any lack of clarity on that, the Court does accept the (c)(1)(C) agreement.

I am now required to consider the factors that congress has specified in 3553(a). And I have to ensure that I impose a sentence that is sufficient but not greater than necessary to comply with the purposes of sentencing. Those purposes include the need for sentence imposed to reflect the seriousness of the offense, to promote respect for the law and to provide just punishment for the offense. The sentence should afford adequate deterrence of criminal conduct, protect the public from future crimes of the defendant and promote rehabilitation. In addition to the guidelines and policy statements, I must consider the nature and circumstances of the offense, the history and characteristics of the defendant, the

need for sentence imposed, the guidelines range, the need to avoid unwarranted sentencing disparities among defendants with similar records who have been found guilty of similar conduct and the types of sentences available.

The government has sought a sentence of 87 months on Counts 2 and 6 to run concurrently followed by a consecutive sentence of 24 months on Count 4 and 36 months of supervised release. The $300 special assessment and money damage award in the amount of $176,850.

Ms. Chapman has sought a term of incarceration at the low end of the (c)(1)(C) range.

Would the government like to be heard with respect to the relevant sentencing factors?

MS. SEIFERT: Yes, Your Honor.

THE COURT: Okay.

MS. SEIFERT: A top end sentence is warranted here. And I will go through four factors the government considers to be most important to the Court's analysis. The first is the scale of this case. The 68 Americans whose identities were stolen bought or used, 309 US victims who were companies that were infiltrated by North Korea workers, 100 times that false information was conveyed to the Department of Homeland Security, two US companies that had their data scraped and exfiltrated from their servers and $17 million of revenue for North Korea's weapons program.

Without question, this is one of the largest, if not the largest IT worker scheme that the Department of Justice has ever charged. This massive fraud could not have been possible without the defendant, Ms. Chapman. That scale alone warrants a top end sentence.

But specifically the second factor the Court should consider is defendant's conduct. The defendant let the conspirators use her credit card to open an account at an identity search company where the other conspirators would search the stolen identities and verify their personally identifiable information. The defendant forged federal I-9 forms saying to one of her conspirators, I did my best to copy your signature. The defendant helped workers confirm that state IDs they were making looked like the actual identification documents from those states. The defendant forged checks for wages that the IT workers received at her house and deposited them in her bank account and transferred them back to her co-conspirators overseas.

The defendant hosted more than 92 computers in her home which were seized by the FBI. Those computers were running every day so that North Korea IT workers can log in remotely and the business they worked for would believe that those individuals were actually in Arizona. The defendant pretended to be an IT worker when necessary so that the laptops, if there was something wrong with them, could be fixed

by the companies who were being defrauded.

She shipped 49 laptop overseas, including 35 laptops to Dandong, China, a city on the border of North Korea.

A simple Google search for Dandong would have told Ms. Chapman that it is the primary port for North Korean trade and gateway between their countries that is connected by a so-called friendship bridge.  Ms. Chapman claims she didn't know that she was dealing with North Korea.  And yet her conduct shows a reckless disregard for individuals she was working with and at the best burying her head in the sand as to their true identity.

Third, Ms. Chapman's knowledge.  She knew exactly what she was doing.  In her chat messages to her co-conspirators she said the following, on July 1st of 2022 she said, "I just found out from a lawyer that I can get in some serious legal trouble doing the money thing."

On July 5th of 2022, she said, "I just found out from a lawyer that I consulted that most of what I do for you guys could put me in federal prison due to the illegal exporting, doing business with a non-allied country without prior approval and allowing citizens from a non-allied country to freely use US internet."

While she claimed in that chat that she was going to try to figure out how to legally perform this business, she never did so and she never reported any of her conduct to law

enforcement.

THE COURT: How long after that communication did she continue to engage in the conduct at issue?

MS. SEIFERT: She continued to engage in the conduct until October of 2023 when a search warrant was executed on her house in Arizona, so that would be about 15 months additional from that time.

In June of '23, she stated, "I am working for people in a country considered an enemy of the U.S. I have already been advised by a lawyer about the laws I am breaking."

And in August of 2023 she said, "In the future, I hope you guys can find other people to do your I-9s. These are federal documents. I can go to federal prison for falsifying federal documents."

After she was arrested, she made a statement to the FBI. She told them that in March of 2020 she had been approached by an international company to do this business. And she was going to be the US face of this company. And yet, Ms. Chapman never met a single person that she was supposed to be working for. She never met them in person. She didn't say that she had seen any of their faces. And she never obtained even the name of this purported company that she was supposed to be the US face for. She admitted to the FBI that she forged the endorsements on the checks that she deposited with her bank. She stated that she made between 6,000 and $8,000 a

month. She admitted she was sending laptops overseas to China, Pakistan and Nigeria, as well as an Eastern Bloc country in Europe. And after the FBI searched her home, she admitted that her co-conspirators contacted her and told her to delete her communications with them. And she told the FBI that she, in fact, did delete those communications.

While the defendant's memo highlights her challenging upbringing and her mental health issues, which are certainly sympathetic, that is not the full picture of the defendant who sits before you today. And the government submits that Ms. Chapman has already received a significant benefit on account of these issues by being permitted to plead a range that is below her guidelines range and being permitted to plead earlier in the case before the government had determined the full extent of the monetary gain from this scheme.

And, thus, the government doesn't think that the Court should depart any lower besides the high end of the range the parties agreed to. Make no mistake, Your Honor, her motivation was monetary. She had enough money to rent a nice house. Ms. Chapman hired two full-time staffers who helped her by making her smoothies, by managing her bills, by helping her with the computers and by helping her with her Etsy business. She flew to LA so she could attend one of her favorite J-pop band concerts. And she took a 10-day long vacation in Japan with the profits she was making off of this fraud scheme.

Ms. Chapman's gain was the result of real losses. And that is the fourth thing the Court should consider today: Real losses for real people. People like Cody Willsey, who wrote the Court and said that their identity was used multiple times. And the government notes that Mr. Willsey's identity was on a laptop hosted in Ms. Chapman's house. Mr. Willsey told the Court that the fraud had impacted him emotionally, mentally and financially. It had left him feeling violated, helpless and afraid, that he spent countless hours contacting financial institutions to deal with the issues and he had lasting psychological and financial damage. He asked the Court to recognize the ripple effects that this crime has had. And that is just one of the 67 US persons whose identity was taken advantage of and used in this scheme.

Those losses are echoed across this problem set of victims. And in addition to having their identities stolen, who were also notified by the Department of Justice that false tax liabilities were created in their name with the IRS and that they will need to deal with unwinding that issue.

There are also losses for US companies like DataStaff, which wrote the Court to say it was a small business which had done work for many years in North Carolina. They unknowingly staffed North Korea at their US companies' trusted partners. And the owner, Glynda Mealer, noted for the Court that this crime has significantly maligned her business. They

have lost clients and they have not been paid for work that they had to pay the North Korea IT workers for.

And finally real losses for companies like Nike, a quintessential American background built from the ground up, who unknowingly sent at least $75,000 to North Korea. They had to do an extensive internal investigation to ensure their data was not compromised. That is just one company that had the courage to come forward to the Court and identify to the Court that it was a victim. There are 308 others who did not identify themselves. And those companies don't want to be named for many reasons, including the fact that for some of them their data was stolen and exfiltrated. They have to deal not only with the fact that their funds have supported North Korea, but that their data may be in North Korea in the hands of malign actors and what they might do with the information they stole.

The sad truth is that Ms. Chapman's case is one of many cases. The Court should be aware that the United Nations reports that there are as many as 3,000 North Korean IT workers operating outside of North Korea perpetrating this scheme. Each one of those individuals can have multiple identities and multiple jobs, as they did here with Ms. Chapman. And they need footholds in the United States to be successful. They need people like Christina Chapman. And we ask the Court to send the strongest possible message to Ms. Chapman, to other

facilitators and to North Korea that these crimes will be punished to the full extent of the law.

And that is why we would submit that our sentence -- proposed sentence of 111 months, 87 months on Count 2 and 6 to run concurrent, 24 months consecutive on Count 4, and 36 months of supervised release is an appropriate sentence for the Court to impose.

Ms. Pungello is going to address just briefly for the Court the restitution and forfeiture, just to make record of the basis for those judgments from the Court.

THE COURT:  That is fine.

Before you sit down can you tell me anything further about the information that you think was exfiltrated, the nature of that information and any pernicious consequences?

MS. SEIFERT:  So I can tell you that the companies in reporting to -- when the department contacted the companies, the companies were then notified of the -- all of the identities that were used as part of the scheme.  The companies did -- many of them did thorough reviews.  And as part of these reviews of which individuals were working for them, they might have not -- first, they -- many of them did not know there was a worker.  Some of them thought there was one and it turned out to be five.  So the scale of the problem was very challenging.  Some of those companies did fulsome reviews like Nike explained that they did, trying to figure out if any data was

compromised. And two companies reported back to the Department that they found that their data was stolen. One had data like scraped all off their server. In another one, they could see the data was pulled and then exfiltrated to an ISP address that went back to India. So they don't know what has happened to that data. And they haven't given us anymore information as to whether or not -- like what the severity of the data is, whether it is customer data or just business data. But I think, from the government's perspective, it is well documented and public that North Korea will monetize anything it can to raise money for its regime. And it is cut off from the world financial system because of sanctions and that monetizing things like data is a way to further capitalize on this scheme. And that is the concern that these companies have. We think that is a real concern.

And I would also point to the Court that North Korea is well known to be involved in other cyberactivity against US businesses. And so that is part of -- I think the companies' concern -- real concerns about that they had IT workers from North Korea within their systems.

THE COURT: I can understand that. Thank you.

I'm sorry. Let me hear from Ms. Pungello and then your turn.

MS. PUNGELLO: Thank you, Your Honor. I am just going to briefly talk about forfeiture and restitution since we

discussed these issues a little bit earlier. On the issue of forfeiture, I just want to explain the basis for the approximate 284,000 in our consent order. These funds were seized by the government as traceable to the scheme. There is approximately 11,800 of those funds that were seized from Ms. Chapman's bank account that were attributed as funds that were sent to her from the US companies as wages for the IT workers.

The other $270,000-ish is a mixture of wages that were seized directly from US companies that we were able to contact those companies when they were identified as victims in the cases before they were able to pay those workers and send that money overseas, as well as two accounts at money service transmitters that received wages directly as direct deposits for IT workers. The money judgment that we are seeking in this case, the $176,850 that comes -- the basis of that is in our statement of offense. As part of her role in the scheme, Ms. Chapman provided monthly invoices to the IT workers for various services she provided. She would call some of it rent, which was the laptops that she hosted at her home, as well as connecting them to the internet. But those other services included logging into the laptops, downloading remote access software, laptop shipping that Ms. Seifert talked about, shipping those laptops overseas, as well as arranging for transfers of payments. We added up those invoices from

November 2021 to October 2023, so not the entire extent of the time that Ms. Chapman was involved in the scheme, but the length of time that we had those invoices available and that is 176,850.

On the issue of restitution, we have those three restitution submissions from earlier this week. Ms. Seifert talked about those. And we believe -- and we'll finalize those in coordination with defense counsel. We believe that those are largely compensable. The government's position in this case has been if the IT workers performed the work satisfactorily, then the US company did receive those services and those wages themselves are not compensable.

But if they didn't receive the services or they were subpar services or even kind of more typical things we would see for restitution, like cybersecurity remediation services to look at their networks to see what those folks had access to, legal fees, those are the types of things that would be compensable in this case.

As Ms. Seifert mentioned, DataStaff, Inc., was the small company that submitted a restitution request. After they informed their end client that they had a North Korean IT worker for them, the end client who was receiving the IT workers' services declined to pay the invoice. So unlike the case where they actually received payment for the work, they paid the IT workers, they never received payment for that.

The other company, Jeenie -- and this one will have a correction what we provide finally -- what they provided in their restitution request was a laptop that was sent, I believe, to Ms. Chapman's address in Minnesota where she operated a laptop farm that was never returned, as well as cost of internal investigation, other legal fees.

The final company that we received the request from that we filed this morning was Nike. And that one we need to get more documentation on that to fully understand why that work was considered unsatisfactory and appropriate for restitution in this case.

The one individual who submitted a request for restitution was Cody Willsey and that restitution request was based off of rebuilding his life following a bankruptcy related to some of the financial consequences of this case, as well as some cybersecurity protection services that he purchased for his family.

THE COURT: All right. Thank you.

MS. PUNGELLO: Thank you.

THE COURT: Ms. Gardner.

MS. GARDNER: Your Honor, we live in a time where the overwhelming sentiment among the powers that be and I think has proliferated the Department of Justice, for my friends, anything; but for my enemies, the law. And unfortunately for Ms. Chapman, she doesn't have any friends in high places. When

the Department of Justice gets involved in the countless financial schemes that have happened across the country, many times we see them end in a deferred prosecution agreement, if they even get a slap on the wrist at all. Right? I mean, the Wall Street bankers with the thousands of Americans who were affected by that widespread fraud and $700 billion bailout there, the Lehman Brothers, Wells Fargo CEOs, the list goes on and on. And none of those people who are responsible did any time.

Now here what also differentiates her besides not having money or friends in high places is the involvement of the North Koreans. So clearly that is -- she is being made an example of. Now, for Ms. Chapman, she hadn't -- she wouldn't know the difference of whether they were North Korean or Chinese or the rest. It wasn't until way further into the scheme -- and, in fact, initially she had no idea that what she was doing was illegal. She thought had got this great job. And as I have outlined in our memo, she -- her mother got very sick and died and she was the one who was totally responsible for taking care of her. So by the time she does recognize that she is completely entrenched in an illegal scheme, she has already been doing it. And her mom is on death's doorstep and so she continues with it. And obviously she knows that is illegal and that is why she is here taking responsibility. Although the government has characterized her as, you know, a

leader, really she was just a pawn in this whole scheme.  I get it, yeah, it took her organization to make this happen.  But she is so insignificant in this huge, major scheme.

THE COURT:  Can I ask you, Ms. Seifert, you referred to a quote in which Ms. Chapman indicated that she understood that she was doing this for enemies of the United States or an enemy of the United States.  Who did she think it was if it was an enemy of the United States?  Presumably it was not --

MS. GARDNER:  Because she knew she sent something to Pakistan particularly.

THE COURT:  Okay.

MS. GARDNER:  But I mean, even -- regardless, I don't think -- we don't know for a fact that this money was solely centrally used for the nuclear weapons.

THE COURT:  Did she also though have some advice that it might be violating sanctions regimes?  Are the sanctions against Pakistan?

MS. GARDNER:  I believe so or that was her understanding.  Whether she was mistaken or not, I mean --

THE COURT:  But she was mailing stuff to China, so presumably she wouldn't be sending it to China for Pakistan; right?

MS. GARDNER:  I think there was something she sent to Pakistan as well as some things that were sent to China, yeah.

THE COURT:  Okay.

MS. GARDNER: But as far as North Koreans and nuclear weapons programs, that is way above her paygrade. I don't think -- I haven't seen anything in the discovery that says, oh, this was directly linked to these nuclear weapons programs. And I mean I guess reasonable minds could argue what the money went to. But we don't have proof that she tried to do that. So I think when making an example of her, seven years is more than enough, Your Honor. And that is why we are asking for the bottom end of the guidelines, the 94-month sentence.

THE COURT: Okay. Anything else?

MS. GARDNER: No, Your Honor.

THE COURT: Would Ms. Chapman like to address the Court? She is certainly entitled to do so, if she would like to.

MS. GARDNER: Yes, she would, Your Honor.

THE COURT: Okay.

THE DEFENDANT: This is really hard for me.

When I initially got the job it was because my mom was sick. And I didn't know until later that this stuff that they were doing was wrong, which is the damage and the lawyer that I spoke with. And the lawyer just said it was a gray area, but really didn't articulate exactly why.

Being part of this makes me really sad. They were talking about Cody, the fact that I was a part of something that caused that much damage to somebody -- I really hate

myself because of that.

THE COURT: All right. Anything else?

MS. GARDNER: Your Honor, obviously this is a very hard day for Ms. Chapman. As you know through our sentencing memo, she has some serious mental health issues. And she has signed up to go to prison today. So you have read from her letter that she is very remorseful for this. And she has lived on this earth for over 50 years and this is the first time she has ever been in a situation like this. So I think the Court can rest assured that with a sentence of 94 months when she comes out in seven years, there is no way she would ever do anything like this again. And, obviously, she will be on supervised release no matter what amount of time you issue. And we ask for mental health support afterwards when she returns to the community. But she is extremely remorseful. She is not just sorry for herself or sorry that she got caught. She has spoken to me at length about just her ignorance about how many people that this affected. So I ask the Court to take mercy on her.

THE COURT: Okay. Thank you.

All right. Anything else from the government?

MS. SEIFERT: No, Your Honor.

THE COURT: All right. Give me a couple of minutes. I want to give this a little thought and I will come back out and give my sentence.

(Recess taken at 2:50 p.m.)

THE COURT: So I have assessed the particular facts of this case in light of the relevant factors set forth in section 3553(a) and including the sentencing guidelines. And I want to provide some remarks for the record and for Ms. Chapman with respect to my decision. And sentencing is always the most difficult thing that a judge has to do. And this case to my mind is a particularly difficult one. It is made somewhat easier by the (c)(1)(C) plea which reduces the range considerably. But I still even within that range find this a difficult case. Because there is somewhat of a disconnect I think between the specific deterrence and the general deterrence at issue in this case. And I think it exceedingly unlikely that Ms. Chapman is going to find herself involved in future violations of the law. But I also think that the threat posed to the United States by North Korea and others that are engaged in the type of conduct that is at issue here that turns on people like Ms. Chapman agreeing to do it is enormous.

So starting with the nature of the offense, Ms. Chapman knew what she was doing wrong. She knew that she was assisting some enemy of the United States. It is not clear which enemy she thought, but she knew it was an enemy of the United States. She may have unwittingly gotten involved at first, but she -- as she continued through this process she knew what she was doing was unlawful. And as I think

Ms. Seifert very ably set further the consequences of what she did are extremely serious. They were real live victims whose lives were affected by her conduct, companies who were affected by the conduct. And most significantly from my perspective, the North Korea government was benefited by her conduct in a manner that was material. And whether she knew it was North Korea or not or thought it was China or Pakistan, she thought she was helping some enemy of the United States.

And I do think that the national security consequences of this case and cases like it are extremely, extremely serious. And so I think that it is fair to say that -- at some level Ms. Chapman got a significant benefit through the (c)(1)(C) plea where the guidelines otherwise if she had been convicted would have been considerably higher and where the nature of the offense is one of national significance.

Turning to the characteristics of the offender, this weighs in the other direction. Ms. Chapman does suffer from a range of serious conditions that are set forth in the sentencing memorandum.

And there are a number of, I think, quite serious psychological and related difficulties that she suffers from that undoubtedly at some level contributed to her involvement in this matter. I am very sorry about her mother's health crisis and that that played a role in any way in getting

involved in this, but she still did make the choices that she made along the way.

I do think that she is genuinely remorseful for what she did. As I said, I think that although judges don't have crystal balls, I think the likelihood of recidivism is extremely low in this case.

I have also thought about the types of sentences that are available. We have discussed the guidelines as they apply here. The range for sentencing purposes is for a total term of incarceration including the 24 months for Count 4 of between 94 and 111 months. And where I come down is in the middle at 102 months. And but for the seriousness of the assistance of North Korea and the need to send a really clear signal that if there is anyone else out there that thinks that this is a good idea, they better not get involved or stop immediately. Because courts are going to take this really, really seriously because the consequences to the safety of our nation are at issue here. But I do think that, quite frankly, a low end of the range might send a signal that the Court doesn't take this as seriously as I do take it.

But by the same token, I think the difference between 102 and 111 months is not likely to have any significant general deterrence effect. And that is why I think that the sentence of 102 months as the total is appropriate in this case.

So let me see here. I just need to do -- you can correct me if I am wrong about this, but I think that comes out to a sentence of 78 months for Counts 2 and 6 and 24 months for Count 4.

MS. SEIFERT: Yes, Your Honor.

THE COURT: All right. Okay. So pursuant to the Sentencing Reform Act of 1984 and in consideration of provisions of 18 U.S.C. section 3553 as well as the advisory sentencing guidelines, it is the judgment of the Court that you, Christina Chapman, are hereby committed to the custody of the Bureau of Prisons for an aggregate term of 102 months, which consists of concurrent terms of 78 months as to Counts 2 and 6, and a consecutive term of 24 months as to Count 4, which will run consecutively to the sentences for Counts 2 and 6.

You are further sentenced to serve a concurrent 36-month term of supervised release as to Counts 2 and 6 and an additional 12 months to run concurrently for supervised release as to Count 4. In addition, you are ordered to pay a special assessment of $300 in accordance with 18 U.S.C. section 3013.

While on supervision, you shall abide by the following mandatory conditions as well as all discretionary conditions recommended by the probation office in part D sentencing options of the presentence report, which are imposed to establish the basic expectations for your conduct while on supervision.

The mandatory conditions include, you must not commit another federal, state or local crime. You must not unlawfully possess a controlled substance. You must refrain from any unlawful use of a controlled substance. You must submit to one drug test within 15 days of placement on supervision and at least two periodic drug tests thereafter as determined by the Court. You must cooperate in the collection of DNA as directed by the probation officer.

You must make restitution in accordance with 18 U.S.C. sections 3663 and 3663(a) or any other statute authorizing the sentence of restitution as the Court will subsequently determine. You will be ordered to make restitution in an amount to be determined. The Court determines that you don't have the ability to pay interest and therefore I waive any interest or penalties that may accrue on the balance. Restitution payment shall be made to the Clerk of the Court for the United States District Court, District of Columbia.

You shall also abide by the following special conditions. You must pay the balance of any restitution owed at a rate of no less than $200 each month. If that is not obtainable then you need to come back to the Court and seek a modification of that. You must provide the probation officer access to any requested financial information and authorize the release of any financial information. The probation office may

share financial information with the United States Attorney's Office.  You must not incur new credit charges or open additional lines of credit without the approval of the probation officer.

You must participate in a mental health assessment, comply with any recommended treatment program and follow the rules and regulations of that program.  The probation officer in consultation with the treatment provider will supervise your participation in the treatment program including:  Provider, location, modality, duration and intensity, et cetera.

You are ordered to participate in a cybercrime management and will inform your officer of all computer devices possessed or accessible to you.  This includes desktop or laptop computers, smartphones, smart watches and tablets, smart appliances, internet of things devices, including hub or personal assistant devices and all network accessing devices, including internet connectible gaming systems.  You will not acquire or access any new or additional computer device unless approved by your supervising officer.  You will also inform your supervising officer of all your computer device, internet service provider and social media user accounts, local and online services, both upon entering supervision and in the event that you create or receive additional user accounts.

You must submit your computer devices, other electronic communications, networks or cloud storage data,

storage devices or media to a search conducted by the United States probation officer. The probation officer may conduct a search under this condition only when reasonable suspicion exists that you have violated a condition of supervised release and that the areas to be searched contain evidence of that violation. Any search must be conducted at a reasonable time and in a reasonable manner. Failure to submit to search may be grounds for revocation of release. You must warn any other occupants that the premises may be searched pursuant to this condition.

You may be limited to two standard computer devices, desktop, laptop computers, smart phones or tablets unless otherwise approved by your officer.

You must not access AnyDesk or any remote desktop application.

You must submit your person, property, house, residence, vehicle, papers, computer devices and other electronic communications, network or cloud storage, data storage devices or other media or office to a search conducted by the probation officer. Probation officer may conduct a search under this condition only when reasonable suspicion exist that you have violated a condition of supervision and that the areas to be searched contain evidence of this violation. Any search must be conducted at a reasonable time and in a reasonable manner. Failure to submit to a search may

be grounds for revocation. And you must warn any occupants of the premises of that condition.

Within 45 days of your release from incarceration or placement on supervision you will appear before the Court for a reentry progress hearing. Prior to the hearing, your probation officer will submit a report summarizing your status and compliance with release conditions. If you're supervised by a district outside of the Washington, DC metropolitan area, the United States Probation Office in that district will submit a progress report to the Court within 60 days of the commencement of supervision. And upon receipt of the progress report, the Court will determine if your appearance is required.

I will recommend that while incarcerated you participate in the cognitive behavioral treatment program dealing with substance abuse problems and/or mental illness within a modified therapeutic community. It is the Challenge program. I will also recommend the female integrated treatment, which offers integrated CBT for substance use disorders, mental illness, trauma-related disorders and vocational training as well as the Resolve program which involves cognitive behavior therapy, which involves trauma related mental health needs.

Are there any other programs, Ms. Gardner, that you would like me to include as a recommendation?

MS. GARDNER: No, Your Honor. And she doesn't have

any preference for designation.

THE COURT: She does not. Okay.

What about any other programming?

MS. GARDNER: No, Your Honor.

THE COURT: Vocational programming or anything like that?

MS. GARDNER: No, Your Honor.

THE COURT: All right. The Court finds that you don't have ability to pay a fine and therefore I waive imposition of a fine in this case. The financial obligations are immediately payable to the Clerk of the Court for the United States District Court, 333 Constitution Avenue Northwest, Washington, DC 20001. Within 30 days of any change of address you shall notify the clerk of the Court of the change until such time as the financial obligation is paid in full. The probation office shall release the presentence investigation report to all appropriate agencies which includes the United States Probation Office in the approved district of residence. In order to execute the sentence of the Court treatment agency shall return the presentence report to the probation office on the defendant's completion or termination from treatment.

Pursuant to Rule 32.2A of the Federal Rules of Criminal Procedure you, Christina Chapman, are hereby ordered to forfeit the funds in your account and wages and monies

accrued by overseas IT workers.  And I am going to enter the proposed order of forfeiture that has been submitted to the Court the parties have agreed to.

Pursuant to 18 U.S.C. section 3742 and under the terms of your plea agreement you have the right to appeal the sentence imposed by the court if the period of imprisonment is longer than the statutory maximum or the sentence departs upward from the applicable sentencing guidelines range.  In addition to any appeal with respect to the sentence you have a right to appeal your conviction consistent with the terms of your plea agreement, including if you believe that your guilty plea was somehow unlawful or involuntary or if there was some other fundamental defect in the proceeding that was not waived in your plea agreement.

If you choose to appeal, you must file an appeal within 14 days after the Court enters judgment.  If you are unable to afford the cost of appeal, you may request permission from the Court to file an appeal without cost to you.

You have the right under 28 U.S.C. section 2255 to challenge the conviction entered or sentence imposed if new and currently unavailable information becomes unavailable to you or on a claim that you received ineffective assistance of counsel in entering a plea of guilty to the offense or in connection with sentencing.

Let me ask, pursuant to the *United States versus*

*Hunter* whether there are any objections with respect to the sentence imposed that have not already been noted for the record.

Ms. Seifert?

MS. SEIFERT: No, Your Honor.

THE COURT: And Ms. Gardner?

MS. GARDNER: No, Your Honor.

THE COURT: All right: And I going to order that Ms. Chapman be immediately remanded.

Oh, is there a motion that the government has with respect to the remaining counts.

MS. SEIFERT: Thank you, Your Honor. We would move to dismiss the remaining counts pursuant to the plea agreement.

THE COURT: That motion is granted.

Anything else before we adjourn?

MS. GARDNER: Not from the defense.

MS. SEIFERT: Not from the government.

THE COURT: All right. Well, Ms. Chapman, I know you have got a difficult period in front of you in your life, but I hope that you are able to make good use of the time and that you are able to have a good and productive life afterwards.

All right. Well, thank you, all.

(Proceedings concluded at 3:17 p.m.)

43

C E R T I F I C A T E

I, SHERRY LINDSAY, Official Court Reporter, certify that the foregoing constitutes a true and correct transcript of the record of proceedings in the above-entitled matter.

Dated this 16th day of October, 2025.

_____
Sherry Lindsay, RPR
Official Court Reporter

**MS. GARDNER: [27]** 2/12 3/14 4/19 8/7 9/21 9/24 10/13 10/20 12/4 12/8 12/11 12/20 14/11 27/21 29/9 29/12 29/18 29/23 30/1 30/11 30/15 31/3 39/25 40/4 40/7 42/7 42/16
**MS. GAVITO: [2]** 2/15 14/22
**MS. PUNGELLO: [4]** 11/1 11/3 24/24 27/19
**MS. SEIFERT: [21]** 2/7 3/11 4/15 8/5 9/22 10/1 10/17 11/14 12/22 13/16 13/23 14/12 16/14 16/16 19/4 23/15 31/22 35/5 42/5 42/12 42/17
**THE COURT: [56]**
**THE COURTROOM DEPUTY: [1]** 2/2
**THE DEFENDANT: [4]** 4/22 4/25 5/3 30/17

**$**

**$100 [1]** 9/16
**$17 [1]** 16/24
**$17 million [1]** 16/24
**$17.1 [1]** 6/18
**$17.1 million [1]** 6/18
**$176,850 [3]** 10/5 16/9 25/16
**$200 [1]** 36/21
**$25 [1]** 6/20
**$25 million [1]** 6/20
**$250,000 [1]** 9/10
**$270,000 [1]** 25/9
**$270,000-ish [1]** 25/9
**$300 [3]** 15/3 16/8 35/19
**$500,000 [3]** 7/25 9/10 9/14
**$700 [1]** 28/6
**$700 billion [1]** 28/6
**$75,000 [1]** 22/5
**$8,000 [1]** 19/25
**$9.5 [1]** 6/19

**'**

**'23 [1]** 19/8

**1**

**1-level [1]** 7/16
**10-day [1]** 20/24
**100 [1]** 16/21
**102 [4]** 34/11 34/22 34/24 35/11
**1028A [2]** 2/23 5/14
**10th [1]** 4/11
**11,800 [1]** 25/5
**111 [4]** 14/25 23/4 34/11 34/22
**12 [1]** 35/17
**1301 [1]** 1/13
**1343 [2]** 2/21 5/11
**1349 [2]** 2/22 5/11
**14 [1]** 41/16
**15 [2]** 19/6 36/5
**16th [1]** 43/10
**176,850 [1]** 26/4
**18 [13]** 2/21 2/24 4/7 5/13 5/17 6/13 6/22 8/20 10/6 35/8 35/19 36/9 41/4
**1956 [4]** 2/25 5/18 6/14 6/22
**1984 [1]** 35/7
**1st [1]** 18/14

**2**

**2-level [4]** 6/23 6/25 7/6 7/15
**20 [2]** 5/12 5/19
**20-level [1]** 6/18
**20001 [2]** 1/24 40/13
**20004 [1]** 1/20
**2020 [1]** 19/16
**2021 [1]** 26/1
**2022 [2]** 18/14 18/17
**2023 [3]** 19/5 19/11 26/1
**2025 [3]** 1/5 4/11 43/10
**20530 [2]** 1/14 1/17
**210 [1]** 12/19
**220 [2]** 1/4 2/2
**2255 [1]** 41/19
**24 [8]** 1/5 14/18 15/9 16/7 23/5 34/10 35/3 35/13
**24-220 [2]** 1/4 2/2
**25th [1]** 11/9
**262 [2]** 7/23 12/19
**28 [3]** 6/15 6/20 41/19
**284,000 [1]** 25/3
**2:02 [1]** 1/6
**2:50 [1]** 32/1
**2B1.6 [1]** 6/8
**2S1.1 [1]** 6/16

**3**

**3,000 [1]** 22/19
**30 [6]** 10/14 10/22 11/3 11/4 11/7 40/13
**3013 [1]** 35/19
**308 [1]** 22/9
**309 [1]** 16/20
**32.2A [1]** 40/23
**333 [2]** 1/23 40/12
**35 [1]** 18/2
**3553 [4]** 4/7 15/15 32/4 35/8
**3561 [1]** 8/21
**36 [4]** 14/15 14/25 16/7 23/5
**36-month [1]** 35/16
**3663 [3]** 10/6 36/10 36/10
**372 [1]** 7/23
**3742 [1]** 41/4
**39 [2]** 7/20 7/22
**3:17 [1]** 42/23
**3B1.1 [1]** 7/19

**4**

**4-level [2]** 6/23 7/3
**42 [1]** 7/13
**45 [1]** 39/3
**49 [1]** 18/2
**4C1.1 [1]** 13/20
**4th [1]** 1/16

**5**

**50 [2]** 12/11 31/8
**50,000 [3]** 7/24 9/11 9/12
**500 [1]** 1/20
**555 [1]** 1/16
**5B1.1 [1]** 8/24
**5th [1]** 18/17

**6**

**6,000 [1]** 19/25
**60 [2]** 10/18 39/10
**625 [1]** 1/19
**67 [1]** 21/13

**6710 [1]** 1/24
**68 [1]** 16/19

**7**

**70 [1]** 15/8
**78 [2]** 35/3 35/12

**8**

**87 [4]** 14/15 15/8 16/5 23/4

**9**

**90 [1]** 10/20
**92 [1]** 17/19
**94 [2]** 31/10 34/10
**94-month [1]** 30/9
**9s [1]** 19/12

**A**

**abide [2]** 35/20 36/19
**ability [3]** 11/17 36/14 40/9
**able [5]** 10/11 25/10 25/12 42/20 42/21
**ably [1]** 33/1
**about [15]** 4/24 19/6 19/10 23/13 24/19 24/25 25/23 26/7 30/24 31/17 31/17 33/24 34/7 35/2 40/3
**above [2]** 30/2 43/5
**above-entitled [1]** 43/5
**abuse [1]** 39/15
**accept [2]** 5/4 15/12
**acceptable [3]** 9/23 10/16 12/13
**acceptance [1]** 7/14
**accepted [2]** 13/10 15/11
**access [5]** 25/22 26/16 36/24 37/18 38/14
**accessible [1]** 37/13
**accessing [1]** 37/16
**accordance [2]** 35/19 36/9
**account [6]** 11/24 17/8 17/17 20/12 25/6 40/25
**accounts [3]** 25/13 37/21 37/23
**accrue [1]** 36/15
**accrued [1]** 41/1
**acquire [1]** 37/18
**across [3]** 13/7 21/15 28/2
**Act [1]** 35/7
**Action [1]** 1/3
**activity [1]** 7/4
**actors [1]** 22/15
**actual [3]** 12/15 14/9 17/14
**actually [4]** 4/8 12/6 17/23 26/24
**added [1]** 25/25
**addition [6]** 6/18 9/4 15/23 21/16 35/18 41/9
**additional [6]** 3/8 19/6 35/17 37/3 37/18 37/23
**address [7]** 4/3 6/6 23/8 24/4 27/4 30/12 40/14
**adequate [1]** 15/21
**adjourn [1]** 42/15
**adjustment [2]** 7/19 13/20
**adjustments [1]** 6/10
**administration [1]** 7/8
**admitted [3]** 19/23 20/1 20/3
**advantage [1]** 21/14
**advice [2]** 13/23 29/15

**A**

advised [1]   19/10
advisory [2]   5/7 35/8
affected [4]   28/6 31/18 33/3 33/3
afford [2]   15/21 41/17
afraid [1]   21/9
after [6]   10/14 19/2 19/15 20/3 26/20 41/16
afternoon [6]   2/7 2/10 2/12 2/14 2/15 2/18
afterwards [2]   31/14 42/21
again [2]   8/18 31/12
against [2]   24/17 29/17
agencies [1]   40/17
agency [1]   40/20
aggravated [3]   2/22 5/13 7/19
aggregate [1]   35/11
agreed [5]   9/8 11/21 14/2 20/18 41/3
agreeing [2]   14/7 32/18
agreement [15]   3/19 10/4 10/15 10/23 12/6 14/7 15/6 15/7 15/7 15/13 28/3 41/5 41/11 41/14 42/13
Aidee [1]   2/15
Alexis [2]   1/18 2/12
all [32]   2/10 2/14 2/18 3/18 5/16 7/13 9/6 10/2 10/21 11/10 14/5 14/13 14/14 15/6 23/17 24/3 27/18 28/4 31/2 31/21 31/23 35/6 35/21 37/12 37/16 37/20 40/8 40/17 42/8 42/18 42/22 42/22
allied [2]   18/20 18/21
allocution [2]   11/23 12/1
allowing [1]   18/21
alone [1]   17/4
along [1]   34/2
already [6]   11/24 13/10 19/9 20/11 28/22 42/2
also [14]   7/24 11/19 12/6 13/4 21/17 21/20 24/16 28/10 29/15 32/15 34/7 36/19 37/19 39/17
although [3]   14/3 28/25 34/4
always [1]   32/6
am [10]   12/22 13/12 14/8 15/14 19/8 19/10 24/24 33/24 35/2 41/1
AMERICA [2]   1/3 2/3
American [1]   22/4
Americans [2]   16/19 28/5
among [2]   16/2 27/22
amount [7]   6/17 10/15 11/18 15/2 16/9 31/13 36/13
analysis [1]   16/18
another [2]   24/3 36/2
anxious [1]   3/16
any [44]
AnyDesk [1]   38/14
anymore [1]   24/6
anyone [2]   4/4 34/14
anything [12]   8/4 8/6 23/12 24/10 27/24 30/3 30/10 31/2 31/12 31/21 40/5 42/15
appeal [7]   41/5 41/9 41/10 41/15 41/15 41/17 41/18

appear [1]   39/4
appearance [1]   39/12
APPEARANCES [1]   1/11
appliances [1]   37/15
applicable [3]   5/25 9/4 41/8
application [1]   38/15
applies [1]   7/1
apply [5]   3/25 5/8 6/11 7/18 34/8
approach [1]   2/4
approached [1]   19/17
appropriate [7]   10/3 13/9 14/1 23/6 27/10 34/24 40/17
approval [2]   18/20 37/3
approved [3]   37/19 38/13 40/18
approximate [1]   25/3
approximately [1]   25/5
are [44]
area [3]   10/24 30/22 39/8
areas [2]   38/5 38/23
argue [1]   30/5
Arizona [2]   17/23 19/6
arranging [1]   25/24
arrested [1]   19/15
articulate [1]   30/22
as [77]
Ashley [2]   1/12 2/9
aside [1]   9/6
ask [6]   3/8 22/24 29/4 31/14 31/18 41/25
asked [1]   21/11
asking [1]   30/8
assessed [1]   32/2
assessment [5]   9/17 15/3 16/8 35/19 37/5
assistance [3]   5/2 34/12 41/22
assistant [1]   37/16
assisting [1]   32/21
assured [1]   31/10
attempted [1]   7/8
attend [1]   20/23
ATTORNEY'S [2]   1/15 37/1
attributed [1]   25/6
August [2]   11/9 19/11
authorize [1]   36/24
authorized [1]   9/16
authorizing [2]   9/14 36/11
available [3]   16/4 26/3 34/8
Ave,NW [1]   1/19
Avenue [3]   1/13 1/23 40/12
avoid [1]   16/2
award [1]   16/8
aware [1]   22/18

**B**

back [5]   17/18 24/1 24/5 31/24 36/22
background [1]   22/4
bailout [1]   28/6
balance [2]   36/16 36/20
balls [1]   34/5
band [1]   20/24
bank [3]   17/17 19/25 25/6
bankers [1]   28/5
bankruptcy [2]   1/23 27/14
bargain [1]   13/3
base [1]   6/15
based [3]   6/15 15/4 27/14

basic [1]   35/24
basis [6]   4/1 11/11 13/21 23/10 25/2 25/16
be [49]
because [24]   5/22 6/18 6/21 6/24 6/24 7/1 7/3 7/7 7/14 7/18 8/22 8/25 9/3 9/7 11/8 13/6 13/13 24/12 29/9 30/18 31/1 32/11 34/15 34/16
becomes [1]   41/21
been [12]   16/3 17/3 19/10 19/16 22/1 26/10 28/22 31/9 33/14 33/14 41/2 42/2
before [9]   1/9 3/21 8/1 20/10 20/14 23/12 25/12 39/4 42/15
behalf [2]   2/13 3/4
behavior [1]   39/21
behavioral [1]   39/14
being [6]   2/17 18/1 20/12 20/13 28/12 30/23
believe [8]   12/19 12/23 17/22 26/7 26/8 27/4 29/18 41/11
believes [1]   14/1
below [1]   20/13
benefit [3]   13/3 20/11 33/12
benefited [1]   33/5
besides [2]   20/17 28/10
best [2]   17/12 18/10
better [1]   34/15
between [11]   7/23 7/24 8/12 8/19 9/11 10/4 18/6 19/25 32/12 34/10 34/21
billion [1]   28/6
bills [1]   20/21
bit [1]   25/1
Bloc [1]   20/2
board [1]   13/7
border [1]   18/3
both [5]   2/10 5/8 9/19 13/3 37/22
bottom [2]   3/17 30/9
bought [1]   16/20
breaking [1]   19/10
bridge [1]   18/7
briefing [1]   11/5
briefly [2]   23/8 24/25
bring [1]   11/20
Brothers [1]   28/7
built [1]   22/4
bunch [1]   3/16
Bureau [1]   35/11
burying [1]   18/10
business [9]   6/25 17/22 18/20 18/24 19/17 20/22 21/21 21/25 24/8
businesses [1]   24/18

**C**

calculated [3]   12/15 12/24 13/9
calculation [3]   5/7 8/4 13/15
calculations [1]   14/9
call [1]   25/19
called [1]   18/7
came [1]   11/15
can [19]   3/18 3/21 11/3 12/5 12/25 13/2 14/7 17/21 18/15

**C**

can... [10]  19/12 19/13 22/21 23/12 23/15 24/10 24/21 29/4 31/10 35/1
capitalize [1]  24/13
card [1]  17/8
care [1]  28/20
Carolina [1]  21/22
case [24]  2/2 3/19 4/1 4/9 5/8 9/20 11/19 16/19 20/14 22/17 25/16 26/10 26/18 26/24 27/11 27/15 32/3 32/7 32/11 32/13 33/10 34/6 34/25 40/10
cases [3]  22/18 25/12 33/10
category [1]  7/22
caught [1]  31/16
caused [1]  30/25
CBT [1]  39/18
centrally [1]  29/14
CEOs [1]  28/7
certainly [2]  20/8 30/13
certify [1]  43/3
cetera [1]  37/10
challenge [2]  39/16 41/20
challenging [2]  20/7 23/23
change [2]  40/13 40/15
CHAPMAN [39]  1/6 2/3 2/13 2/19 3/15 4/20 5/22 7/14 7/20 10/5 13/13 14/6 16/10 17/4 18/5 18/7 19/19 20/11 20/20 22/22 22/24 22/25 25/18 26/2 27/25 28/13 29/5 30/12 31/4 32/5 32/14 32/18 32/20 33/12 33/18 35/10 40/24 42/9 42/18
Chapman's [7]  3/4 18/12 21/1 21/6 22/17 25/6 27/4
chapter [1]  6/9
chapters [1]  6/10
characteristic [1]  6/21
characteristics [3]  6/24 15/25 33/17
characterized [1]  28/25
charged [1]  17/3
charges [1]  37/2
chat [2]  18/13 18/23
checks [2]  17/16 19/24
China [6]  18/3 20/1 29/20 29/21 29/24 33/7
Chinese [1]  28/15
choices [1]  34/1
choose [1]  41/15
CHRISTINA [7]  1/6 2/3 2/13 2/19 22/24 35/10 40/24
circumstances [2]  13/7 15/24
citizens [1]  18/21
city [1]  18/3
claim [1]  41/22
claimed [1]  18/23
claims [1]  18/7
clarification [1]  14/24
clarifications [1]  8/2
clarity [2]  11/6 15/12
clear [2]  32/21 34/13
clearly [1]  28/12
clerk [3]  36/16 40/11 40/14
client [3]  13/20 26/21 26/22
clients [1]  22/1

closely [1]  7/12
cloud [2]  37/25 38/18
co [3]  17/18 18/14 20/4
co-conspirators [3]  17/18 18/14 20/4
Cody [3]  21/3 27/13 30/24
cognitive [2]  39/14 39/21
collection [1]  36/7
COLUMBIA [4]  1/1 1/16 1/19 36/18
come [6]  10/15 11/4 22/8 31/24 34/11 36/22
comes [3]  25/16 31/11 35/2
commencement [1]  39/10
commit [4]  2/21 5/11 8/9 36/1
committed [1]  35/10
communication [1]  19/2
communications [4]  20/5 20/6 37/25 38/18
community [2]  31/15 39/16
companies [17]  16/20 16/23 18/1 21/20 22/3 22/10 23/15 23/16 23/17 23/18 23/24 24/1 24/14 25/7 25/10 25/11 33/3
companies' [2]  21/23 24/18
company [9]  17/9 19/17 19/18 19/22 22/7 26/11 26/20 27/1 27/7
compensable [3]  26/9 26/12 26/18
completely [1]  28/21
completion [1]  40/21
compliance [1]  39/7
comply [2]  15/17 37/6
comprising [1]  6/2
compromised [2]  22/7 24/1
computer [6]  37/12 37/18 37/20 37/24 38/11 38/17
computers [5]  17/19 17/20 20/22 37/14 38/12
conceive [1]  11/12
concern [3]  24/14 24/15 24/19
concerns [1]  24/19
concerts [1]  20/24
concluded [1]  42/23
concurrent [5]  14/21 14/22 23/5 35/12 35/15
concurrently [3]  14/17 16/6 35/17
condition [6]  38/3 38/4 38/10 38/21 38/22 39/2
conditions [6]  33/19 35/21 35/22 36/1 36/20 39/7
conduct [17]  7/11 7/12 13/4 15/21 16/3 17/7 18/9 18/25 19/3 19/4 32/17 33/3 33/4 33/5 35/24 38/2 38/20
conducted [4]  38/1 38/6 38/19 38/24
confirm [2]  12/18 17/13
congress [4]  4/6 5/14 5/18 15/15
connected [1]  18/6
connectible [1]  37/17
connecting [1]  25/21
connection [1]  41/23
consecutive [8]  5/15 14/17 14/20 14/21 15/9 16/6 23/5

35/13
consecutively [1]  35/14
consent [1]  25/3
consequences [5]  23/14 27/15 33/1 33/10 34/17
consider [10]  3/9 3/13 13/2 13/11 13/24 14/5 15/14 15/24 17/7 21/2
considerably [2]  32/10 33/14
consideration [1]  35/7
considerations [1]  8/3
considered [2]  19/9 27/10
considers [1]  16/17
consistent [1]  41/10
consists [1]  35/12
conspiracy [8]  2/20 2/23 5/10 5/16 6/3 6/5 6/12 8/9
conspirators [6]  17/8 17/9 17/12 17/18 18/14 20/4
constitutes [1]  43/4
Constitution [2]  1/23 40/12
consultation [1]  37/8
consulted [1]  18/18
contact [1]  25/11
contacted [2]  20/4 23/16
contacting [1]  21/9
contain [2]  38/5 38/23
continue [1]  19/3
continued [2]  19/4 32/24
continues [1]  28/23
contributed [1]  33/23
controlled [2]  36/3 36/4
conveyed [1]  16/22
convicted [4]  5/22 6/22 9/13 33/14
conviction [4]  7/10 7/11 41/10 41/20
cooperate [1]  36/7
coordination [1]  26/8
copy [1]  17/12
correct [3]  13/15 35/2 43/4
correction [1]  27/2
cost [3]  27/5 41/17 41/18
could [6]  17/3 17/25 18/19 20/23 24/3 30/5
counsel [6]  2/4 2/6 2/8 4/2 26/8 41/22
count [32]  2/20 2/22 2/23 5/10 5/12 5/16 5/22 5/23 6/2 6/4 6/6 6/7 6/12 8/9 8/13 8/13 8/15 8/16 9/2 9/8 9/9 9/10 9/17 14/17 15/10 16/7 23/4 23/5 34/10 35/4 35/13 35/18
countless [2]  21/9 28/1
countries [1]  18/6
country [5]  18/20 18/21 19/9 20/2 28/2
counts [18]  2/20 5/16 5/21 5/21 6/2 6/3 6/4 8/20 14/15 14/16 15/8 16/6 35/3 35/12 35/14 35/16 42/11 42/13
couple [1]  31/23
courage [1]  22/8
court [66]
Court's [1]  16/18
courts [2]  1/23 34/16
create [1]  37/23
created [1]  21/18
credit [3]  17/8 37/2 37/3

**C**

**crime [4]**  13/8 21/12 21/25 36/2
**crimes [2]**  15/22 23/1
**criminal [10]**  1/3 2/2 2/9 2/20 7/4 7/20 7/21 7/21 15/21 40/24
**crisis [1]**  33/25
**criteria [1]**  5/9
**CRM [1]**  1/13
**crystal [1]**  34/5
**currently [1]**  41/21
**custody [1]**  35/10
**customer [1]**  24/8
**cut [1]**  24/11
**cyberactivity [1]**  24/17
**cybercrime [1]**  37/11
**cybersecurity [2]**  26/15 27/16

**D**

**damage [4]**  16/8 21/11 30/20 30/25
**Dandong [2]**  18/3 18/4
**data [15]**  16/23 22/6 22/12 22/14 23/25 24/2 24/2 24/4 24/6 24/7 24/8 24/8 24/13 37/25 38/18
**DataStaff [2]**  21/21 26/19
**date [1]**  10/14
**Dated [1]**  43/10
**day [5]**  9/15 17/21 20/24 31/4 43/10
**days [13]**  10/14 10/19 10/20 10/21 10/22 11/3 11/5 11/7 36/5 39/3 39/10 40/13 41/16
**DC [7]**  1/5 1/14 1/17 1/20 1/24 39/8 40/13
**deal [3]**  21/10 21/19 22/12
**dealing [2]**  18/8 39/15
**death's [1]**  28/22
**decision [1]**  32/6
**declined [1]**  26/23
**defect [1]**  41/13
**defendant [21]**  1/7 1/18 6/21 7/3 7/7 8/21 8/22 8/24 9/2 9/5 9/13 15/22 15/25 17/4 17/7 17/11 17/13 17/15 17/19 17/23 20/9
**defendant's [4]**  7/11 17/7 20/7 40/21
**defendants [1]**  16/2
**DEFENDER [1]**  1/18
**defense [9]**  3/13 4/16 8/6 9/23 10/10 11/21 12/20 26/8 42/16
**deferred [1]**  28/3
**defrauded [1]**  18/1
**delete [2]**  20/4 20/6
**demonstrated [1]**  7/14
**depart [1]**  20/17
**department [7]**  16/22 17/2 21/17 23/16 24/1 27/23 28/1
**departs [1]**  41/7
**departure [3]**  4/1 11/11 11/12
**deposited [2]**  17/17 19/24
**deposits [1]**  25/14
**derived [1]**  5/25

**description [1]**  8/2
**designation [1]**  40/1
**desktop [3]**  37/13 38/12 38/14
**determination [1]**  13/7
**determine [7]**  3/18 3/22 3/25 13/15 13/18 36/12 39/12
**determined [4]**  15/3 20/14 36/6 36/13
**determines [1]**  36/14
**determining [1]**  12/17
**deterrence [4]**  15/21 32/12 32/13 34/23
**device [2]**  37/18 37/20
**devices [9]**  37/12 37/15 37/16 37/16 37/24 38/1 38/11 38/17 38/19
**did [21]**  4/22 4/23 4/25 17/12 18/25 19/2 20/6 22/9 22/22 23/19 23/19 23/21 23/24 23/25 26/11 28/8 29/7 29/15 33/2 34/1 34/4
**didn't [5]**  18/7 19/20 26/13 30/19 30/22
**died [1]**  28/19
**difference [3]**  11/13 28/14 34/21
**different [4]**  8/23 9/1 13/5 13/19
**differentiates [1]**  28/10
**differently [1]**  12/25
**difficult [4]**  32/7 32/8 32/11 42/19
**difficulties [1]**  33/22
**direct [2]**  11/7 25/14
**directed [1]**  36/7
**direction [1]**  33/18
**directly [3]**  25/10 25/14 30/4
**disagreement [1]**  3/20
**disagreements [1]**  3/21
**disconnect [1]**  32/11
**discovery [1]**  30/3
**discretionary [1]**  35/21
**discuss [1]**  12/1
**discussed [3]**  10/13 25/1 34/8
**dismiss [1]**  42/13
**disorders [2]**  39/19 39/19
**disparities [1]**  16/2
**disregard [1]**  18/9
**district [12]**  1/1 1/1 1/10 1/16 1/19 1/23 36/17 36/17 39/8 39/9 40/12 40/18
**division [1]**  2/9
**DNA [1]**  36/7
**do [22]**  10/11 11/3 11/7 12/18 13/13 14/4 14/9 18/18 19/12 19/17 22/6 22/15 30/6 30/13 31/11 32/7 32/18 33/9 34/3 34/18 34/20 35/1
**documentation [1]**  27/9
**documented [1]**  24/9
**documents [3]**  17/15 19/13 19/14
**does [10]**  4/12 4/16 7/18 7/20 12/6 12/8 15/12 28/20 33/18 40/2
**doesn't [4]**  20/16 27/25 34/19 39/25

**doing [10]**  14/4 18/13 18/16 18/20 28/17 28/22 29/6 30/20 32/20 32/25
**DOJ [1]**  1/13
**DOJ-CRM [1]**  1/13
**dollar [1]**  12/7
**dollars [2]**  9/9 9/12
**don't [11]**  6/11 11/11 22/10 24/5 29/12 29/13 30/2 30/6 34/4 36/14 40/9
**done [1]**  21/22
**doorstep [1]**  28/22
**down [2]**  23/12 34/11
**downloading [1]**  25/22
**drug [2]**  36/5 36/6
**due [1]**  18/19
**duration [1]**  37/10

**E**

**each [4]**  9/15 9/17 22/21 36/21
**earlier [3]**  20/14 25/1 26/6
**earth [1]**  31/8
**easier [1]**  32/9
**Eastern [1]**  20/2
**echoed [1]**  21/15
**effect [1]**  34/23
**effects [1]**  21/12
**effort [1]**  11/19
**either [1]**  13/21
**electronic [2]**  37/25 38/18
**eligible [1]**  13/20
**else [6]**  4/4 30/10 31/2 31/21 34/14 42/15
**emotionally [1]**  21/7
**encourage [1]**  13/5
**end [9]**  16/11 16/16 17/5 20/17 26/21 26/22 28/3 30/9 34/18
**endorsements [1]**  19/24
**enemies [2]**  27/24 29/6
**enemy [7]**  19/9 29/7 29/8 32/21 32/22 32/22 33/8
**enforcement [1]**  19/1
**engage [2]**  19/3 19/4
**engaged [1]**  32/17
**enhancement [5]**  6/23 6/23 7/1 7/3 7/6
**enormous [1]**  32/18
**enough [4]**  4/20 4/23 20/19 30/8
**ensure [2]**  15/15 22/6
**enter [3]**  7/17 10/19 41/1
**entered [2]**  13/4 41/20
**entering [2]**  37/22 41/23
**enters [1]**  41/16
**entire [1]**  26/1
**entirety [2]**  11/17 13/2
**entitled [3]**  7/15 30/13 43/5
**entrenched [1]**  28/21
**establish [1]**  35/24
**estimated [1]**  13/19
**et [1]**  37/10
**Etsy [1]**  20/22
**Europe [1]**  20/3
**even [7]**  9/6 12/24 19/22 26/14 28/4 29/12 32/10
**event [1]**  37/23
**ever [3]**  17/3 31/9 31/11
**every [2]**  13/14 17/21

Case 3:24-cr-00151     Document 126-1     Filed 03/16/26     Page 47 of 55 PageID #: 791

**E**

**evidence [2]**  38/5 38/23
**exactly [2]**  18/12 30/22
**example [2]**  28/13 30/7
**exceedingly [1]**  32/13
**excuse [1]**  13/16
**execute [1]**  40/19
**executed [1]**  19/5
**exfiltrated [4]**  16/24 22/12
 23/13 24/4
**exist [1]**  38/22
**exists [1]**  38/4
**expectation [1]**  14/6
**expectations [1]**  35/24
**explain [2]**  11/23 25/2
**explained [1]**  23/24
**exporting [1]**  18/19
**express [1]**  12/8
**expressly [1]**  9/3
**extensive [2]**  7/5 22/6
**extent [5]**  14/5 15/11 20/15
 23/2 26/1
**extremely [5]**  31/15 33/2
 33/10 33/11 34/6

**F**

**face [2]**  19/18 19/23
**faces [1]**  19/21
**facilitators [1]**  23/1
**fact [8]**  5/5 6/16 20/6 22/11
 22/13 28/16 29/13 30/24
**factor [1]**  17/6
**factors [6]**  4/6 11/25 15/14
 16/13 16/17 32/3
**facts [3]**  3/19 5/4 32/2
**factual [2]**  4/13 4/17
**Failure [2]**  38/7 38/25
**fair [2]**  4/6 33/11
**false [2]**  16/21 21/17
**falsifying [1]**  19/13
**family [1]**  27/17
**far [1]**  30/1
**Fargo [1]**  28/7
**farm [1]**  27/5
**fashion [1]**  4/5
**favorite [1]**  20/23
**FBI [5]**  17/20 19/16 19/23
 20/3 20/5
**federal [8]**  1/18 17/11 18/19
 19/13 19/13 19/14 36/2 40/23
**feeling [1]**  21/8
**fees [2]**  26/17 27/6
**female [1]**  39/17
**figure [2]**  18/24 23/25
**figures [1]**  12/7
**file [2]**  41/15 41/18
**filed [1]**  27/8
**files [1]**  11/17
**final [2]**  7/19 27/7
**finality [1]**  11/20
**finalize [1]**  26/7
**finally [2]**  22/3 27/2
**financial [10]**  21/10 21/11
 24/12 27/15 28/2 36/24 36/25
 37/1 40/10 40/15
**financially [1]**  21/8
**find [4]**  12/24 19/12 32/10
 32/14
**findings [1]**  5/5

**finds [1]**  40/8
**fine [14]**  7/24 9/9 9/10 9/10
 9/11 9/14 9/14 9/15 10/21
 12/4 15/2 23/11 40/9 40/10
**first [8]**  3/22 5/21 6/6
 12/11 16/18 23/21 31/8 32/24
**five [2]**  7/4 23/23
**fixed [1]**  17/25
**flew [1]**  20/23
**folks [1]**  26/16
**follow [1]**  37/6
**followed [3]**  15/9 15/10 16/6
**following [4]**  18/14 27/14
 35/21 36/19
**footholds [1]**  22/23
**foregoing [1]**  43/4
**forfeit [2]**  10/5 40/25
**forfeiture [7]**  9/18 9/19
 10/4 23/9 24/25 25/2 41/2
**forged [3]**  17/11 17/16 19/23
**forms [1]**  17/12
**forth [6]**  4/13 4/17 5/4 15/4
 32/3 33/19
**forward [1]**  22/8
**found [6]**  13/2 13/24 16/3
 18/15 18/17 24/2
**four [1]**  16/17
**fourth [1]**  21/2
**frankly [1]**  34/18
**fraud [8]**  2/21 5/11 5/24 8/9
 17/3 20/25 21/7 28/6
**freely [1]**  18/21
**friends [3]**  27/23 27/25
 28/11
**friendship [1]**  18/7
**front [1]**  42/19
**full [5]**  20/9 20/15 20/20
 23/2 40/16
**full-time [1]**  20/20
**fully [2]**  5/1 27/9
**fulsome [1]**  23/24
**fundamental [1]**  41/13
**funds [11]**  5/23 5/24 5/25
 6/17 6/19 6/25 22/13 25/3
 25/5 25/6 40/25
**further [8]**  6/23 7/16 8/1
 23/12 24/13 28/15 33/1 35/15
**future [3]**  15/22 19/11 32/15

**G**

**gain [2]**  20/15 21/1
**gaming [1]**  37/17
**Gardner [9]**  1/18 2/13 3/12
 4/16 10/10 12/3 27/20 39/23
 42/6
**gateway [1]**  18/6
**Gavito [1]**  2/16
**general [2]**  32/12 34/23
**generated [1]**  11/18
**genuinely [1]**  34/3
**get [7]**  3/17 10/14 18/15
 27/9 28/4 29/1 34/15
**gets [1]**  28/1
**getting [1]**  33/25
**give [4]**  11/9 31/23 31/24
 31/25
**given [1]**  24/6
**Glynda [1]**  21/24
**go [7]**  3/16 3/17 5/8 11/17
 16/17 19/13 31/6

**goes [1]**  28/7
**going [9]**  3/16 18/23 19/18
 23/8 24/25 32/14 34/16 41/1
 42/8
**good [8]**  2/7 2/10 2/12 2/14
 2/15 34/14 42/20 42/21
**Google [1]**  18/4
**got [6]**  28/17 28/18 30/18
 31/16 33/12 42/19
**gotten [1]**  32/23
**government [27]**  2/6 3/6 3/9
 4/2 4/12 7/16 8/4 9/25 10/8
 10/14 10/16 11/16 11/20
 14/12 16/5 16/12 16/17 20/10
 20/14 20/16 21/5 25/4 28/25
 31/21 33/5 42/10 42/17
**government's [3]**  12/1 24/9
 26/9
**granted [1]**  42/14
**gray [1]**  30/21
**great [1]**  28/17
**greater [2]**  9/14 15/16
**ground [1]**  22/4
**grounds [2]**  38/8 39/1
**group [3]**  5/21 6/1 6/2
**grouped [1]**  5/22
**guess [1]**  30/5
**guideline [6]**  6/7 7/18 11/21
 12/8 12/16 13/19
**guidelines [37]**  3/20 3/25
 5/7 5/10 5/20 6/6 6/9 6/9
 6/10 7/22 7/24 8/4 8/11 8/15
 8/18 9/4 9/11 11/16 12/6
 12/15 12/24 13/1 13/5 13/6
 13/8 13/15 13/24 14/9 15/23
 16/1 20/13 30/9 32/4 33/13
 34/8 35/9 41/8
**guilty [5]**  2/19 7/17 16/3
 41/11 41/23
**guys [2]**  18/18 19/12

**H**

**had [25]**  3/23 4/20 11/16
 11/17 16/23 19/16 19/21
 20/14 20/19 21/7 21/8 21/10
 21/12 21/22 22/2 22/5 22/7
 24/2 24/19 26/3 26/16 26/21
 28/16 28/17 33/14
**hadn't [1]**  28/13
**hands [1]**  22/14
**happen [1]**  29/2
**happened [2]**  24/5 28/2
**hard [2]**  30/17 31/4
**has [36]**  2/19 4/6 5/14 5/15
 5/18 6/14 6/16 7/14 9/8
 10/18 11/24 13/10 13/24
 14/14 14/20 15/1 15/15 16/5
 16/10 17/2 20/11 21/12 21/25
 24/5 26/10 27/22 28/21 28/25
 31/5 31/5 31/7 31/9 31/17
 32/7 41/2 42/10
**hate [1]**  30/25
**have [57]**
**haven't [2]**  24/6 30/3
**having [3]**  13/10 21/16 28/11
**he [4]**  21/9 21/10 21/11
 27/16
**head [1]**  18/10
**health [6]**  20/8 31/5 31/14
 33/24 37/5 39/22

**H**

**hear [6]** 4/2 4/2 4/3 4/4 4/4 24/22
**heard [1]** 16/12
**hearing [2]** 39/5 39/5
**helped [2]** 17/13 20/20
**helping [3]** 20/21 20/22 33/8
**helpless [1]** 21/9
**her [52]**
**here [11]** 2/17 2/18 11/25 16/16 22/22 28/10 28/24 32/17 34/9 34/17 35/1
**hereby [2]** 35/10 40/24
**herself [2]** 31/16 32/14
**high [3]** 20/17 27/25 28/11
**higher [1]** 33/14
**highest [1]** 6/5
**highlights [1]** 20/7
**him [2]** 21/7 21/8
**hired [1]** 20/20
**his [2]** 27/14 27/17
**history [3]** 7/21 7/22 15/25
**home [3]** 17/20 20/3 25/20
**Homeland [1]** 16/22
**Honor [38]** 2/7 2/12 2/15 3/11 3/14 4/15 4/19 8/5 8/7 9/21 9/22 9/24 10/1 10/13 10/17 10/20 11/1 12/4 12/9 13/16 14/11 14/22 16/14 20/18 24/24 27/21 30/8 30/11 30/15 31/3 31/22 35/5 39/25 40/4 40/7 42/5 42/7 42/12
**HONORABLE [1]** 1/9
**hope [2]** 19/12 42/20
**hosted [3]** 17/19 21/6 25/20
**hours [1]** 21/9
**house [5]** 17/17 19/6 20/20 21/6 38/16
**how [3]** 18/24 19/2 31/18
**hub [1]** 37/15
**huge [1]** 29/3
**Hunter [1]** 42/1

**I**

**I'm [2]** 6/3 24/22
**I-9 [1]** 17/11
**I-9s [1]** 19/12
**idea [2]** 28/16 34/14
**identifiable [1]** 17/11
**identification [1]** 17/15
**identified [1]** 25/11
**identify [2]** 22/8 22/10
**identities [5]** 16/19 17/10 21/16 22/21 23/18
**identity [8]** 2/22 5/13 8/13 17/9 18/11 21/4 21/5 21/13
**IDs [1]** 17/14
**ignorance [1]** 31/17
**illegal [4]** 18/19 28/17 28/21 28/24
**illness [2]** 39/15 39/19
**immediately [3]** 34/15 40/11 42/9
**impacted [1]** 21/7
**impede [1]** 7/8
**impeded [1]** 7/7
**important [2]** 3/17 16/18
**impose [10]** 4/8 8/10 8/14 8/16 9/15 13/25 14/15 14/17

15/16 23/7
**imposed [8]** 5/14 5/18 15/18 16/1 35/23 41/6 41/20 42/2
**imposition [1]** 40/10
**imprisonment [8]** 5/12 5/15 5/19 6/7 8/23 9/1 9/8 41/6
**Inc [1]** 26/19
**incarcerated [1]** 39/13
**incarceration [6]** 14/20 15/8 15/9 16/10 34/10 39/3
**incident [1]** 7/10
**include [4]** 15/6 15/18 36/1 39/24
**included [1]** 25/22
**includes [2]** 37/13 40/17
**including [8]** 18/2 22/11 32/4 34/10 37/9 37/15 37/17 41/11
**incur [1]** 37/2
**India [1]** 24/5
**Indiana [1]** 1/19
**indicated [2]** 6/17 29/5
**indicating [1]** 10/24
**indictment [1]** 2/20
**individual [1]** 27/12
**individuals [4]** 17/23 18/9 22/21 23/20
**ineffective [1]** 41/22
**ineligible [5]** 8/21 8/24 9/2 9/5 9/7
**infiltrated [1]** 16/21
**inform [2]** 37/12 37/19
**information [11]** 15/4 16/22 17/11 22/15 23/13 23/14 24/6 36/24 36/25 37/1 41/21
**informed [1]** 26/21
**initial [2]** 11/16 11/21
**initially [2]** 28/16 30/18
**insignificant [1]** 29/3
**institutions [1]** 21/10
**instruments [5]** 2/24 5/17 5/17 6/5 6/13
**integrated [2]** 39/17 39/18
**intensity [1]** 37/10
**intention [1]** 7/17
**interest [2]** 36/14 36/15
**interests [1]** 14/6
**internal [2]** 22/6 27/6
**international [1]** 19/17
**internet [5]** 18/22 25/21 37/15 37/17 37/20
**interrupting [1]** 13/17
**investigation [4]** 7/9 22/6 27/6 40/17
**invoice [1]** 26/23
**invoices [3]** 25/18 25/25 26/3
**involuntary [1]** 41/12
**involved [9]** 6/25 7/4 24/17 26/2 28/1 32/14 32/23 34/1 34/15
**involvement [3]** 7/5 28/11 33/23
**involves [3]** 7/2 39/21 39/21
**IRS [2]** 6/16 21/18
**is [154]**
**ish [1]** 25/9
**ISP [1]** 24/4
**issue [8]** 19/3 21/19 25/1 26/5 31/13 32/13 32/17 34/17

**issues [5]** 20/8 20/12 21/10 25/1 31/5
**it [70]**
**its [1]** 24/11

**J**

**J-pop [1]** 20/23
**Japan [1]** 20/24
**Jeenie [1]** 27/1
**job [2]** 28/17 30/18
**jobs [1]** 22/22
**joint [2]** 10/22 11/3
**judge [2]** 1/10 32/7
**judges [2]** 14/4 34/4
**judgment [4]** 10/6 25/15 35/9 41/16
**judgments [1]** 23/10
**July [4]** 1/5 4/11 18/14 18/17
**July 10th [1]** 4/11
**June [1]** 19/8
**just [21]** 3/17 4/5 11/6 13/9 13/16 14/5 15/20 18/15 18/17 21/13 22/7 23/8 23/9 24/8 24/24 25/2 29/1 30/21 31/16 31/17 35/1
**justice [7]** 2/9 7/6 7/8 17/2 21/17 27/23 28/1

**K**

**Karen [2]** 1/15 2/7
**kind [1]** 26/14
**knew [7]** 18/12 29/9 32/20 32/20 32/22 32/25 33/6
**know [15]** 3/16 10/7 11/11 13/4 14/19 15/6 18/8 23/21 24/5 28/14 28/25 29/13 30/19 31/4 42/18
**knowledge [1]** 18/12
**known [1]** 24/17
**knows [1]** 28/23
**Korea [18]** 16/21 17/21 18/3 18/8 21/23 22/2 22/5 22/14 22/14 22/20 23/1 24/10 24/16 24/20 32/16 33/5 33/7 34/13
**Korea's [1]** 16/25
**Korean [4]** 18/5 22/19 26/21 28/14
**Koreans [2]** 28/12 30/1

**L**

**LA [1]** 20/23
**lack [1]** 15/12
**land [1]** 12/17
**language [2]** 12/23 13/17
**laptop [7]** 18/2 21/6 25/23 27/3 27/5 37/14 38/12
**laptops [6]** 17/25 18/2 20/1 25/20 25/22 25/24
**largely [1]** 26/9
**largest [2]** 17/1 17/2
**last [2]** 4/5 4/8
**lasting [1]** 21/11
**later [1]** 30/19
**launder [4]** 2/23 5/16 6/5 6/12
**laundered [3]** 5/24 6/17 6/19
**laundering [4]** 5/23 6/25 7/2 8/16
**law [6]** 3/20 15/19 18/25

## L

law... [3]  23/2 27/24 32/15
laws [1]  19/10
lawyer [8]  4/3 4/24 5/2
 18/15 18/18 19/10 30/20
 30/21
lays [1]  5/6
leader [2]  7/4 29/1
leads [2]  6/20 7/13
least [3]  12/1 22/5 36/6
left [1]  21/8
legal [3]  18/16 26/17 27/6
legally [1]  18/24
Lehman [1]  28/7
length [2]  26/3 31/17
less [2]  6/19 36/21
let [8]  3/8 5/8 6/6 12/18
 17/7 24/22 35/1 41/25
let's [1]  4/10
letter [2]  3/4 31/7
level [17]  5/25 6/1 6/15
 6/18 6/20 6/23 6/23 6/25 7/3
 7/6 7/13 7/15 7/16 7/20 7/22
 33/12 33/23
liabilities [1]  21/18
life [3]  27/14 42/19 42/21
light [3]  4/6 6/16 32/3
like [23]  4/3 4/4 12/25 13/7
 16/12 17/14 21/3 21/20 22/3
 22/24 23/24 24/2 24/7 24/13
 26/15 30/12 30/13 31/9 31/12
 32/18 33/10 39/24 40/5
likelihood [1]  34/5
likely [1]  34/22
limited [1]  38/11
Lindsay [3]  1/22 43/3 43/12
line [1]  3/17
lines [1]  37/3
linked [1]  30/4
list [1]  28/7
little [2]  25/1 31/24
live [2]  27/21 33/2
lived [1]  31/7
lives [1]  33/3
local [2]  36/2 37/21
location [1]  37/10
log [1]  17/21
logging [1]  25/22
long [2]  19/2 20/24
longer [1]  41/7
look [1]  26/16
looked [1]  17/14
losses [5]  21/1 21/3 21/15
 21/20 22/3
lost [1]  22/1
low [3]  16/11 34/6 34/18
lower [2]  12/15 20/17

## M

made [6]  19/15 19/25 28/12
 32/8 34/2 36/16
magnitude [1]  13/8
mailing [1]  29/20
main [1]  2/9
major [1]  29/3
make [7]  20/18 23/9 29/2
 34/1 36/9 36/12 42/20
makes [4]  11/13 14/3 14/13
 30/23

making [4]  17/14 20/21 20/25
 30/7
malign [1]  22/15
maligned [1]  21/25
management [1]  37/12
managing [1]  20/21
mandatory [4]  5/14 6/11
 35/21 36/1
manner [3]  33/6 38/7 38/25
many [8]  21/22 22/11 22/18
 22/19 23/19 23/21 28/2 31/18
March [1]  19/16
massive [1]  17/3
material [1]  33/6
materials [4]  3/6 3/9 3/13
 4/17
matter [3]  31/13 33/24 43/5
matters [1]  4/13
maximum [8]  5/12 5/19 9/9
 9/9 9/10 9/14 9/16 41/7
may [16]  6/3 8/10 8/13 8/16
 9/15 22/14 32/23 36/15 36/25
 38/2 38/7 38/9 38/11 38/20
 38/25 41/17
me [26]  2/8 3/8 3/22 3/25
 4/2 4/4 4/5 5/8 6/6 10/24
 12/18 12/23 13/16 14/3 14/10
 18/19 23/12 24/22 30/17
 30/23 31/17 31/23 35/1 35/2
 39/24 41/25
Mealer [1]  21/24
mean [4]  28/4 29/12 29/19
 30/5
means [1]  13/11
meant [1]  6/4
media [3]  37/21 38/1 38/19
memo [3]  20/7 28/18 31/5
memorandum [3]  3/3 3/5 33/20
mental [7]  20/8 31/5 31/14
 37/5 39/15 39/19 39/22
mentally [1]  21/8
mentioned [1]  26/19
mercy [1]  31/19
message [1]  22/25
messages [1]  18/13
met [2]  19/19 19/20
metropolitan [1]  39/8
middle [1]  34/11
might [4]  22/15 23/20 29/16
 34/19
million [6]  6/18 6/19 6/20
 9/9 9/12 16/24
mind [1]  32/8
minds [1]  30/5
Minnesota [1]  27/4
minute [1]  12/24
minutes [1]  31/23
misspoken [1]  6/3
mistake [1]  20/18
mistaken [1]  29/19
mitigating [1]  11/25
mix [2]  14/8 14/9
mixture [1]  25/9
modality [1]  37/10
modification [1]  36/23
modified [1]  39/16
mom [2]  28/22 30/18
monetary [4]  2/24 5/17 20/15
 20/19
monetize [1]  24/10

monetizing [1]  24/12
money [16]  5/17 5/23 6/5
 6/12 8/16 10/6 16/8 18/16
 20/19 24/11 25/13 25/13
 25/15 28/11 29/13 30/5
monies [1]  40/25
month [4]  20/1 30/9 35/16
 36/21
monthly [1]  25/18
months [30]  7/23 7/23 12/19
 14/15 14/16 14/18 14/25 15/1
 15/8 15/9 16/5 16/7 16/7
 19/6 23/4 23/4 23/5 23/5
 31/10 34/10 34/11 34/12
 34/22 34/24 35/3 35/3 35/11
 35/12 35/13 35/17
more [10]  6/17 6/19 7/4 8/10
 8/14 8/17 17/19 26/14 27/9
 30/7
Morgan [1]  1/18
morning [1]  27/8
MOSS [1]  1/9
most [5]  6/1 16/18 18/18
 32/6 33/4
mother [1]  28/18
mother's [1]  33/24
motion [2]  42/10 42/14
motivation [1]  20/19
move [2]  8/1 42/12
Mr. [2]  21/5 21/6
Mr. Willsey [1]  21/6
Mr. Willsey's [1]  21/5
Ms [51]
Ms. [6]  20/11 25/6 25/18
 32/20 33/1 42/9
Ms. Chapman [4]  20/11 25/18
 32/20 42/9
Ms. Chapman's [1]  25/6
Ms. Seifert [1]  33/1
much [1]  30/25
multiple [3]  21/4 22/21
 22/22
must [19]  15/24 36/1 36/2
 36/3 36/4 36/7 36/9 36/20
 36/23 37/2 37/5 37/24 38/6
 38/8 38/14 38/16 38/24 39/1
 41/15
my [12]  5/5 8/2 10/18 12/16
 17/12 27/23 27/24 30/18
 31/25 32/6 32/7 33/4
myself [1]  31/1

## N

name [3]  2/5 19/22 21/18
named [1]  22/11
nation [1]  34/17
national [2]  33/9 33/15
Nations [1]  22/18
nature [4]  15/24 23/14 32/19
 33/15
necessary [2]  15/17 17/24
need [12]  3/21 5/20 15/18
 16/1 16/1 21/19 22/23 22/24
 27/8 34/13 35/1 36/22
needs [1]  39/22
neither [1]  12/25
network [2]  37/16 38/18
networks [2]  26/16 37/25
never [7]  18/25 18/25 19/19
 19/20 19/21 26/25 27/5

Case 3:24-cr-00151   Document 126-1   Filed 03/16/26   Page 50 of 55 PageID #: 794

**N**

new [4]  1/13 37/2 37/18 41/20
nice [1]  20/19
Nigeria [1]  20/2
Nike [3]  22/3 23/24 27/8
Ninety [1]  10/21
no [22]  1/4 3/11 3/14 4/15 4/19 8/5 8/7 12/14 14/11 15/2 20/18 28/16 30/11 31/11 31/13 31/22 36/21 39/25 40/4 40/7 42/5 42/7
non [2]  18/20 18/21
non-allied [2]  18/20 18/21
nonagreement [1]  10/24
none [1]  28/8
North [26]  16/21 16/25 17/21 18/3 18/5 18/8 21/22 21/23 22/2 22/5 22/13 22/14 22/19 22/20 23/1 24/10 24/16 24/20 26/21 28/12 28/14 30/1 32/16 33/5 33/6 34/12
Northwest [1]  40/13
not [41]  7/18 7/20 8/10 8/14 8/17 11/16 13/20 13/21 14/12 15/16 17/1 17/3 20/9 22/1 22/7 22/9 22/13 23/21 23/21 24/7 26/1 26/12 28/10 29/8 29/19 31/16 32/21 33/7 34/15 34/22 36/1 36/2 36/21 37/2 37/17 38/14 40/2 41/13 42/2 42/16 42/17
note [1]  11/15
noted [2]  21/24 42/2
notes [1]  21/5
notified [2]  21/17 23/17
notify [1]  40/14
notifying [1]  7/16
November [1]  26/1
November 2021 [1]  26/1
now [3]  15/14 28/10 28/13
nuclear [3]  29/14 30/1 30/4
number [2]  2/2 33/21
NW [3]  1/13 1/16 1/23

**O**

object [1]  12/25
objecting [1]  10/10
objection [3]  4/13 4/17 14/10
objections [4]  3/24 8/2 10/12 42/1
obligation [1]  40/15
obligations [1]  40/10
obstruct [1]  7/8
obstructed [1]  7/7
obstruction [1]  7/6
obstructive [1]  7/10
obtainable [1]  36/22
obtained [1]  19/21
obviously [4]  14/8 28/23 31/3 31/12
occupants [2]  38/9 39/1
October [3]  19/5 26/1 43/10
October 2023 [1]  26/1
off [4]  20/25 24/3 24/11 27/14
offender [2]  7/18 33/17
offense [23]  5/23 5/25 6/1

6/15 6/20 6/21 6/24 6/24 7/2 7/10 7/11 7/13 7/20 7/22 8/23 9/1 15/19 15/20 15/25 25/17 32/19 33/15 41/23
offers [1]  39/18
office [16]  1/15 2/16 3/2 3/3 6/14 14/14 14/25 15/1 35/22 36/25 37/2 38/19 39/9 40/16 40/18 40/21
office's [1]  5/7
officer [13]  36/8 36/23 37/4 37/7 37/12 37/19 37/20 38/2 38/2 38/13 38/20 38/20 39/6
Official [3]  1/22 43/3 43/13
oh [2]  30/4 42/10
Okay [15]  3/12 4/16 10/2 12/3 12/5 13/22 14/23 16/15 29/11 29/25 30/10 30/16 31/20 35/6 40/2
one [20]  8/14 8/15 14/18 17/1 17/12 20/23 21/13 22/7 22/17 22/21 23/22 24/2 24/3 27/1 27/8 27/12 28/19 32/8 33/15 36/4
one-year [1]  14/18
online [1]  37/22
only [3]  22/13 38/3 38/21
open [2]  17/8 37/2
operated [1]  27/5
operating [1]  22/20
opportunity [1]  3/23
options [1]  35/23
order [9]  9/18 9/19 10/7 10/22 11/4 25/3 40/19 41/2 42/8
ordered [4]  35/18 36/12 37/11 40/24
organization [1]  29/2
organizer [1]  7/3
other [21]  3/6 3/12 5/16 6/10 17/9 19/12 22/25 24/17 25/9 25/21 27/1 27/6 33/18 36/10 37/24 38/8 38/17 38/19 39/23 40/3 41/13
others [2]  22/9 32/16
otherwise [3]  7/5 33/13 38/13
our [9]  11/21 11/23 13/23 23/3 25/3 25/16 28/18 31/4 34/17
out [10]  5/6 18/15 18/17 18/24 23/22 23/25 31/11 31/24 34/14 35/2
outlined [1]  28/18
outside [2]  22/20 39/8
over [1]  31/8
overseas [6]  17/18 18/2 20/1 25/13 25/24 41/1
overwhelming [1]  27/22
owed [1]  36/20
owner [1]  21/24

**P**

p.m [3]  1/6 32/1 42/23
page [2]  12/11 13/17
paid [3]  22/1 26/25 40/15
Pakistan [6]  20/2 29/10 29/17 29/21 29/24 33/7
papers [1]  38/17
paperwork [1]  11/22

paragraph [2]  12/12 13/18
part [10]  4/8 11/23 11/25 23/18 23/19 24/18 25/17 30/23 30/24 35/22
participants [1]  7/5
participate [3]  37/5 37/11 39/14
participation [1]  37/9
particular [1]  32/2
particularly [2]  29/10 32/8
parties [11]  10/5 10/23 11/7 11/11 11/15 12/14 12/18 13/3 14/1 20/18 41/3
partners [1]  21/24
party [2]  12/25 13/21
Patricia [1]  1/15
pawn [1]  29/1
pay [7]  22/2 25/12 26/23 35/18 36/14 36/20 40/9
payable [1]  40/11
paygrade [1]  30/2
payment [3]  26/24 26/25 36/16
payments [1]  25/25
penalties [1]  36/15
people [8]  19/8 19/12 21/3 21/3 22/24 28/8 31/18 32/18
Perfect [1]  11/6
perform [1]  18/24
performed [1]  26/10
period [4]  10/11 15/8 41/6 42/19
periodic [1]  36/6
permission [1]  41/17
permitted [2]  20/12 20/13
pernicious [1]  23/14
perpetrating [1]  22/20
person [3]  19/19 19/20 38/16
personal [1]  37/16
personally [1]  17/10
persons [1]  21/13
perspective [3]  12/2 24/9 33/4
phones [1]  38/12
pick [1]  13/5
picture [1]  20/9
placement [2]  36/5 39/4
places [2]  27/25 28/11
Plaintiff [2]  1/4 1/12
played [1]  33/25
plea [21]  7/17 9/7 11/22 11/24 12/6 12/14 12/23 13/10 13/13 13/14 13/21 14/7 15/6 32/9 33/13 41/5 41/11 41/12 41/14 41/23 42/13
plead [2]  20/12 20/13
please [1]  2/4
pled [1]  2/19
podium [1]  2/5
point [4]  7/17 12/16 13/6 24/16
points [1]  7/21
policy [1]  15/23
pop [1]  20/23
port [1]  18/5
posed [1]  32/16
position [1]  26/9
possess [1]  36/3
possessed [1]  37/13
possible [2]  17/3 22/25

**P**

**powers [1]** 27/22
**pre [1]** 12/7
**precluded [1]** 9/3
**preferable [1]** 12/20
**preference [1]** 40/1
**premises [2]** 38/9 39/2
**present [1]** 2/13
**presentence [12]** 3/1 3/23 4/10 4/14 4/18 4/21 5/5 5/6 15/5 35/23 40/16 40/20
**presumably [2]** 29/8 29/21
**pretended [1]** 17/24
**previously [1]** 15/11
**primary [1]** 18/5
**prior [2]** 18/20 39/5
**prison [4]** 14/25 18/19 19/13 31/6
**Prisons [1]** 35/11
**probation [30]** 2/4 2/16 3/2 3/3 5/7 6/14 8/21 8/24 9/3 9/6 9/7 13/18 14/14 14/25 15/1 35/22 36/8 36/23 36/25 37/4 37/7 38/2 38/2 38/20 38/20 39/5 39/9 40/16 40/18 40/21
**problem [3]** 12/14 21/15 23/23
**problems [1]** 39/15
**Procedure [1]** 40/24
**proceeding [2]** 14/10 41/13
**proceedings [2]** 42/23 43/5
**process [2]** 11/20 32/24
**productive [1]** 42/21
**profits [1]** 20/25
**program [7]** 16/25 37/6 37/7 37/9 39/14 39/17 39/20
**programming [2]** 40/3 40/5
**programs [3]** 30/2 30/4 39/23
**progress [3]** 39/5 39/10 39/11
**proliferated [1]** 27/23
**promote [2]** 15/19 15/22
**proof [1]** 30/6
**property [1]** 38/16
**propose [1]** 14/4
**proposed [5]** 9/18 9/19 11/4 23/4 41/2
**prosecution [2]** 7/9 28/3
**protect [1]** 15/21
**protection [1]** 27/16
**provide [6]** 11/5 13/6 15/20 27/2 32/5 36/23
**provided [3]** 25/18 25/19 27/2
**provider [3]** 37/8 37/9 37/21
**provisions [1]** 35/8
**psychological [2]** 21/11 33/22
**public [3]** 1/18 15/22 24/10
**pulled [1]** 24/4
**Pungello [5]** 1/12 2/9 11/2 23/8 24/22
**punished [1]** 23/2
**punishment [1]** 15/20
**purchased [1]** 27/16
**purely [1]** 15/4
**purported [1]** 19/22
**purposes [5]** 5/5 12/16 15/17

15/18 34/9
**pursuant [8]** 6/8 10/6 35/6 38/9 40/23 41/4 41/25 42/13
**put [3]** 14/7 14/9 18/19
**putting [1]** 9/6

**Q**

**question [1]** 17/1
**quickly [1]** 11/19
**quintessential [1]** 22/4
**quite [2]** 33/21 34/18
**quote [1]** 29/5

**R**

**raise [1]** 24/11
**RANDOLPH [1]** 1/9
**range [26]** 6/6 9/4 11/16 11/21 11/22 11/24 12/7 12/15 12/16 12/17 13/6 13/11 13/19 13/19 14/1 16/1 16/11 20/12 20/13 20/17 32/9 32/10 33/19 34/9 34/18 41/8
**rate [1]** 36/21
**read [1]** 31/6
**real [7]** 21/1 21/3 21/3 22/3 24/15 24/19 33/2
**really [8]** 29/1 30/17 30/22 30/23 30/25 34/13 34/16 34/16
**reasonable [7]** 30/5 38/3 38/6 38/7 38/21 38/24 38/25
**reasonable suspicion [1]** 38/3
**reasons [1]** 22/11
**rebuilding [1]** 27/14
**receipt [1]** 39/11
**receive [3]** 26/11 26/13 37/23
**received [9]** 7/18 10/8 17/16 20/11 25/14 26/24 26/25 27/7 41/22
**receiving [1]** 26/22
**Recess [1]** 32/1
**recidivism [1]** 34/5
**reckless [1]** 18/9
**recognize [2]** 21/12 28/20
**recollection [1]** 10/18
**recommend [8]** 7/23 7/24 8/11 8/15 8/18 9/11 39/13 39/17
**recommendation [4]** 3/2 14/24 15/4 39/24
**recommended [5]** 6/15 14/14 15/2 35/22 37/6
**record [6]** 2/5 11/7 23/9 32/5 42/3 43/5
**records [1]** 16/3
**reduces [1]** 32/9
**reduction [2]** 7/15 7/16
**reentry [1]** 39/5
**referred [1]** 29/4
**reflect [1]** 15/18
**Reform [1]** 35/7
**refrain [1]** 36/3
**regardless [1]** 29/12
**regime [1]** 24/11
**regimes [1]** 29/16
**regulations [1]** 37/7
**rehabilitation [1]** 15/23
**related [7]** 7/11 7/12 11/18 27/14 33/22 39/19 39/22

**relating [2]** 3/6 14/6
**release [22]** 8/9 8/10 8/11 8/14 8/17 8/18 14/16 14/19 14/20 15/1 15/10 16/8 23/6 31/13 35/16 35/17 36/25 38/4 38/8 39/3 39/7 40/16
**relevant [5]** 3/19 5/21 7/12 16/13 32/3
**remaining [2]** 42/11 42/13
**remanded [1]** 42/9
**remarks [1]** 32/5
**remediation [1]** 26/15
**remorseful [3]** 31/7 31/15 34/3
**remote [2]** 25/22 38/14
**remotely [1]** 17/22
**rent [2]** 20/19 25/19
**report [16]** 3/1 3/24 4/10 4/14 4/18 4/21 5/5 5/6 10/23 15/5 35/23 39/6 39/10 39/11 40/17 40/20
**reported [2]** 18/25 24/1
**Reporter [4]** 1/22 1/22 43/3 43/13
**reporting [1]** 23/16
**reports [1]** 22/19
**request [8]** 3/9 3/13 26/20 27/3 27/7 27/12 27/13 41/17
**requested [1]** 36/24
**require [1]** 4/5
**required [6]** 6/8 10/5 10/7 14/8 15/14 39/12
**residence [2]** 38/17 40/19
**resolve [3]** 3/21 11/19 39/20
**respect [19]** 3/19 5/9 5/10 5/20 6/10 6/11 7/9 8/3 8/8 8/20 10/8 10/23 11/10 15/19 16/12 32/6 41/9 42/1 42/11
**responsibility [2]** 7/15 28/24
**responsible [2]** 28/8 28/19
**rest [2]** 28/15 31/10
**restitution [20]** 3/7 10/7 10/9 10/15 15/2 23/9 24/25 26/5 26/6 26/15 26/20 27/3 27/11 27/13 27/13 36/9 36/11 36/13 36/16 36/20
**result [1]** 21/1
**results [4]** 6/5 6/22 7/21 14/24
**return [1]** 40/20
**returned [1]** 27/5
**returns [1]** 31/15
**revenue [2]** 11/18 16/24
**review [2]** 3/23 4/21
**reviewed [4]** 3/1 3/3 3/5 9/19
**reviews [3]** 23/19 23/20 23/24
**revocation [2]** 38/8 39/1
**right [23]** 2/10 2/14 2/18 10/2 10/19 10/21 11/10 14/13 14/14 27/18 28/4 29/22 31/2 31/21 31/23 35/6 40/8 41/5 41/10 41/19 42/8 42/18 42/22
**ripple [1]** 21/12
**role [3]** 7/19 25/17 33/25
**Room [1]** 1/24
**RPR [1]** 43/12
**Rule [1]** 40/23

**R**

**rules [3]** 8/3 37/7 40/23
**run [4]** 16/6 23/5 35/14 35/17
**running [1]** 17/21

**S**

**sad [2]** 22/17 30/23
**safety [1]** 34/17
**said [9]** 6/3 13/13 18/14 18/15 18/17 19/11 21/4 30/21 34/4
**same [5]** 8/22 8/23 8/25 9/1 34/21
**sanctions [3]** 24/12 29/16 29/16
**sand [1]** 18/10
**satisfactorily [1]** 26/11
**satisfied [1]** 5/1
**say [4]** 6/4 19/20 21/21 33/11
**saying [1]** 17/12
**says [1]** 30/3
**scale [3]** 16/19 17/4 23/23
**scheme [15]** 11/19 17/2 20/15 20/25 21/14 22/20 23/18 24/13 25/4 25/17 26/2 28/16 28/21 29/1 29/3
**schemes [1]** 28/2
**scraped [2]** 16/23 24/3
**search [12]** 17/9 17/10 18/4 19/5 38/1 38/3 38/6 38/7 38/19 38/21 38/24 38/25
**searched [4]** 20/3 38/5 38/9 38/23
**second [2]** 3/24 17/6
**section [13]** 4/7 5/13 6/8 6/16 6/22 7/1 8/21 10/6 32/4 35/8 35/19 41/4 41/19
**sections [6]** 2/21 2/24 5/11 5/18 6/13 36/10
**security [2]** 16/23 33/9
**see [6]** 12/13 24/3 26/15 26/16 28/3 35/1
**seek [1]** 36/22
**seeking [2]** 10/9 25/15
**seen [2]** 19/21 30/3
**Seifert [10]** 1/15 2/8 3/8 4/12 25/23 26/6 26/19 29/4 33/1 42/4
**seized [4]** 17/20 25/4 25/5 25/10
**send [4]** 22/25 25/12 34/13 34/19
**sending [2]** 20/1 29/21
**sense [2]** 14/3 14/13
**sent [6]** 22/5 25/7 27/3 29/9 29/23 29/24
**sentence [35]** 4/6 4/9 5/14 5/15 5/19 6/7 6/11 7/23 12/8 13/25 14/15 14/17 15/16 15/18 15/20 16/1 16/5 16/7 16/16 17/5 23/3 23/4 23/6 30/9 31/10 31/25 34/24 35/3 36/11 40/19 41/6 41/7 41/9 41/20 42/2
**sentenced [3]** 8/22 8/25 35/15
**sentences [3]** 16/4 34/7

35/14
**sentencing [26]** 1/9 2/19 3/3 3/5 3/15 3/22 5/6 5/9 5/20 7/9 8/3 9/5 14/4 15/17 16/2 16/13 31/4 32/4 32/6 33/2 34/9 35/7 35/9 35/23 41/8 41/24
**sentiment [1]** 27/22
**serious [7]** 6/1 18/16 31/5 33/2 33/11 33/19 33/21
**seriously [2]** 34/16 34/20
**seriousness [2]** 15/19 34/12
**serve [1]** 35/15
**served [1]** 14/16
**server [1]** 24/3
**servers [1]** 16/24
**service [2]** 25/13 37/21
**services [9]** 25/19 25/21 26/11 26/13 26/14 26/15 26/23 27/16 37/22
**set [8]** 4/13 4/17 5/4 15/4 21/15 32/3 33/1 33/19
**seven [2]** 30/7 31/11
**severity [1]** 24/7
**severity of [1]** 24/7
**shall [6]** 35/20 36/16 36/19 40/14 40/16 40/20
**share [1]** 37/1
**she [119]**
**Sherry [3]** 1/22 43/3 43/12
**shipped [1]** 18/2
**shipping [2]** 25/23 25/24
**should [11]** 10/22 12/17 12/18 13/1 13/10 13/18 15/21 17/6 20/17 21/2 22/18
**shows [1]** 18/9
**sick [2]** 28/19 30/19
**sides [1]** 9/19
**sign [1]** 10/3
**signal [2]** 34/13 34/19
**signature [1]** 17/13
**signed [1]** 31/6
**significance [1]** 33/16
**significant [3]** 20/11 33/12 34/22
**significantly [2]** 21/25 33/4
**similar [2]** 16/3 16/3
**simple [1]** 18/4
**since [2]** 9/4 24/25
**single [1]** 19/19
**sit [1]** 23/12
**sits [1]** 20/10
**situation [2]** 13/2 31/9
**slap [1]** 28/4
**small [2]** 21/21 26/20
**smart [3]** 37/14 37/14 38/12
**smartphones [1]** 37/14
**smoothies [1]** 20/21
**so [49]**
**so-called [1]** 18/7
**social [1]** 37/21
**software [1]** 25/23
**solely [1]** 29/13
**some [20]** 10/11 10/24 11/20 11/25 18/15 22/11 23/22 23/24 25/19 27/15 27/16 29/15 29/24 31/5 32/5 32/21 33/8 33/12 33/23 41/12
**somebody [1]** 30/25
**somehow [1]** 41/12

**something [4]** 17/25 29/9 29/23 30/24
**somewhat [2]** 32/8 32/11
**sophisticated [1]** 7/2
**sorry [5]** 6/3 24/22 31/16 31/16 33/24
**sought [2]** 16/5 16/10
**special [5]** 9/16 15/3 16/8 35/18 36/19
**specific [2]** 6/21 32/12
**specifically [1]** 17/6
**specified [2]** 4/7 15/15
**specify [1]** 12/6
**spent [1]** 21/9
**spoke [1]** 30/21
**spoken [1]** 31/17
**staffed [1]** 21/23
**staffers [1]** 20/20
**standard [1]** 38/11
**standing [1]** 11/22
**stands [1]** 5/22
**start [1]** 4/10
**starting [3]** 2/5 12/16 32/19
**starts [1]** 6/15
**state [3]** 2/5 17/14 36/2
**stated [2]** 19/8 19/25
**statement [2]** 19/15 25/17
**statements [1]** 15/24
**states [21]** 1/1 1/3 1/10 2/3 2/8 17/15 22/23 29/6 29/7 29/8 32/16 32/21 32/23 33/8 36/17 37/1 38/2 39/9 40/12 40/18 41/25
**status [2]** 10/22 39/6
**statute [6]** 4/7 6/8 9/3 9/13 9/16 36/10
**statutory [4]** 5/9 5/12 8/3 41/7
**step [5]** 3/22 3/25 4/2 4/5 4/8
**steps [2]** 3/16 3/18
**still [2]** 32/10 34/1
**stole [1]** 22/16
**stolen [5]** 16/20 17/10 21/16 22/12 24/2
**stop [1]** 34/15
**storage [4]** 37/25 38/1 38/18 38/19
**Street [2]** 1/16 28/5
**strongest [1]** 22/25
**stuff [2]** 29/20 30/19
**submissions [2]** 10/8 26/6
**submit [9]** 10/11 23/3 36/4 37/24 38/7 38/16 38/25 39/6 39/9
**submits [1]** 20/10
**submitted [6]** 3/4 3/5 4/11 26/20 27/12 41/2
**subpar [1]** 26/14
**subsection [1]** 7/1
**subsequently [1]** 36/12
**substance [4]** 36/3 36/4 39/15 39/18
**successful [1]** 22/23
**such [1]** 40/15
**suffer [1]** 33/18
**suffers [1]** 33/22
**sufficient [1]** 15/16
**suggestion [1]** 13/23
**Suite [1]** 1/20

**S**

**summarizing [1]**  39/6
**supervise [1]**  37/8
**supervised [18]**  8/8 8/10
 8/11 8/14 8/17 8/18 14/16
 14/19 14/20 15/1 15/10 16/7
 23/6 31/13 35/16 35/17 38/4
 39/7
**supervising [2]**  37/19 37/20
**supervision [7]**  35/20 35/25
 36/5 37/22 38/22 39/4 39/11
**support [1]**  31/14
**supported [1]**  22/13
**supposed [2]**  19/19 19/22
**sure [2]**  12/22 13/12
**suspicion [2]**  38/3 38/21
**sympathetic [1]**  20/9
**system [1]**  24/12
**systems [2]**  24/20 37/17

**T**

**table [2]**  2/8 9/5
**tablets [2]**  37/14 38/12
**take [8]**  11/8 12/23 13/1
 13/14 31/18 34/16 34/19
 34/20
**taken [3]**  11/24 21/13 32/1
**taking [2]**  28/20 28/24
**talk [2]**  4/23 24/25
**talked [2]**  25/23 26/7
**talking [1]**  30/24
**tax [1]**  21/18
**tell [2]**  23/12 23/15
**telling [1]**  10/24
**term [17]**  6/7 8/10 8/11 8/14
 8/16 8/18 8/23 8/25 9/8
 14/18 14/19 14/25 16/10 34/9
 35/11 35/13 35/16
**termination [1]**  40/21
**terms [3]**  35/12 41/5 41/10
**test [1]**  36/5
**tests [1]**  36/6
**than [14]**  6/17 6/19 6/19
 8/10 8/14 8/17 9/14 12/15
 13/19 15/16 17/19 30/8 36/21
 41/7
**thank [8]**  14/23 24/21 24/24
 27/18 27/19 31/20 42/12
 42/22
**Thanks [1]**  2/17
**that [263]**
**theft [3]**  2/22 5/13 8/13
**their [22]**  2/5 10/23 16/23
 16/24 17/10 18/6 18/11 19/21
 21/4 21/16 21/18 21/23 22/6
 22/12 22/13 22/14 24/2 24/3
 24/20 26/16 26/21 27/3
**them [17]**  13/2 13/9 13/25
 17/17 17/18 17/25 19/16
 19/20 20/5 22/12 23/19 23/20
 23/21 23/22 25/21 26/22 28/3
**themselves [2]**  22/10 26/12
**then [23]**  3/20 4/5 5/4 6/12
 6/20 7/13 8/8 8/15 9/18 10/3
 10/22 11/10 13/10 13/10
 14/13 14/14 14/17 14/18
 23/17 24/4 24/22 26/11 36/22
**therapeutic [1]**  39/16
**therapy [1]**  39/21

**there [36]**  3/8 3/12 3/18
 3/20 4/1 6/18 6/20 6/23 6/25
 7/2 7/6 8/1 9/16 10/24 11/10
 14/5 14/10 15/11 17/25 21/20
 22/9 22/19 23/21 23/22 25/4
 28/7 29/23 31/11 32/11 33/21
 34/13 34/14 39/23 41/12 42/1
 42/10
**thereafter [1]**  36/6
**therefore [3]**  11/24 36/15
 40/9
**these [9]**  3/18 19/12 20/12
 23/1 23/19 24/14 25/1 25/3
 30/4
**they [40]**  3/25 17/14 17/22
 21/19 21/22 21/25 22/1 22/2
 22/5 22/12 22/15 22/16 22/22
 22/22 22/23 23/20 23/21
 23/25 24/2 24/3 24/5 24/6
 24/19 25/11 25/12 26/13
 26/13 26/20 26/21 26/24
 26/24 26/25 27/2 28/4 28/14
 30/20 30/23 33/2 34/8 34/15
**thing [3]**  18/16 21/2 32/7
**things [5]**  24/13 26/14 26/17
 29/24 37/15
**think [34]**  11/14 11/22 11/23
 12/18 13/1 13/6 13/8 13/9
 20/16 23/13 24/9 24/14 24/18
 27/22 29/7 29/13 29/23 30/3
 30/7 31/9 32/12 32/13 32/15
 32/25 33/9 33/11 33/21 34/3
 34/4 34/5 34/18 34/21 34/23
 35/2
**thinks [1]**  34/14
**third [4]**  4/2 13/17 13/18
 18/12
**this [70]**
**thorough [1]**  23/19
**those [29]**  3/21 5/25 14/16
 15/17 17/15 17/20 17/23 20/6
 21/15 22/10 22/21 23/10
 23/24 25/5 25/11 25/12 25/21
 25/24 25/25 26/3 26/5 26/7
 26/7 26/8 26/11 26/12 26/16
 26/17 28/8
**though [1]**  29/15
**thought [8]**  14/7 23/22 28/17
 31/24 32/22 33/7 33/7 34/7
**thousands [1]**  28/5
**threat [1]**  32/15
**three [4]**  2/19 8/10 8/17
 26/5
**through [8]**  3/16 3/18 5/8
 11/17 16/17 31/4 32/24 33/13
**thus [2]**  6/9 20/16
**time [22]**  4/21 4/23 8/22
 8/25 10/3 10/11 11/15 13/12
 13/14 19/7 20/20 26/2 26/3
 27/21 28/9 28/20 31/8 31/13
 38/6 38/24 40/15 42/20
**timely [1]**  7/16
**times [3]**  16/21 21/5 28/3
**today [6]**  3/10 3/13 11/8
 20/10 21/2 31/6
**today's [3]**  3/15 5/6 10/14
**together [3]**  10/14 11/4 14/5
**token [1]**  34/21
**told [5]**  18/4 19/16 20/4
 20/5 21/7

**took [3]**  13/13 20/24 29/2
**top [3]**  12/11 16/16 17/5
**total [4]**  7/19 14/25 34/9
 34/24
**totally [1]**  28/19
**traceable [1]**  25/4
**trade [1]**  18/5
**training [1]**  39/20
**transcript [2]**  1/9 43/4
**transferred [1]**  17/17
**transfers [1]**  25/25
**transmitters [1]**  25/14
**trauma [2]**  39/19 39/21
**trauma-related [1]**  39/19
**treat [1]**  12/5
**treatment [7]**  37/6 37/8 37/9
 39/14 39/18 40/20 40/22
**tried [1]**  30/6
**trouble [1]**  18/16
**true [2]**  18/11 43/4
**trusted [1]**  21/23
**truth [1]**  22/17
**try [1]**  18/24
**trying [1]**  23/25
**turn [2]**  3/21 24/23
**turned [1]**  23/22
**turning [2]**  6/12 33/17
**turns [1]**  32/17
**two [6]**  16/23 20/20 24/1
 25/13 36/6 38/11
**type [1]**  32/17
**types [3]**  16/4 26/17 34/7
**typical [1]**  26/14
**typically [2]**  12/22 14/4

**U**

**U.S [3]**  1/15 1/23 19/9
**U.S.C [14]**  2/21 2/24 4/7
 5/13 5/18 6/13 6/22 8/20
 10/6 35/8 35/19 36/10 41/4
 41/19
**ultimately [1]**  13/15
**unable [2]**  11/4 41/17
**unavailable [2]**  41/21 41/21
**under [14]**  6/9 6/22 7/19
 8/20 8/24 9/13 10/4 10/6
 11/18 13/20 38/3 38/21 41/4
 41/19
**underlying [1]**  5/23
**understand [2]**  24/21 27/9
**understanding [1]**  29/19
**understood [1]**  29/5
**undoubtedly [2]**  12/21 33/23
**unfortunately [1]**  27/24
**UNITED [21]**  1/1 1/3 1/10 2/3
 2/8 22/18 22/23 29/6 29/7
 29/8 32/16 32/21 32/23 33/8
 36/17 37/1 38/1 39/9 40/12
 40/18 41/25
**unknowingly [2]**  21/23 22/5
**unlawful [3]**  32/25 36/4
 41/12
**unlawfully [1]**  36/2
**unless [2]**  37/18 38/12
**unlike [1]**  26/23
**unlikely [1]**  32/14
**unsatisfactory [1]**  27/10
**until [5]**  11/9 19/5 28/15
 30/19 40/15
**unwarranted [1]**  16/2

**U**

**unwinding [1]** 21/19
**unwittingly [1]** 32/23
**up [5]** 9/15 11/15 22/4 25/25
 31/6
**upbringing [1]** 20/8
**upon [2]** 37/22 39/11
**upward [1]** 41/8
**us [14]** 11/8 16/20 16/23
 18/22 19/18 19/23 21/13
 21/20 21/23 24/6 24/17 25/7
 25/10 26/11
**use [6]** 13/25 17/8 18/21
 36/4 39/18 42/20
**used [5]** 16/20 21/4 21/14
 23/18 29/14
**user [2]** 37/21 37/23
**using [1]** 12/14

**V**

**vacation [1]** 20/24
**value [1]** 6/18
**variance [3]** 11/12 11/14
 12/5
**various [2]** 10/9 25/19
**vehicle [1]** 38/17
**verify [1]** 17/10
**versus [2]** 2/3 41/25
**very [6]** 23/23 28/18 31/3
 31/7 33/1 33/24
**victim [1]** 22/9
**victims [5]** 10/9 16/20 21/16
 25/11 33/2
**violated [3]** 21/8 38/4 38/22
**violating [1]** 29/16
**violation [10]** 2/21 2/22
 2/24 5/11 5/13 5/17 6/13
 9/15 38/6 38/24
**violations [1]** 32/15
**vocational [2]** 39/20 40/5
**vs [1]** 1/5

**W**

**wages [6]** 17/16 25/7 25/9
 25/14 26/12 40/25
**waive [2]** 36/15 40/9
**waived [1]** 41/13
**Wall [1]** 28/5
**want [5]** 10/11 22/10 25/2
 31/24 32/5
**warn [2]** 38/8 39/1
**warrant [1]** 19/5
**warranted [1]** 16/16
**warrants [1]** 17/4
**was [83]**
**Washington [7]** 1/5 1/14 1/17
 1/20 1/24 39/8 40/13
**wasn't [1]** 28/15
**watches [1]** 37/14
**way [7]** 14/10 24/13 28/15
 30/2 31/11 33/25 34/2
**we [35]** 2/18 3/17 3/21 11/3
 11/4 11/5 11/15 11/22 11/23
 11/23 22/24 23/3 24/14 24/25
 25/10 25/15 25/25 26/3 26/5
 26/7 26/8 26/14 27/2 27/7
 27/8 27/8 27/21 28/3 29/13
 30/6 30/8 31/14 34/8 42/12
 42/15

**we'll [2]** 12/1 26/7
**weapons [4]** 16/25 29/14 30/2
 30/4
**week [1]** 26/6
**weekend [1]** 11/8
**weighs [1]** 33/18
**well [20]** 3/2 3/4 3/6 5/9
 11/8 13/12 20/2 24/9 24/17
 25/13 25/20 25/24 27/5 27/15
 29/24 35/8 35/21 39/20 42/18
 42/22
**Wells [1]** 28/7
**went [2]** 24/5 30/6
**were [34]** 5/24 5/25 12/7
 14/6 16/19 16/20 16/21 17/14
 17/20 17/20 17/23 18/1 21/17
 21/18 23/17 23/18 23/20 25/3
 25/5 25/6 25/7 25/10 25/10
 25/11 25/12 26/13 28/5 28/14
 29/24 30/20 30/23 33/2 33/3
 33/3
**what [26]** 5/8 10/25 11/25
 12/7 12/18 13/11 14/3 14/4
 14/6 18/13 18/18 22/15 24/5
 24/7 26/16 27/2 27/2 28/10
 28/16 30/5 31/13 32/20 32/25
 33/1 34/3 40/3
**when [11]** 17/24 19/5 23/16
 25/11 27/25 30/7 30/18 31/10
 31/14 38/3 38/21
**where [9]** 12/10 12/17 17/9
 26/24 27/4 27/21 33/13 33/15
 34/11
**whether [13]** 3/18 3/23 3/24
 4/1 11/10 11/11 11/13 24/7
 24/8 28/14 29/19 33/6 42/1
**which [31]** 2/23 4/7 4/10
 5/10 5/15 5/24 5/24 6/2 6/4
 6/15 6/22 11/8 11/15 12/15
 17/20 20/8 21/21 21/22 23/20
 25/20 29/5 30/20 32/9 32/22
 35/12 35/13 35/23 39/18
 39/20 39/21 40/17
**while [5]** 18/23 20/7 35/20
 35/24 39/13
**who [19]** 2/13 2/19 13/14
 16/3 16/20 18/1 20/9 20/20
 21/3 21/17 22/5 22/9 26/22
 27/12 28/5 28/8 28/19 29/7
 33/3
**whole [1]** 29/1
**whose [3]** 16/19 21/13 33/2
**why [7]** 11/23 23/3 27/9
 28/24 30/8 30/22 34/23
**widespread [1]** 28/6
**will [38]** 3/22 3/25 4/2 4/5
 4/8 5/4 8/22 8/25 10/3 10/5
 10/22 11/5 11/7 11/9 11/23
 12/23 13/14 14/8 16/17 21/19
 23/1 24/10 27/1 31/12 31/24
 35/14 36/11 36/12 37/8 37/12
 37/17 37/19 39/4 39/6 39/9
 39/12 39/13 39/17
**willfully [1]** 7/7
**Willsey [3]** 21/3 21/6 27/13
**Willsey's [1]** 21/5
**wire [4]** 2/21 5/11 5/24 8/9
**withdrawal [1]** 13/21
**within [14]** 10/22 11/3 11/4
 11/7 12/17 14/1 24/20 32/10

36/5 39/3 39/10 39/16 40/13
41/16
**without [5]** 17/1 17/4 18/20
 37/3 41/18
**work [5]** 21/22 22/1 26/10
 26/24 27/10
**worked [1]** 17/22
**worker [4]** 17/2 17/24 23/22
 26/22
**workers [14]** 16/21 17/13
 17/16 17/21 22/2 22/19 24/19
 25/8 25/12 25/15 25/18 26/10
 26/25 41/1
**workers' [1]** 26/23
**working [4]** 18/10 19/8 19/20
 23/20
**world [1]** 24/11
**would [30]** 2/4 3/9 3/13 4/3
 4/4 11/8 11/14 11/15 12/22
 13/23 14/4 14/21 14/22 16/12
 17/9 17/22 18/4 19/6 23/3
 24/16 25/19 26/14 26/17
 30/12 30/13 30/15 31/11
 33/14 39/24 42/12
**wouldn't [3]** 13/5 28/13
 29/21
**wrist [1]** 28/4
**wrong [4]** 17/25 30/20 32/20
 35/2
**wrote [2]** 21/4 21/21

**Y**

**yeah [3]** 12/21 29/2 29/24
**year [4]** 8/14 8/15 14/18
 14/18
**years [12]** 5/12 5/15 5/19
 8/11 8/12 8/17 8/19 15/10
 21/22 30/7 31/8 31/11
**Yes [13]** 4/22 4/25 5/3 9/21
 9/22 9/24 10/1 10/13 10/17
 12/13 16/14 30/15 35/5
**yet [3]** 11/16 18/8 19/18
**York [1]** 1/13
**you [89]**
**you're [1]** 39/7
**your [66]**
**yourself [1]** 4/21

**Z**

**zero [1]** 7/17
**zero-point [1]** 7/17
**zone [1]** 9/4