# UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF TENNESSEE
### NASHVILLE DIVISION

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | **)** | |
| | **)** | **No. 3:24-cr-00151** |
| | **)** | **JUDGE RICHARDSON** |
| **v.** | **)** | |
| | **)** | |
| **MATTHEW KNOOT** | **)** | |

**<u>MATTHEW KNOOT'S POSITION REGARDING THE PRESENTENCE
INVESTIGATION REPORT</u>**

Through counsel, Matthew Knoot files the following position statement regarding the

presentence investigation report (PSR). Explained below, Mr. Knoot's total offense level should

be eight (8).

> **I.** **Mr. Knoot objects to the application of U.S.S.G. § 2B1.1(b)(1)(H) because the
> Government has failed to provide sufficient evidence to establish the loss amount
> by a preponderance of the evidence. The correct guideline application should be
> 2B1.1(b)(1)(C).**

The Court should reduce the loss amount to $15,100.00, which is the amount Mr. Knoot

received and more importantly, the only amount that we can be certain was actually lost. This

would result in an enhancement of 4 points, not 14. U.S.S.G. 2B1.1(b)(1)(C). When calculating a

loss amount for sentencing, the district court must calculate only a reasonable estimate of the loss

that is supported by a preponderance of the evidence. *United States v. Igboba*, 964 F.3d 501, 509

(6th Cir. 2020) The prosecution has the burden to prove by a preponderance of the evidence that

the enhancement applies. *United States v. Dupree*, 323 F.3d 480, 491 (6th Cir.2003). While courts

may estimate loss, they must avoid methodologies that lack evidentiary reliability. *See United

States v. Jones*, 641 F.3d 706, 712 (6th Cir. 2011).

The government has not proved by a preponderance of the evidence that the total loss amount is $803,253.74 as reflected in the PSR. The government's calculation here is speculative and rests on assumptions rather than concrete proof. Without individualized proof tying the alleged loss to Mr. Knoot's actions, the enhancement cannot stand.

The only available evidence that reflects a "loss" amount is information included in statements made to the government by the companies. Company A sent a statement to probation where it claimed a loss of $430,000.00. (PSR, pp. 13-14). Companies B, C, and D all provided the government with estimated claims for their losses. (*Id*.) There are no documents, files, spreadsheets, or any testimony reflecting exactly how these amounts were calculated. At the very least, *some* documents could have been provided reflect the amount of loss. In-court testimony would have been the easiest way to prove these losses, but none of the companies want to appear in court or provide any documentation supporting their loss claims. Instead, each of the companies are providing loss amounts while hiding behind a wall. Based on the scant information provided, we have no way of knowing if the companies really lost the amounts they claimed nor if those losses were directly related to the actions of Mr. Knoot rather than a separate bad actor.

Another reason that the loss amounts cannot be reasonably estimated is the fact that these companies received the value of their services. *See United States v. Johnson*, 79 F.4th 684, 708 (6th Cir. 2023) (loss calculations must account for the value of services rendered or property returned before the offense was detected). Specifically, YangDi worked for Company A for nearly a year. There is no evidence that the employee was terminated due to performance issues. There were no complaints that the software Yang delivered was faulty, fraudulent, or less than what was expected of him. He was terminated *solely* due to the suspicion that his IP address came from a

foreign country. The companies received services from an employee, but they are claiming losses that include the amount of work that was successfully delivered by the employee.

Finally, the loss amounts likely include estimates for work that would have already been performed. Specifically, most companies have their information technology departments remediate employee devices after the employee is terminated or whenever the employee returns the company devices.[1] The presence of routine remediation measures makes it particularly difficult—if not impossible—for the Government to establish loss with the required precision. This is truly impossible without the presence of any evidence to support the loss claims.

The loss amounts cited in the PSR are speculative. To accept the calculations would allow similarly situated companies to write blank checks for themselves claiming loss amounts without providing any evidence. Nothing stopped any of these companies from alleging much larger amounts. As such, the Court should reject the enhancement as determined in the PSR and apply the enhancement under 2B1.1(b)(C). This would result in an enhanced offense level of 10.

## II.     Mr. Knoot should not receive an enhancement for obstructive conduct.

The PSR references two actions occurring shortly after the search of Mr. Knoot's residence on August 8, 2023: (1) statements made to agents on August 10, 2023, in which "he denied knowing "Yang Di,"" and (2) the deletion of a Discord account used to communicate with that individual. Mr. Knoot does not minimize the seriousness of those actions. (PSR, p. 15) However, context matters.

First, the statements and deletion occurred in the immediate aftermath of a federal search of his home — a moment of profound shock and fear for a first-time offender with no prior

---

[1] What Happens to My Work Computer When I Return It to IT?, Velory, https://velory.com/blog/what-happens-to-my-work-computer-when-i-return-it-to-it
 (last visited Apr. 22, 2026).

experience in the criminal justice system. The Sixth Circuit has recognized that conduct taking place before the investigation may not be obstructive. See e.g., *United States v. Bazazpour*, 690 F.3d 796 (2012) (holding that the obstruction enhancement was inapplicable because the defendant's obstructive conduct occurred before the initiation of the official federal investigation);

Second, even if the government could establish that the deletion occurred with knowledge of the investigation, a separate barrier to the enhancement exists for conduct occurring contemporaneously with the raid. The Guidelines explicitly address this scenario. Where evidence is destroyed contemporaneously with arrest, the enhancement does not apply unless it results in a material hindrance to the investigation or the sentencing of the defendant. *United States v. Rosales*, 990 F.3d 989, 998 (6th Cir. 2021).

The government must therefore demonstrate not only that the deletion occurred, but that it materially hindered the investigation. Given that the FBI was conducting a raid and presumably securing evidence at the time, the government faces a substantial burden in proving that the deletion caused any material hindrance to their investigation. There is no evidence that the deletion of the Discord account materially impaired the investigation. The government was able to obtain records directly from Discord. The existence of communications, the timing of events, and the substance of the interactions were preserved through third-party records. This was not a case involving destruction of physical devices, wiping of hard drives, encrypted concealment of funds, or sophisticated obstruction designed to derail a prosecution. The investigation proceeded, charges were brought, the factual record was established, and Mr. Knoot is standing before the Court after pleading guilty.

Third, the conduct was temporally limited and not part of a broader pattern. There was no ongoing effort to tamper with witnesses, conceal financial assets, flee the jurisdiction, or interfere

4

with judicial proceedings. The actions cited were confined to a brief window immediately following execution of the search warrant.

Lastly, the specific statement in question where the prosecution claims Mr. Knoot denied knowing Yang Di, is a twisted version of the truth. Mr. Knoot simply did not tell the FBI about Yang Di during his initial, voluntary interview and specifically informed the FBI that he "wished to speak with a lawyer before giving any more details." Mr. Knoot simply exercised his rights to remain silent and to be represented by an attorney.

Here, the obstruction allegation does not transform Mr. Knoot into someone who poses a danger to the public or demonstrates incorrigibility. It reflects a moment of fear and misjudgment by a person with no prior criminal history who suddenly faced federal scrutiny without appropriate legal counsel at the moment of action.

### III.     Mr. Knoot should still receive a reduction for acceptance of responsibility.

Although the PSR writer has applied an enhancement under U.S.S.G. § 3C1.1 for obstruction of justice, Mr. Knoot should still receive a reduction for acceptance of responsibility under § 3E1.1 because this case presents the "extraordinary case" contemplated by the Guidelines if the Court determines that his conduct was obstructive.

The Sentencing Guidelines recognize that while obstruction of justice ordinarily indicates a defendant has not accepted responsibility, there are limited circumstances in which both adjustments may apply. U.S.S.G. § 3E1.1 cmt. n.4 expressly provides that conduct resulting in an obstruction enhancement "ordinarily indicates" that acceptance of responsibility is not warranted but does not bar the adjustment in extraordinary cases. The Sixth Circuit has also acknowledged that simultaneous application is permissible where the defendant demonstrates genuine acceptance despite obstructive conduct. See, e.g., *United States v. Gregory*, 315 F.3d 637, 640 (6th Cir. 2003)

(recognizing application of both adjustments in extraordinary circumstances where acceptance is otherwise clear and significant).

This is such a case. Mr. Knoot has demonstrated acceptance of responsibility through timely and meaningful conduct that goes beyond mere guilty plea formalities. Firstly, the obstructive conduct took place over one year prior to charges being filed. To add context, Mr. Knoot deleted Discord account weeks after the FBI had already confiscated his home computer which had his Discord chats on it. He did nothing else. But his actions after he was charged are more important. First, he entered a plea, allowing the government to avoid proceeding to trial, conserving judicial resources. He admitted to the core factual conduct relevant to the offense. He mailed a letter directly to the government expressing remorse for his actions. He attempted to provide cooperation with the government well before charges were even filed. After the attempted proffer, the government did not file an indictment until almost a year later. Most importantly, he expressed remorse for his actions and acknowledged wrongdoing in this case.

The conduct was not reflective of a sustained effort to undermine the prosecution. Courts have found the "extraordinary case" standard satisfied where obstruction is not extensive and is followed by clear, timely acceptance and cooperation. *See United States v. Williams*, 940 F.2d 176, 183 (6th Cir. 1991) (recognizing that post-offense conduct and truthful acceptance may outweigh prior obstructive behavior in extraordinary circumstances).

Denying the reduction in this context would produce an unwarranted sentencing disparity by treating this defendant identically to defendants who continue to deny responsibility, proceed to trial, or refuse to acknowledge wrongdoing at all, despite materially different post-offense conduct.

The Court should therefore grant a reduction under U.S.S.G. § 3E1.1 notwithstanding the application of § 3C1.1.

**IV.     The Court should not apply the "sophisticated means" enhancement.**

The Sentencing Guidelines define "sophisticated means" as conduct that is "especially complex or especially intricate" and typically involves "especially complex execution or concealment." U.S.S.G. § 2B1.1 cmt. n.9(B). The Sixth Circuit has repeatedly emphasized that the enhancement is reserved for schemes involving significant planning, coordination, or technical complexity beyond that inherent in the offense itself.

In *United States v. Adepoju*, 756 F.3d 250 (6th Cir. 2014), the court reversed application of the enhancement where the defendant's conduct, while fraudulent, did not rise above the level of ordinary steps taken to execute a fraud scheme. The court made clear that merely using false identities, routine financial transactions, or basic efforts to avoid detection does not automatically constitute sophisticated means.

Similarly, in *United States v. Tandon*, 111 F.3d 482 (6th Cir. 1997), the Sixth Circuit held that the enhancement is not appropriate where the conduct reflects a straightforward execution of fraud without intricate or layered concealment mechanisms. The court cautioned against conflating repetition or duration of conduct with sophistication.

Here, the government's theory improperly attempts to equate routine steps taken to carry out the offense with sophisticated means. However, actions such as using standard business tools, ordinary communications, or basic concealment efforts do not meet the Sixth Circuit's threshold. See *Adepoju*, 756 F.3d at 257 (rejecting enhancement where conduct lacked "especially complex" execution).

7

By contrast, Mr. Knoot's conduct here—at most—reflects a straightforward scheme carried out through conventional means. Any concealment was incidental to the underlying offense and not the product of a deliberately engineered or unusually complex method of execution.

**V.      The applicable total offense level should be 8.**

Based on the aforementioned objections, the total offense level should be as follows:

| | |
|---|---|
| 2B1.1(a)(2) | 6 – Base offense level |
| 2B1.1(b)(1)(C) – loss exceeded $15,000.00 but less than $40,000.00 | +4 |
| 2B1.1(b)(11)(C)(i) - offense involved the unauthorized transfer or use of any means of identification unlawfully to produce or obtain any other means of identification | +2 |
| | 12 – adjusted offense level |
| 4C1.1(a) and (b) – zero-point offender | -2 |
| 3E1.1 – acceptance of responsibility | -2 |
| TOTAL OFFENSE LEVEL | 8 |

Respectfully submitted,

s/ *David Fletcher*
DAVID FLETCHER
Assistant Federal Public Defender
164 Rosa L. Parks
Nashville, Tennessee 37203
615-695-6951
David_fletcher@fd.org

Attorney for Matthew Issac Knoot

8

## CERTIFICATE OF SERVICE

I hereby certify that on, I electronically filed the foregoing *Position Regarding the Presentence Report* with the U.S. District Court Clerk by using the CM/ECF system, which will send a Notice of Electronic Filing to the following: Gregory Nicosia, Assistant United States Attorney, 719 Church Street, Suite 3300, Nashville, Tennessee, 37203.

s/ *David Fletcher*
DAVID FLETCHER

9